1  Laura A. Wytsma (State Bar No. 189527)
   lwytsma@loeb.com
2  LOEB & LOEB LLP
   10100 Santa Monica Boulevard, Ste. 2200
3  Los Angeles, California 90067-4120
   Telephone:  (310) 282-2000
4  Facsimile:   (310) 282-2200

5  Timothy J. Carroll (Admitted *pro hac vice*)
   tcarroll@loeb.com
6  Matthew F. Carmody (Admitted *pro hac vice*)
   mcarmody@loeb.com
7  LOEB & LOEB LLP
   321 N. Clark Street, Ste. 2300
8  Chicago, Illinois 60654
   Telephone:  (312) 464-3100
9  Facsimile:   (312) 464-3111

10 Attorneys for Defendant
   CAPTARIS, INC.
11

12           UNITED STATES DISTRICT COURT

13           CENTRAL DISTRICT OF CALIFORNIA

14

| 15 | j2 GLOBAL COMMUNICATIONS, INC., | No. CV09-4150 DDP (AJWx) |
|----|----|----|
| 16 | Plaintiff, | ANSWER AND COUNTERCLAIM OF DEFENDANT CAPTARIS, INC. TO PLAINTIFF J2 GLOBAL COMMUNICATIONS, INC.'S FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT |
| 17 | | |
| 18 | v. | |
| 19 | CAPTARIS, INC., | |
| 20 | Defendant. | JURY TRIAL DEMANDED |
| 21 | CAPTARIS, INC. | |
| 22 | Counterclaimant, | |
| 23 | | |
| 24 | v. | |
| 25 | j2 GLOBAL COMMUNICATIONS, INC., | |
| 26 | Counterdefendant. | |
| 27 | | |

28

In response to the allegations of the First Amended Complaint, defendant Captaris, Inc. ("Captaris") states as follows:

1.    Captaris is without sufficient information to form an opinion as to the truth of the allegations in paragraph 1 and, on that basis, denies them.

2.    Captaris admits that it is a Washington corporation with a principal place of business in Bellevue, Washington.  Captaris admits that its business includes the services described in paragraph 2 of the Complaint and that it may have customers in this district.

3.    Captaris admits that the Complaint purports to state an action for patent infringement, and that the Court has subject matter jurisdiction over plaintiff's alleged claims.

4.    Captaris admits that the Court has personal jurisdiction over it in this case.  Captaris denies the remainder of the allegations in paragraph 4 of the Complaint.

5.    Captaris admits that venue may be proper in the Central District of California pursuant to 28 U.S.C. §§ 1391(b) and (c), and 1400(d).

6.    Captaris restates and incorporates herein the answers of paragraphs 1 through 5 above as if fully set forth herein.

7.    Captaris admits that U.S. Patent No. 6,597,688 ("the '688 patent") is entitled "Scalable Architecture for Transmission of Messages over a Network," that the '688 patent issued on July 22, 2003 to Anand Narasimhan, Yaacov Shemesh and Amit Kumar, and that a copy of the '688 patent appears to be attached as Exhibit A to the Complaint.  Captaris denies that the '688 patent was duly and legally issued.

8.    Captaris is without sufficient information to form an opinion as to the truth of the allegation that j2 owns by assignment the entire right, title and interest in and to the '688 patent, including the right to sue for past, present, and future infringements thereof, and, on that basis, denies the allegation.  Captaris denies the remainder of the allegations in paragraph 8 of the Complaint.

1     9.     Captaris denies the allegations in paragraph 9 of the Complaint.

2     10.    Captaris admits that its activities have been without express or implied

3  license by plaintiff but denies that its activities require express or implied license by

4  plaintiff.

5     11.    Captaris denies the allegations of paragraph 11 of the Complaint.

6  Captaris further denies that plaintiff is entitled to any relief.

7     12.    Captaris denies the allegations in paragraph 12 of the Complaint.

8  Captaris further denies that plaintiff is entitled to any relief.

9     13.    Captaris denies the allegations in paragraph 13 of the Complaint.

10  Captaris further denies that plaintiff is entitled to any relief.

11     14.    Captaris restates and incorporates herein the answers of paragraphs 1

12  through 13 above as if fully set forth herein.

13     15.    Captaris admits that U.S. Patent No. 7,020,132 ("the '132 patent") is

14  entitled "Scalable Architecture for Transmission of Messages over a Network," that

15  the '132 Patent issued on March 28, 2006 to Anand Narasimhan, Yaacov Shemesh

16  and Amit Kumar, and that a copy of the '132 patent appears to be attached as

17  Exhibit B to the Complaint.  Captaris denies that the '132 patent was duly and

18  legally issued.

19     16.    Captaris is without sufficient information to form an opinion as to the

20  truth of the allegation that j2 owns by assignment the entire right, title and interest in

21  and to the '132 patent, including the right to sue for past, present, and future

22  infringements thereof, and, on that basis, denies the allegation.  Captaris denies the

23  remainder of the allegations in paragraph 16 of the Complaint.

24     17.    Captaris denies the allegations of paragraph 17 of the Complaint.

25     18.    Captaris admits that its activities have been without express or implied

26  license by plaintiff but denies that its activities require express or implied license by

27  j2.

28

1    19.    Captaris denies the allegations of paragraph 19 of the Complaint.

2  Captaris further denies that plaintiff is entitled to any relief.

3    20.    Captaris denies the allegations of paragraph 20 of the Complaint.

4  Captaris further denies that plaintiff is entitled to any relief.

5    21.    Captaris denies the allegations of paragraph 21 of the Complaint.

6  Captaris further denies that plaintiff is entitled to any relief.

7    22.    Captaris restates and incorporates herein the answers of paragraphs 1

8  through 5 above as if fully set forth herein.

9    23.    Captaris admits that U.S. Patent No. 6,350,066 ("the '066 patent") is

10  entitled "Systems and Methods for Storing, Delivering, and Managing Messages,"

11  that the '066 patent issued on February 26, 2002, to Charles R. Bobo, II, and that the

12  '066 patent underwent reexamination and a reexamination certificate issued May 5,

13  2009.  Captaris admits that a copy of the '066 patent appears to be attached as

14  Exhibit C to the Complaint.  Captaris denies that the '066 patent was duly and

15  legally issued.

16    24.    Captaris is without sufficient information to form an opinion as to the

17  truth of the allegation that j2 owns by assignment the entire right, title and interest in

18  and to the '066 patent, including the right to sue for past, present, and future

19  infringements thereof, and, on that basis, denies the allegation.  Captaris denies the

20  remainder of the allegations in paragraph 24 of the Complaint.

21    25.    Captaris denies the allegations in paragraph 25 of the Complaint.

22    26.    Captaris admits that its activities have been without express or implied

23  license by plaintiff but denies that its activities require express or implied license by

24  plaintiff.

25    27.    Captaris denies the allegations of paragraph 27 of the Complaint.

26  Captaris further denies that plaintiff is entitled to any relief.

27    28.    Captaris denies the allegations in paragraph 28 of the Complaint.

28  Captaris further denies that plaintiff is entitled to any relief.

Loeb & Loeb
Limited Liability Partnership
Including Professional
Corporations

3

CAPTARIS' ANSWER AND COUNTERCLAIM
TO FIRST AMENDED COMPLAINT

1       29.    Captaris denies the allegations in paragraph 29 of the Complaint.

2   Captaris further denies that plaintiff is entitled to any relief.

3       30.    Captaris restates and incorporates herein the answers of paragraphs 1

4   through 5 above as if fully set forth herein.

5       31.    Captaris admits that U.S. Patent No. 6,208,638 ("the '638 patent") is

6   entitled "Method and Apparatus for Transmission and Retrieval of Facsimile and

7   Audio Messages Over a Circuit or Packet Switched Network," that the '638 patent

8   issued on March 27, 2001, to Jack Rieley and Jaye Muller, and that the '638 patent

9   underwent reexamination and a reexamination certificate issued December 9, 2008.

10   Captaris admits that a copy of the '638 patent appears to be attached as Exhibit D to

11   the Complaint.  Captaris denies that the '638 patent was duly and legally issued.

12       32.    Captaris is without sufficient information to form an opinion as to the

13   truth of the allegation that j2 owns by assignment the entire right, title and interest in

14   and to the '638 patent, including the right to sue for past, present, and future

15   infringements thereof, and, on that basis, denies the allegation.  Captaris denies the

16   remainder of the allegations in paragraph 32 of the Complaint.

17       33.    Captaris denies the allegations in paragraph 33 of the Complaint.

18       34.    Captaris admits that its activities have been without express or implied

19   license by plaintiff but denies that its activities require express or implied license by

20   plaintiff.

21       35.    Captaris denies the allegations of paragraph 35 of the Complaint.

22   Captaris further denies that plaintiff is entitled to any relief.

23       36.    Captaris denies the allegations in paragraph 36 of the Complaint.

24   Captaris further denies that plaintiff is entitled to any relief.

25       37.    Captaris denies the allegations in paragraph 37 of the Complaint.

26   Captaris further denies that plaintiff is entitled to any relief.

27       38.    To the extent any allegations of the Complaint are not addressed above,

28   they are denied.

1    39.   Captaris denies that plaintiff is entitled to any relief.

2

3

4                    **AFFIRMATIVE DEFENSES**

5    Without assuming any burden that it would not otherwise have, and without

6    waiving j2's obligation to prove each and every element of its claims, Captaris, Inc.

7    ("Captaris") asserts the following defenses:

8    40.   Captaris hereby incorporates paragraphs 1-39 of its Amended Answer

9    and paragraphs 1-148 of its Amended Counterclaims as if fully asserted herein.

10                   **First Affirmative Defense**

11    41.   Captaris has not infringed, has not contributorily infringed, has not

12    induced infringement of, and is not infringing any claim of U.S. Patent 6,597,688

13    No. ("the '688 patent"), and Captaris is not liable for any act that would be

14    construed as any form of infringement of the '688 patent.

15                   **Second Affirmative Defense**

16    42.   Captaris has not infringed, has not contributorily infringed, has not

17    induced infringement of, and is not infringing any claim of U.S. Patent No.

18    7,020,132 ("the '132 patent"), and Captaris is not liable for any act that would be

19    construed as any form of infringement of the '132 patent.

20                   **Third Affirmative Defense**

21    43.   Captaris has not infringed, has not contributorily infringed, has not

22    induced infringement of, and is not infringing any claim of U.S. Patent 6,350,066

23    No. ("the '066 patent"), and Captaris is not liable for any act that would be

24    construed as any form of infringement of the '066 patent.

25                   **Fourth Affirmative Defense**

26    44.   Captaris has not infringed, has not contributorily infringed, has not

27    induced infringement of, and is not infringing any claim of U.S. Patent No.

28

Loeb & Loeb
A Limited Liability Partnership
Including Professional

5

CAPTARIS' ANSWER AND COUNTERCLAIM
TO FIRST AMENDED COMPLAINT

1  6,208,638 ("the '638 patent"), and Captaris is not liable for any act that would be

2  construed as any form of infringement of the '638 patent.

3

4              **Fifth Affirmative Defense**

5      45.    The statements, representations, and admissions made by the inventors

6  or their representatives to the U.S. Patent and Trademark Office ("PTO") during

7  prosecution of the application that matured into the '688 patent, '132 patent, '066

8  patent and the '638 patent estop Plaintiff from asserting that the claims of the patent

9  encompass or are infringed by Captaris.

10              **Sixth Affirmative Defense**

11     46.    Plaintiff is not entitled to the relief it seeks in the Complaint due to its

12  own unclean hands.

13              **Seventh Affirmative Defense**

14     47.    Plaintiff's claims are barred, in whole or in part, by the doctrine of

15  estoppel, based on, *inter alia*, statements, representations and admissions made

16  during the prosecution of the patents-in-suit and/or other positions taken in this and

17  other litigation.

18              **Eighth Affirmative Defense**

19     48.    On information and belief, a reasonable opportunity for discovery will

20  establish that any purported damages claimed by plaintiff should be limited by the

21  doctrine of laches.

22              **Ninth Affirmative Defense**

23     49.    The '688 patent, the '132 patent, the '066 patent and the '638 patent are

24  invalid and/or no damages may be received by plaintiff pursuant to one or more

25  provisions of 35 U.S.C. § 101, *et. seq.*, including, but not limited to §§ 102, 103,

26  112, 286 and/or 287. Among other things, Captaris' Rightfax product was used,

27  sold and offered for sale more than one year before the filing dates for the

28

Loeb & Loeb
imited Liability Partnership
Including Professional
Corporations

6

CAPTARIS' ANSWER AND COUNTERCLAIM
TO FIRST AMENDED COMPLAINT

1 applications leading to the '688, '132, '066 and '638 patents and constitutes prior art

2 that anticipates or renders obvious the '688, '132, '066 and '638 patents.

3                              **Tenth Affirmative Defense**

4        50.    On information and belief, j2's claims for damages and prayer for relief

5 are limited, in whole or in part, by the failure to mark, by itself or by one or more

6 parties licensed to practice the '688, '132, '066 and/or '638 patents, as required by

7 35 U.S.C. § 287.

8                            **Eleventh Affirmative Defense**

9        51.    The '688 patent and '132 patent are unenforceable because the

10 inventors failed to disclose all non-cumulative, material prior art of which they were

11 aware to the PTO during the prosecution of the '688 and '132 patents, as well as the

12 re-examination of the '688 patent.

13                             **Twelfth Affirmative Defense**

14       52.    Plaintiff's claims and prayer for relief for inducement and/or

15 contributory infringement are barred prior to service of the instant Complaint as

16 such alleged infringement predates Captaris' actual knowledge '688 patent or the

17 '132 patent.

18                           **Thirteenth Affirmative Defense**

19       53.    Plaintiff's claims for damages and prayer for relief are limited, in

20 whole or in part, by its failure to mitigate its damages.

21                          **Fourteenth Affirmative Defense**

22       54.    Plaintiff is misusing the '688 patent and '132 patent. Each of the

23 asserted claims in the '688 patent, and claims 1, 2, 3, 4, 6, 11, 14, 15 and 16 of the

24 '132 patent (collectively "the Customer Claims"), require a request message

25 received from a customer of the message delivery service over an external packet-

26 switched data network.

27

28

CAPTARIS' ANSWER AND COUNTERCLAIM
TO FIRST AMENDED COMPLAINT

1    55.    During the prosecution of the '688 patent, the applicants specified that

2  since the request message is received from a customer over the external packet-

3  switched network, the customer does not reside in the internal network:

> Note that the request messages are received from a
> customer over the external packet-switched network, in
> other words outside of the internal network that contains
> the elements of the claimed system. Thus, the customer of
> the service in effect "resides" outside of the internal
> network. This, of course is desirable because of the
> improved security that can be guaranteed for the internal
> network elements.

12  June 13, 2002 Preliminary Amendment at 11.  The applicant made this argument in

13  order to distinguish the invention from the cited reference.

14    56.    Each of the Customer Claims also requires a router-filter either to

15  validate the customer associated with the request message, or to verify that the

16  request message is from the customer.  Thus, for the Customer Claims, the

17  identification of the email sender from the external network must be verified in

18  order to forward the request message to the ultimate destination.

19    57.    Contrary to the claimed invention, Captaris' Rightfax system processes

20  inbound faxes by identifying the intended recipient of the fax, verifying the intended

21  recipient as a "user" of the Rightfax system and routing the fax according to the

22  appropriate user preference.  Thus, Rightfax verifies the fax recipient within the

23  internal network when it receives an inbound fax rather than verifying the fax sender

24  from the external network, as required by the Customer Claims.

25    58.    In order to read the Rightfax system onto the Customer Claims, j2 has

26  impermissibly attempted to broaden the scope of its claims to cover the Rightfax

27  users, i.e., those residing inside of the internal network.  Because j2 has attempted to

28

1 | impermissibly broaden the scope of the '688 and '132 Patents, j2 has committed

2 | patent misuse.

3 | **JURY DEMAND**

4 |

5 | Captaris demands trial by jury on all issues so triable.

6 | Dated:  October 15, 2009           LOEB & LOEB LLP
TIMOTHY J. CARROLL

7 | LAURA A. WYTSMA
MATTHEW F. CARMODY

8 |

9 | By_____ */s/  Timothy J. Carroll*
Timothy J. Carroll

10 | Attorneys for Defendant
CAPTARIS, INC.

11 |

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

### CAPTARIS' COUNTERCLAIM

Defendant and Counter-Claimant Captaris, Inc. ("Captaris") for its
Counterclaim against Plaintiff and Counter-Defendant j2 Global Communications,
Inc. ("j2"), alleges as follows:

### INTRODUCTION

1.     These counterclaims include claims for civil antitrust and
anticompetitive behavior, brought in order to seek relief from j2's sham litigation
against Captaris, which is part of j2's overall scheme to stifle and exclude
competition in the relevant market for internet facsimile services to home and small
businesses.  Carrying out a plan hatched by its senior management and others, j2 has
embarked on a scheme to purposefully and improperly maintain a monopoly in the
relevant market.  The scheme begins with j2 acquiring patents, such as U.S. Patent
No. 6,597,688 ("the '688 patent") and U.S. Patent No. 7,020,132 ("the '132 patent")
(collectively, the "patents-in-suit"), through acquisition or fraud and/or inequitable
conduct upon the United States Patent and Trademark Office (the "PTO").  Once the
patents have been mistakenly granted, j2, either directly or though a cadre of patent
litigation vehicles, systematically threatens its competitors by demanding that they
pay licensing fees, without regard as to whether those competitors actually infringe
the patent rights of j2 or its litigation subsidiaries.  Any competitors that refuse to
capitulate to j2 and its litigation subsidiaries' extortion are sued in patent
infringement proceedings, despite the fact that the lawsuits are objectively baseless
such that no reasonable litigant would expect success on the merits.

2.     In recent years, j2 and its patent litigation vehicles have initiated scores
of lawsuits against its competitors and potential competitors.  Once named in costly
patent infringement proceedings, j2's competitors are offered settlements by j2 and
its litigation subsidiaries that are carefully calculated to be far less than the cost of
defending patent litigation.  Many of j2's competitors have opted to settle and pay j2
or its litigation subsidiaries' licensing fees, despite their belief that j2's claims were

1 │ baseless, deeming it preferable to incurring legal fees that well exceed the cost of
2 │ the proposed license, j2 and its litigation subsidiaries then highlight these extorted
3 │ settlements as litigation "successes," attempting to mislead the public and the courts
4 │ that its infringement claims have validity on the merits. Tellingly, j2 has never
5 │ prevailed on the merits in these patent infringement claims. In fact, j2 recently lost
6 │ a dispositive ruling on infringement on summary judgment.

7 │     3.     j2's competitors have attempted to fight back against j2's predatory
8 │ campaign to extort competitors by asserting and threatening costly sham litigation.
9 │ Within the last four years, at least four different entities in four different federal
10 │ jurisdictions in the United States and in Canada have brought claims against j2 for
11 │ antitrust violations and a pattern of anticompetitive behavior based on this very
12 │ conduct. Captaris does the same here.

13 │     4.     As a result of these and other illegal acts, j2 has: (i) unreasonably
14 │ restrained, suppressed and eliminated competition in the market for internet facsimile
15 │ services to home offices and businesses; (ii) illegally maintained its monopoly in the
16 │ market for internet facsimile services to homes and small businesses; and (iii)
17 │ damaged consumers by unlawfully depriving the public of the benefits of
18 │ competition. This wrongful conduct has injured Captaris, other fellow competitors
19 │ of j2, and end-user consumers.

20 │     5.     Captaris incorporates its admissions, denials and responses above as if
21 │ fully set forth herein, and further seeks a declaration that the '688 patent and the
22 │ '132 patent are invalid, cannot be enforced, were obtained through inequitable
23 │ conduct and/or that Captaris does not infringe the patents-in-suit.

24 │                         **JURISDICTION AND VENUE**

25 │     6.     These Counterclaims arise under the laws of the United States, being a
26 │ civil action brought by Captaris pursuant to Section 7 of the Clayton Act, Sections 1
27 │ and 2 of the Sherman Antitrust Act, and Sections 16720 and 17200 of the California
28 │ Business and Professions Code. The Court has subject matter jurisdiction over this

1  Counterclaim under the provisions of 28 U.S.C. §§ 1331, 1337(a), 1338(a), and
2  1367(a).

3      7.    j2 transacts business in this judicial district and has filed suit in this
4  district. Venue is therefore proper in accordance with 15 U.S.C. §§ 15 and 22 and
5  28 U.S.C. §§ 1391(b) and (c).  Venue is also proper pursuant to 28 U.S.C. §
6  1400(b), in that this is a patent infringement action arising under the patent laws of
7  the United States, and pursuant to 28 U.S.C. § 1391(b) and (c), in that j2 is subject
8  to the personal jurisdiction of this Court by commencing and continuing to
9  prosecute this action.

10      8.    There is also a justiciable controversy between Captaris and plaintiff as
11  to whether Captaris has infringed any patent rights owned by plaintiff, including any
12  valid claims of the '688 patent or the '132 patent, and whether the patents-in-suit are
13  valid or enforceable.

14                                   **PARTIES**

15      9.    Captaris, Inc. is a Washington corporation with a principal place of
16  business at 301 116th Street SE, Bellevue, Washington 98004.

17      10.    As described by j2 in numerous press releases, j2 was founded in 1995
18  and provides messaging and communications services to individuals and businesses
19  around the world. The company's network "spans more then 1,300 cities in 20
20  countries on five continents." j2 provides faxing and voicemail services, document
21  management services, conference calling, "unified-messaging" and communications
22  services under the brand names eFax®, jai®, jConnect®, JFAX®, eFax
23  Corporate®, Electric Mail®, jBlast®, eFax Broadcast®, PaperMaster®,
24  Consensus®, M4 Internet® and Protfax®. j2 recorded gross revenues of
25  approximately $220 million in 2007. On information and belief, j2 is a Delaware
26  corporation with its principal place of business located at 6922 Hollywood
27  Boulevard, Suite 500, Los Angeles, California 90028.

28

1     11.    j2 is the largest provider of services in the relevant market, and it is

2  currently believed to control as much as 80% of the relevant market.  j2 attempts to

3  maintain and protect this market share through its aggressive campaign of predatory

4  litigation, which is designed to eliminate competition by imposing substantial

5  litigation costs, licensing costs and/or business uncertainty on its competitors.  This

6  prevents competitors, including Captaris from either entering the market or being

7  able to compete fairly in the market.

8                **j2's PATENT LITIGATION SUBSIDIARIES**

9     12.    j2 operates a number of patent litigation subsidiaries, that are either

10  wholly-owned by j2 or through another j2-owned entity such that they are

11  effectively wholly-owned by j2.  Through these entities, as well as directly, j2 has

12  engaged in a regular campaign of sham litigation against its competitors in order to

13  extort licensing revenue from them or raise their costs by having to defend costly

14  patent litigation.  These litigation subsidiaries, which have no business purpose and

15  offer no goods or services, participate in carrying out j2's unlawful scheme.

16     13.    j2 carries out its anticompetitive scheme through patent litigation

17  subsidiaries, such as Dynamic Depth, Inc. ("Dynamic Depth") and Catch Curve, Inc.

18  ("Catch Curve"), which do not conduct any business activity other than to extort

19  licensing fees from and initiate legal proceedings against j2's competitors.  Catch

20  Curve is organized under the laws of the State of Delaware with its principal place

21  of business at The Biltmore, Suite 205, 817 West Peachtree Street, NW, Atlanta,

22  Georgia, 30308.  Dynamic Depth is, upon information and belief, a Delaware

23  corporation that is based out of the same headquarters as j2 in Los Angeles,

24  California.  Upon information and belief, the patents held by Catch Curve and

25  Dynamic Depth were actually acquired by j2.

26     14.    Catch Curve and Dynamic Depth sell no products or services and have

27  not created any additional patents that represent innovation or new inventions.

28  Rather, Catch Curve and Dynamic Depth exist solely to extract money from j2's

Loeb & Loeb
mited Liability Partnership
Including Professional
Corporations

13

CAPTARIS' ANSWER AND COUNTERCLAIM
TO FIRST AMENDED COMPLAINT

1  competitors in the Relevant Market (defined below in Paragraph 18) and to harm
2  their efforts to compete and innovate.

3       15.    Upon information and belief, Catch Curve and Dynamic Depth are
4  wholly-owned subsidiaries of j2, they take direction from j2's senior management,
5  they commingle licensing revenues with j2, the patents in their respective portfolios
6  were in fact acquired by j2, and, for all legal purposes, serve as alter-egos of j2.

7       16.    Upon information and belief, j2 has attempted to keep its connection
8  with Catch Curve and Dynamic Depth hidden from the general public. j2 created
9  Catch Curve and Dynamic Depth without disclosing their creation to its shareholders
10 or to the SEC in its public filings, also it did not disclose its connection to these
11 entities on their websites or on public press releases announcing their creation.
12 These entities function solely as patent litigation subsidiaries, filing lawsuits against
13 providers of internet facsimile services that compete with j2 but refuse to purchase a
14 license from j2 or the litigation subsidiaries.

15                          **THE RELEVANT MARKETS**

16      17.    The Relevant Product Market is internet facsimile services to homes
17 and small businesses.  Companies competing in this market provide individuals and
18 businesses, for a fee, with facsimile numbers and server functions that allow users to
19 send facsimile messages directly from their computers (typically through email
20 systems) and to receive the messages in the form of attachments to emails.

21      18.    The Relevant Geographic Market is the United States. j2 offers the
22 Relevant Product Market to customers throughout the United States (collectively the
23 "Relevant Market").  j2 is believed to control as much as 80% of the Relevant
24 Market, such that j2 possesses monopolistic market power.  j2's anticompetitive
25 conduct has hindered Captaris' ability to enter and compete against j2 in the
26 Relevant Market.

27      19.    j2's actions as part of, and in furtherance of, the illegal monopolization
28 alleged herein, were authorized, ordered, or done by j2's officers, agents,

1     employees, representatives and wholly-owned subsidiaries while actively engaged

2     in the management of j2's affairs.

3         20.     j2's illegal acts to prevent fair and lawful competition in the United

4     States marketplace for internet facsimile services to homes and small businesses has

5     also resulted in injury to j2's rivals other than Captaris, as well as end-user

6     consumers.

7     **j2's FAILURE TO DISCLOSE MATERIAL INFORMATION TO THE PTO**

8         21.     In the instant lawsuit, and in other sham litigation asserted by one of

9     j2's patent litigation subsidiaries against Captaris, j2 asserts rights under several

10    patents – U.S. Patent No. 5,461,488 ("the '488 patent"), the '688 patent and the '132

11    patent – with designs to foreclose or hinder competition in the Relevant Market.

12    The patents-in-suit were acquired by virtue of j2's knowing failure to reveal to the

13    PTO clear material information that was known by j2 at the time of prosecution

14    and/or re-examination. Upon information and belief, this inequitable conduct was

15    committed with deceptive intent, and such misconduct renders the patents-in-suit

16    invalid and unenforceable.

17         22.     In particular, j2 asserted infringement under the '688 Patent against

18    Venali, Inc. in *J2 Global Communications, Inc. v. Venali, Inc.*, Case No. CV04-

19    01172 (C.D. Cal.). During that litigation, Venali filed a request for ex parte re-

20    examination of the '688 patent with the PTO, which the PTO granted on May 12,

21    2005.

22         23.     Applicable regulations require that "[e]ach individual associated with

23    the patent owner in a reexamination proceeding has a duty of candor and good faith

24    in dealing with the Office, which includes a duty to disclose to the Office all

25    information known to that individual to be material to patentability in a

26    reexamination proceeding." 37 C.F.R. § 1.555.

27         24.     Applicable regulations also require that "Any information disclosure

28    statement . . . should be filed [with the PTO] within two months of the date of the

1  order for reexamination, or as soon thereafter as possible." 37 C.F.R. § 1.555.

2      25.    Accordingly, while the PTO was performing its ex parte reexamination

3  of j2's '688 patent, j2 had an obligation to disclose all material information of which

4  it was aware.

5      26.    j2 acquired the '488 patent on March 22, 2006. On June 25, 2007, one

6  of j2's wholly-owned patent litigation subsidiaries, Dynamic Depth, filed a lawsuit

7  against Captaris in the United States District Court for the Northern District of

8  Georgia, styled *Dynamic Depth v. Captaris, Inc.,* Case No. 1:07-CV-1488 (the

9  "Dynamic Depth case").

10      27.    The Dynamic Depth case was initiated while the reexamination of the

11  '688 patent was still underway by the PTO. In the Dynamic Depth case, j2, through

12  its patent litigation vehicle Dynamic Depth, asserted the '488 patent against Captaris

13  based upon Captaris' Rightfax product. This is also the very same product that j2

14  alleges infringes the patents-in-suit in the instant litigation.

15      28.    Because j2, in sworn court filings, has plead that Captaris' RightFax

16  product infringes both the '488 patent and the '688 patent, the '488 patent is

17  material prior art to the '688 patent. In fact, the '488 patent, in combination with the

18  Rightfax documentation already before the PTO, renders the '688 patent obvious

19  and invalid. Therefore, j2 was under an affirmative duty to disclose the '488 patent

20  to the PTO during the reexamination of the '688 patent. But for j2's intentional

21  withholding of this material reference, the '688 patent would not have survived

22  reexamination.

23      29.    Additionally, in November 2001, j2 settled a lawsuit with AudioFAX

24  in which AudioFAX asserted at least U.S. Patent No. 4,994,926 ("the '926 patent.")

25  against j2 ("the AudioFAX settlement"). Accordingly, as of at least 2001, j2 was

26  aware and on notice that the '926 patent, at minimum, potentially read onto its

27  system and was relevant to the proposed claims of the '688 Patent.

28      30.    The AudioFAX settlement occurred during the pendency of the '688

1   patent application, prior to the continuation filing of the '132 patent, and prior to the

2   reexamination of the '688 patent.  Notwithstanding j2's awareness that the '926

3   patent may read onto its system, j2 failed to disclose this patent, or any related

4   continuation patents, to the PTO during the prosecution of the '688 patent or at any

5   subsequent time.  j2's failure to disclose material information with intent to deceive

6   the PTO on three separate occasions - during prosecution of the '688 patent, the

7   prosecution of the '132 patent, and the reexamination of the '688 patent - constitutes

8   inequitable conduct.

9        31.    The '926 patent was also one of a series of patents owned by

10  AudioFAX.  The other AudioFAX patents include, but are not limited to, U.S.

11  Patent Nos. 5,291,302; 5,459,584; 6,643,034; and 6,785,021 (collectively with the

12  '926 patent, "the AudioFAX patents").  Following a negotiation and acquisition by

13  j2, on February 17, 2005, AudioFAX assigned the AudioFAX patents to Catch

14  Curve, one of j2's wholly-owned litigation subsidiaries that was created specifically

15  to hold the AudioFAX patents.

16       32.    j2's acquisition of the AudioFAX patents occurred while the '132

17  patent application was still pending and prior to the reexamination of the '688

18  patent.  Because j2 was already aware that the AudioFAX patents potentially read

19  onto and were related to its system, at minimum, j2 should have disclosed the

20  AudioFAX patents to the PTO after it purchased these patents, i.e., during the

21  prosecution of the '132 patent and during the prosecution of the '688 patent

22  reexamination.  j2's failure to disclose this material information with intent to

23  deceive the PTO constitutes inequitable conduct.

24       33.    j2 is the also the assignee for, was aware of, and had in its possession, a

25  number of other patents that disclose various aspects of the claims of the '688 patent

26  and the '132 patent.  For example, j2 acquired U.S. Patent Nos. 5,870,549;

27  6,549,612; 6,693,729; and 6,707,580 all before the '688 reexamination certificate

28  issued.  These references relate to that which is embodied in the statement of grant

1  by the examiner, as well as the examiner's articulation of the novelty of the '688

2  patent.  The references were thus material to the reexamination and patentability of

3  the '688 patent, yet j2 purposely and knowingly failed to disclose this material

4  information with intent to deceive the PTO.

5  ### j2's SHAM LITIGATION AGAINST CAPTARIS

6      34.    Captaris, through its Rightfax product, was among the first entities to

7  sell a commercial product to the general public that utilized fax over network

8  technology.  In fact, it was well-known within the industry that Rightfax was being

9  sold and available to businesses long before the '688 patent application was filed,

10 and had been sold to customers in the United States and abroad in precisely the

11 same configuration that j2 now claims is its "invention" as early as 1993.

12     35.    j2 was aware that the functionality j2 now claims infringes the patents-

13 in-suit had already been incorporated into Captaris' Rightfax *several years* in

14 advance of the application date of the '688 patent or the '132 patent.  In addition,

15 Captaris' user guides and manuals associated with its Rightfax product were

16 available to the public and disclosed the functionality j2 now claims infringes the

17 patents-in-suit.

18     36.    Captaris' Rightfax product, which had been widely sold in the United

19 States and throughout the world for years before the '688 patent or the '132 patent,

20 clearly anticipates and/or renders obvious the claims in the '688 patent and the '132

21 patent as they have been asserted by j2 in this litigation.

22     37.    Prior to April 4, 2004, Motorola owned the rights to the '488 patent,

23 which is entitled a "Computerized Facsimile (FAX) System and Method of

24 Operation."

25     38.    On or about October 8, 2003, Motorola contacted Captaris to allege that

26 Captaris' Rightfax product was infringing the '488 patent, and requested that

27 Captaris take a license with Motorola.  In response, Captaris, through its counsel,

28 notified Motorola that its Rightfax product already contained the exact functionality

1  being asserted under the '488 patent as an "invention" in its commercial version of

2  Rightfax, which was being sold more than one year prior to the September 12, 1994

3  application date of the '488 patent. Captaris also made citations to a number of

4  references, including the user guides and manuals associated with Rightfax, which

5  documented this functionality.

6      39.    After reviewing the clearly invalidating prior art and the claims of prior

7  commercial use provided by Captaris, Motorola made the determination to abandon

8  any attempt to enforce the '488 patent against Captaris.

9      40.    On April 4, 2004, Motorola assigned its rights in the '488 patent to

10  Freescale Semiconductor, Inc., one of Motorola's subsidiaries. On or about July 20,

11  2004, Freescale contacted Captaris to allege that Captaris' Rightfax product was

12  infringing the '488 patent, and requested that Captaris take a license.

13     41.    Captaris, through its counsel, notified Freescale that its Rightfax

14  product already contained the exact functionality being asserted under the '488

15  patent as an "invention" in its commercial version of Rightfax being sold more than

16  one year prior to the September 12, 1994 application date of the '488 patent.

17  Captaris also made citations to a number of references, including the user guides and

18  manuals associated with Rightfax, which documented this functionality, and

19  provided courtesy copies to Freescale.

20     42.    After reviewing the clearly invalidating prior art and the claims of prior

21  commercial use provided by Captaris, Freescale, like Motorola before it, also made

22  the determination to abandon  any attempt to enforce the '488 patent against

23  Captaris.

24     43.    On March 22, 2006, j2 acquired the rights to the '488 patent from

25  Freescale and, on July 25, 2006, j2 assigned the rights in the '488 patent to its

26  litigation vehicle Dynamic Depth.

27

28

Loeb & Loeb
imited Liability Partnership
Including Professional

CAPTARIS' ANSWER AND COUNTERCLAIM
TO FIRST AMENDED COMPLAINT

44.     Notwithstanding the fact that Dynamic Depth was theoretically the
"owner" of the rights to the '488 patent, on or about May 17, 2007, j2, not Dynamic
Depth, contacted Captaris seeking for Captaris to license the '488 patent.

45.     Following this demand by j2, Captaris, through its counsel, informed j2
that it had already been through similar exchanges with both Motorola and
Freescale, both of whom opted not to attempt to enforce the '488 patent against
Captaris.  Captaris also provided its j2 with its correspondence with those and an
explanation how its Rightfax product already contained the exact functionality being
asserted under the '488 patent in the commercial version of Rightfax, which was
being sold more than one year prior to the September 12, 1994 application date of
the '488 patent.  Finally, Captaris made citations to a number of prior art references,
including the user guides and manuals associated with Rightfax, which documented
this functionality, and provided courtesy copies to j2.

46.     Rule 11 of the Federal Rules of Civil Procedure ("Rule 11") places an
affirmative obligation on a party and its attorney to perform an investigation prior to
filing a complaint alleging wrongdoing.  Moreover, the initiation of a lawsuit for
which a proper pre-filing investigation was not made in advance will not be saved
by the subsequent discovery or development of facts upon which the filing could
have been based.

47.     In the context of patent litigation, the Federal Circuit has made clear
that a mere good faith belief of infringement falls well short of Rule 11's
requirements.  To initiate patent litigation, the requirement of a pre-filing
investigation must entail more than simply observing an allegedly infringing device
from a distance and surmising how it operates from the patentee's technical or
industry know-how or experience.  Before filing a lawsuit, counsel is required to
take into consideration the patent's prosecution history and all known and available
material information and public use.

Loeb & Loeb
nited Liability Partnership
ncluding Professional
Corporations

CAPTARIS' ANSWER AND COUNTERCLAIM
TO FIRST AMENDED COMPLAINT