1  Robert A. Sacks (SBN 150146)
   sacksr@sullcrom.com
2  Brian R. England (SBN 211335)
   englandb@sullcrom.com
3  SULLIVAN & CROMWELL LLP
   1888 Century Park East, Suite 2100
4  Los Angeles, California 90067-1725
   Tel.:  (310) 712-6600
5  Fax:  (310) 712-8800

6  *Attorneys for Plaintiffs j2 Global Communications,*
   *Inc. and Advanced Messaging Technologies, Inc.*
7
8  Timothy J. Carroll (Admitted *pro hac vice*)
   tcarroll@loeb.com
   LOEB & LOEB LLP
9  321 N. Clark Street, Ste. 2300
   Chicago, Illinois 60654
10 Telephone:  (312) 464-3100
   Facsimile:  (312) 464-3111
11
12 *Attorneys for Defendants Captaris, Inc. and*
   *Open Text Corporation*

13 [additional counsel on signature page]

14
15            **UNITED STATES DISTRICT COURT**

              **CENTRAL DISTRICT OF CALIFORNIA**
16

17 J2 GLOBAL                        )  Case No. CV 09-4150 DDP (AJWx)
   COMMUNICATIONS, INC. and         )
18 ADVANCED MESSAGING               )  **JOINT STIPULATION**
   TECHNOLOGIES, INC.,              )  **CONCERNING PLAINTIFF J2**
                                    )  **GLOBAL COMMUNICATIONS,**
19                                  )  **INC.'S MOTION TO COMPEL**
                    Plaintiffs      )  **PRODUCTION OF DOCUMENTS**
20                                  )
              v.                    )  **DISCOVERY MATTER**
21                                  )
   CAPTARIS, INC. and OPEN          )  **[Cent. Dist. Civ. L. R. 37-2]**
22 TEXT CORPORATION,                )
                                    )
23                  Defendants.     )
                                    )  Judge:       Hon. Andrew Wistrich
24 _____  )  Courtroom:   690 (Roybal)
                                    )  Date:        November 14, 2011
25                                  )  Time:        10:00 a.m.
   AND RELATED CROSS-ACTION         )
26                                  )  Fact Discovery Cutoff:  Oct. 13, 2011
                                    )  Pretrial Conference:    Apr. 23, 2012
27 _____  )  Trial Date:             May 1, 2012

28

# <u>TABLE OF CONTENTS</u>

<u>Pages</u>

INTRODUCTION ........................................................................................ 1

   j2's Introduction: ................................................................................ 1

   Open Text's Introduction: ................................................................... 3

REQUESTS FOR PRODUCTION ............................................................... 6

   Request No. 3: ..................................................................................... 6

   Response to Request No. 3: .................................................................. 7

     j2's Contentions: ............................................................................ 7

      A.   This Request Seeks Discoverable Information. ....................... 7

      B.   Open Text's Objections Should Be Overruled. ......................... 8

      C.   Open Text Should Be Compelled To Produce Any Responsive Documents in Its Possession. ............................... 10

     Open Text's Contentions: ............................................................ 11

      A.   j2 Has Circumvented its Meet and Confer Obligations on This Motion. ....................................................... 11

      B.   Open Text Should Not Be Compelled To Conduct a Duplicative Search And Review Because j2 Now Seeks Additional  Documents Relating to Its Customers. ................. 12

        1.   j2 Has Been Aware This Is An Indirect Infringement Case From The Outset ............................. 13

        2.   A Great Expense, Open Text Has Already Collected, Searched, Reviewed and Produced Documents Responsive to These Requests, Using Search Terms j2 Helped Create and Approved. ............. 14

        3.   Until Now, j2 Has Never Sought Customer-Related Documents Nor Raised Any Issue Concerning the Adequacy of Open Text's Production. ................................................................... 15

        4.   This is Nothing More Than An Attempt For j2 to Try For a Second Bite At the e-Discovery Apple on the Eve of the Close of Fact Discovery .................... 16

      C.   The Burden Associated With Forcing Open Text to Search Documents  Relating to Its Roughly 28,000 Customers Far Outweighs Any Benefit That Might Result ...................................................................................... 18

-i-

1.     j2 Knows That Open Text's Fax Products Are Sold
Through Resellers, Not by Open Text Itself, and
That Open Text Does Not Track How Customers
Decide to Deploy Its Software Within Their
Individual Networks. ..................................................... 20

2.     The Customer-Related Documents Open Text
Would Have to Search Have No Connection to
This Case. ...................................................................... 21

3.     The Cost and Burden Associated With Searching
This Largely Undiscoverable and Irrelevant
Information Far Outweighs The Likely Benefit. ........... 22

D.     j2 Has Attempted to Contort and Misconstrue Open
Text's Good Faith Efforts to Ease The Burden on Its
Customers That Had Received Subpoenas ............................. 23

E.     j2's New Interpretation of Request Nos. 3(i), (r), and (u)
Is Grossly Overbroad and Unduly Burdensome ...................... 24

Request No. 16: ........................................................................ 26

Response to Request No. 16: ..................................................... 27

j2's Contentions: ................................................................. 27

A.     This Request Seeks Discoverable Information. ....................... 27

B.     Open Text's Objections Should Be Overruled. ...................... 27

C.     Open Text Should Be Compelled To Produce Any
Responsive Documents in Its Possession. ............................... 28

Open Text's Contentions: .................................................... 29

Request No. 18: ........................................................................ 30

Response to Request No. 18: ..................................................... 30

j2's Contentions: ................................................................. 30

A.     This Request Seeks Discoverable Information. ....................... 30

B.     Open Text's Objections Should Be Overruled. ...................... 31

C.     Open Text Should Be Compelled To Produce Any
Responsive Documents in Its Possession. ............................... 32

Open Text's Contentions: .................................................... 33

Request No. 3: .......................................................................... 34

Response to Request No. 3: ....................................................... 35

j2's Contentions: ................................................................. 35

-ii-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

    Open Text's Contentions: ....................................................................... 35

Request No. 15: ...................................................................................... 35

Response to Request No. 15:.................................................................. 36

    j2's Contentions: ............................................................................... 36

    Open Text's Contentions: ................................................................. 36

Request No. 18: ...................................................................................... 36

Response to Request No. 18:.................................................................. 37

    j2's Contentions: ............................................................................... 37

    Open Text's Contentions: ................................................................. 37

Request No. 13: ...................................................................................... 37

Response to Request No. 13:.................................................................. 37

    j2's Contentions: ............................................................................... 38

    Open Text's Contentions: ................................................................. 39

Request No. 14: ...................................................................................... 40

Response to Request No. 14:.................................................................. 40

    j2's Contentions: ............................................................................... 40

    Open Text's Contentions: ................................................................. 41

JOINT STIPULATION CONCERNING PLAINTIFF'S MOTION TO COMPEL

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

C<small>ASES</small>

*Aguilar* v. *Immigration and Customs Enforcement Div. of U.S. Dep't of Homeland Sec.*, 255 F.R.D. 350 (S.D.N.Y. 2008) ...................................... 19

*Chiuminatta Concrete Concepts, Inc.* v. *Cardinal Indus., Inc.*, 145 F.3d 1303 (Fed. Cir. 1998) ........................................................... 8

*Fisher* v. *Baltimore Life Ins. Co.*, 235 F.R.D. 617 (N.D. W. Va. Mar. 31, 2006) .................................... 9, 28, 31

*Gen. Steel Domestic Sales, LLC* v. *Chumley*, 2011 WL 2415715 (D. Colo. Jun. 15, 2011) ...................................... 18

*Global Tech Appliances, Inc.* v. *SEB S.A.*, 131 S. Ct. 2060 (2011) ...................................................................... 21

*Graco, Inc.* v. *PMC Global, Inc.*, 2011 WL 1114233 (D.N.J. 2011) .................................................... 19

*Joy Technologies, Inc.* v. *Flakt, Inc.*, 6 F.3d 770 (Fed. Cir. 1993) ............................................................... 21

*Lal* v. *Felker*, 2010 WL 582138 (E.D. Cal. Feb. 11, 2010) .............................. 9, 28, 31

*Lucent Techs., Inc.* v. *Gateway, Inc.*, 580 F.3d 1317 (Fed. Cir. 2009) ................................................ 7, 38, 41

*M2 Software, Inc.* v. *M2 Commc'ns, LLC*, 217 F.R.D. 499 (C.D. Cal. 2003) .......................................... 8, 27, 31

*Metabolite Labs., Inc.* v. *Lab. Corp. of America Holdings*, 370 F.3d 1354 (Fed. Cir. 2004) ................................................... 7

*Oracle USA, Inc.* v. *SAP AG*, 264 F.R.D. 541 (N.D. Cal. 2006) ................................................ 18

*Panola Land Buyers Ass'n* v. *Shuman*, 762 F.2d 1550 (11th Cir. 1985) ........................................... 28, 32

*Richmark Corp.* v. *Timber Falling Consultants*, 959 F.2d 1468 (9th Cir. 1992) ........................................... 38, 40

*Rodriguez-Torres* v. *Government Development Bank of P.R.*, 265 F.R.D. 40 (D.P.R. 2010) .................................................... 19

*Rotec Indus., Inc.* v. *Mitsubishi Corp.*, 215 F.3d 1246 (Fed. Cir. 2000) ................................................. 13

-iv-

*So* v. *Land Base LLC*,
    2009 WL 2407954 (C.D. Cal. Aug. 4, 2009) ...................................................... 12

*Thermal Design, Inc.* v. *Guardian Building Prods., Inc.*,
    2011 WL 1527025 (E.D. Wis. Apr. 20, 2011) .................................................... 18

*USF Ins. Co.* v. *Smith's Food and Drug Center, Inc.*,
    2011 WL 2457655 (D. Nev. June 16, 2011) ........................................... 8, 27, 31

**FEDERAL AND LOCAL RULES**

Fed. R. Civ. P. 26 ................................................................................................ 10, 18

Fed. R. Civ. P. 34(b) ............................................................................................ 38, 40

Fed. R. Civ. P. 37 ....................................................................................................... 1

Cent. Dist. Civ. L. R. 37 ......................................................................... 3, 10, 11, 12

-v-

Pursuant to Fed. R. Civ. P. 37 and Cent. Dist. Civ. L. R. 37-2, Plaintiffs j2 Global Communications, Inc. and Advanced Messaging Technologies, Inc. (together, "j2") and Defendants Captaris, Inc. and Open Text Corporation (together, "Open Text") hereby jointly submit this stipulation concerning j2's Motion to Compel Production of Documents.  j2's Motion seeks to compel documents responsive to Request Nos. 3(i), 3(r), 3(u), 16 and 18 in j2's Second Set of Requests for Production; Request Nos. 3(i), 3(r), 3(u), 15 and 18 in j2's Third Set of Requests for Production; and Request Nos. 13 and 14 in j2's Sixth Set of Requests for Production.

## INTRODUCTION

### j2's Introduction:

This motion seeks documents from Open Text regarding how its customers set up and use the accused products, as well as customer-specific information regarding sales and usage that is necessary for j2 to calculate damages, all of which should have been produced years ago.  j2 requested these documents starting in September 2009.  (Declaration of Edward E. Johnson ("Johnson Decl.") Exs. 1-3.)  Open Text agreed to produce them, but ultimately produced almost none before telling j2 that it had produced substantially all responsive documents. (*Id*. ¶ 5 & Exs. 4-6.)

Having been told by Open Text that it did not have any more responsive documents, j2 turned elsewhere.  Beginning in August 2011, j2 served subpoenas on roughly 50 of Open Text's customers and 15 resellers.  Open Text's story quickly changed.  In meet and confer discussions on August 22 and August 29, 2011, Open Text offered to search for the same information j2 was seeking from third parties so that the third parties would not have to provide the information.  (*Id*. ¶ 6.)  Although j2 was surprised to hear that Open Text had not yet *begun* searching for these documents, given that Open Text had represented to j2 in 2010 that its search for and production of documents responsive to j2's

1   Second and Third Sets of Requests for Production was substantially complete, j2

2   agreed to extend the deadline for the third parties to respond to the outstanding

3   subpoenas.  (*Id*. ¶ 5 & Ex. 7.)  But, once again, Open Text failed to produce any

4   documents or confirm that any further documents exist.  (*Id*. ¶ 8.)  And in a call on

5   September 8, its counsel indicated that Open Text had no customer-specific

6   information to provide.  (*Id*.)

7            Then, as the deadline for the third parties to respond to the subpoenas

8   neared, Open Text changed its story again.  In an email asking j2 to withdraw most

9   of the subpoenas and limit the rest, Open Text suggested that it *does* in fact possess

10  at least some of the information j2 seeks from the customers.  (*Id*. Ex. 8.)  But

11  when j2 asked for clarification, Open Text did not respond.  (*Id*. ¶ 10 & Ex. 9.)

12  Instead, on September 22, Open Text filed a Motion for a Protective Order seeking

13  to quash 37 subpoenas and severely limit the rest.[1]  (Dkt. 242.)  Open Text seeks

14  an order which would, among other things, prevent j2 from seeking certain

15  information from third parties until Open Text is given a chance to provide the

16  information first.  Despite having told j2 that it did not possess customer-specific

17  information just two weeks before, Open Text stated in its moving papers that it

18  "can likely provide j2 with information regarding th[e] third party's purchase of

19  Open Text's products."  (Dkt. 243 at 2.)  Open Text further argued that it already

20  had undertaken "to identify and produce certain of the [documents requested from

21  third parties] that may be in its own files, so that the third-parties would not have to

22  spend time and money locating and producing these same documents."  (*Id*. at 6.)

23            Open Text cannot have it both ways.  It cannot tell j2 that it has no

24  documents when j2 tries to enforce its document requests, then turn around and tell

25  the Court that it might have documents in order to prevent j2 from obtaining the

26  information from third parties.  Open Text should be ordered to stop playing

27  ──────────────────

28  [1]    Open Text's motion is set for hearing on November 7, 2011, at the same time as this motion.

-2-

games.  It should be compelled to produce all documents responsive to the requests identified below, or certify that it has none and immediately cease all attempts to block j2 from obtaining these documents from third parties.

**Open Text's Introduction:**

j2's motion to compel should be denied for many reasons, not the least of which is that j2 has disregarded the meet-and-confer obligations under C.D. Cal. L. R. 37-1 and 37-2.  j2's motion also lacks substantive merit for at least the following reasons: Under, a year and a half ago, Open Text collected and produced *hundreds of thousands* of pages of documents responsive to these same discovery requests, using search terms that *j2 helped develop and approve*, and at a cost to Open Text of approximately $500,000.  Now, at the end of fact discovery, j2 seeks to thrust upon Open Text the extreme burden and expense of starting a brand new document collection, based solely on j2's *speculation* that Open Text might not have produced all relevant customer-related documents.  Second, besides being unduly burdensome, such a document collection would in all likelihood be futile.  That is because the accused products here are sold to customers almost exclusively through resellers, and not directly by Open Text itself.  As a result, virtually all of the customer-related documents Open Text possesses do not contain the customer configuration details that j2 now seeks.  Third, Open Text's understandable opposition to j2's desperate attempt to subpoena and depose 66 of Open Text's customers, with only a month and a half remaining before the close of discovery, cannot be contorted as Open Text denying discovery to j2.  Open Text has merely sought to limit the burden that j2's last-minute fishing expedition has imposed on its customers.

As a threshold matter, j2 never disclosed its intent to file this motion, nor even *attempted* to meet and confer regarding any supposed deficiencies in Open Text's document production.  This motion was filed without any forewarning, thus denying Open Text an opportunity to discuss a compromise that

-3-

1  might have avoided burdening the Court with yet another motion.  j2's failure to

2  meet and confer is especially egregious given that, on the very day that j2 sent this

3  joint stipulation to Open Text, two of j2's attorneys sat across a table from Open

4  Text's attorneys in a deposition of another Open Text witness for 9 hours – yet

5  failed to mention that they were serving a motion to compel that same evening.

6  This motion should be denied in light of j2's conduct, as the motion is nothing

7  more than a vehicle to burden Open Text with wasteful motion practice.

8          j2's motion should also be denied on substantive grounds because it is

9  devoid of merit.  j2 attempts to create an impression – which is *false* – that Open

10  Text has improperly withheld critical documents that are responsive to j2's

11  requests for production.  What j2 fails to inform the Court is that after it served its

12  Requests for Production, Open Text collected a vast amount of electronic data.

13  Open Text then met and conferred repeatedly with j2 concerning search terms that

14  would be applied to the data.  During this process, j2 suggested numerous terms to

15  be added in the list, and had every opportunity to include additional terms j2

16  believed might target the customer-related documents it now seeks.  However, j2

17  never requested the inclusion of such terms, nor even made any attempt to identify

18  customer-specific documentation.

19          Utilizing the very search terms j2 approved and helped create, Open

20  Text electronically searched for, reviewed and produced over *two hundred*

21  *thousand responsive pages* (at a cost of close to a half-million dollars).  Following

22  that production a year and a half ago, j2 has *never once* complained that the

23  production omitted the customer-specific information.  If j2's search terms failed

24  to hit upon every document it now wants, j2 has no one but itself to blame.  j2

25  knew from the outset that this is, at best, an indirect infringement case.  Now, with

26  discovery about to close, j2 unfairly seeks for Open Text to start this process over

27  and duplicate its burden and expense searching for documents that j2 failed to seek

28  the first time around.  To be clear, this would not be minor or incremental burden

-4-

on Open Text – rather, it would require Open Text to re-start its electronic discovery from the beginning, and incur hundreds of thousands of dollars in additional costs.

Even if it were fair for Open Text to remedy j2's failures by repeating its substantial discovery efforts for a second time, it would be a fruitless exercise and a waste of resources.  Because of Open Text's distribution model, it simply does not possess the documents j2 claims it needs.  Open Text has repeatedly informed j2 that its fax server products are almost exclusively sold to customers by third-party resellers, *not by Open Text itself*.  Because it is not the party primarily interfacing with the customer, Open Text does not track how those customers decide to deploy its fax software.

Tellingly, at this late stage, j2 cannot allege a single instance of an Open Text customer directly infringing one of the patents-in-suit, or of Open Text inducing or contributing a customer's direct infringement.  Thus, this entire motion is nothing more than a fishing expedition.  No valid reason exists for Open Text to spend hundreds of thousands more dollars reviewing and producing large volumes of documents, that are *not even pertinent to this case*, especially considering j2 only raised this issue for the first time at a very late stage in discovery and could have sought such information the first time Open Text searched its electronic records.

Finally, j2's attempt to portray Open Text as obstructing j2's efforts to obtain discovery is incorrect.  Open Text has *not* tried to prevent j2 from taking a *reasonable* amount of third-party discovery from its customers so long as that discovery is limited to documents, if any, that show those customers' fax server configurations.  What Open Text opposes is j2's attempt to obtain *unreasonable, overbroad, overly burdensome and late* discovery from its customers, seeking irrelevant financial, sales, and marketing documents, and requesting at the last-minute to take 66 third-party depositions.  j2 also mischaracterizes Open Text's

-5-

1  statements concerning its willingness to search for certain, limited documents that

2  j2 has requested from Open Text's customers.  Open Text has never represented

3  that it has *no* customer-specific information, only that it might be able to search for

4  things such as contracts with the original 27 subpoenaed customers (which are

5  nevertheless irrelevant) as an offer to compromise and to ease its customers'

6  burden.  That, however, is something very different than searching and producing

7  mostly irrelevant information concerning all of the 28,000-plus customers of Open

8  Text's fax products, which is what j2 seeks here.

9  ### REQUESTS FOR PRODUCTION

10  ### Second Set of Requests for Production

11  **Request No. 3:**

12         For each Captaris product or service related to email to fax

13  functionality including, but not limited to, RightFax software and servers, all

14  documents and things concerning:

15       . . .

16       i.    illustrations or descriptions of the installation, operation, use or

17                 suggested use of the product or service including, but not

18                 limited to, user's guides, technical manuals, service manuals,

19                 installation guides, functional specifications, software

20                 functional specifications, software design documentation,

21                 software flow charts, or any other documentation concerning

22                 the use or performance of each product or service;

23       . . .

24       r.    the formation of any technical or commercial arrangement,

25                 including any agreements, between Captaris and any other

26                 person relating to the development, marketing, sale, license, or

27                 distribution of the product or service;

28       . . .

-6-

1    u.  advertisement, brochures, or promotional material for the

2      product or service.

3 **Response to Request No. 3:**

4    Subject to and without waiving each of the foregoing General

5 Objections, Captaris further objects to this Request as overly broad, exceedingly

6 multi-faceted, incomprehensible and premature, and objects on the basis that it

7 seeks information that is confidential, proprietary and trade secret information.

8 Captaris further objects to this request as, in part, calling upon Captaris to produce

9 documents already in Plaintiffs' possession.

10 **j2's Contentions:**

11   **A.**  **This Request Seeks Discoverable Information.**

12    This Request seeks documents (1) demonstrating how Open Text's

13 customers have set up and used the accused products (subsection (i)); (2)

14 agreements regarding the use of the accused products (subsection (r)); and (3) how

15 Open Text instructed or suggested that the accused products be used (subsection

16 (u)).  These documents are vital to j2's ability to prove infringement, inducement,

17 and damages.

18    Subsection (i):  To demonstrate that Open Text indirectly infringes its

19 patents, j2 must prove that at least one of Open Text's customers directly infringes

20 the patents-in-suit.  *See Metabolite Labs., Inc.* v. *Lab. Corp. of America Holdings*,

21 370 F.3d 1354, 1364 (Fed. Cir. 2004).  This requires information, sought by

22 subsection (i), about how Open Text's customers ultimately use Open Text's

23 products, because whether a customer infringes depends on how that customer

24 configures its Open Text system.  Moreover, information about a large number of

25 customers is crucial because, in order to support a damages award in an indirect

26 infringement case, the plaintiff must offer evidence of how often the accused

27 product was used to infringe.  *See Lucent Techs., Inc.* v. *Gateway, Inc.*, 580 F.3d

28

1317, 1334-35 (Fed. Cir. 2009) (vacating damages award where there was no evidence of how many users had performed the patented method).

Subsection (r):  In addition to technical information about how customers have set up the system, j2 needs usage and financial information regarding Open Text's customers and resellers, including the number of individual users or phone lines at each corporate customer, to estimate the damages caused by infringement.  Subsection (r) seeks customer and reseller agreements which potentially will provide information about payments made by individual customers and resellers, the products or services they purchased or re-sold, and information related to usage such as the capacity of the licensed system or the number of authorized users.

Subsection (u):  Open Text's sales and marketing materials will show how Open Text instructed or encouraged its customers to configure and use the accused products.  Thus they are directly relevant to whether Open Text induced its customers' infringement.  *See Chiuminatta Concrete Concepts, Inc.* v. *Cardinal Indus., Inc.*, 145 F.3d 1303, 1312 (Fed. Cir. 1998).

**B.    Open Text's Objections Should Be Overruled.**

Although Open Text initially objected to this Request, it eventually conceded that the Request seeks relevant and responsive documents and agreed to produce them.  (Johnson Decl. Ex. 6.)  Having admitted its obligation to produce documents responsive to this request, Open Text cannot now raise new objections.  *See  M2 Software, Inc.* v. *M2 Commc'ns, LLC*, 217 F.R.D. 499, 501 (C.D. Cal. 2003)  ("M2 Software may not claim at this late date that the requested documents are irrelevant or beyond the scope of the lawsuit.  It has already waived relevancy objections by responding to each request that it will produce the requested documents.").  Moreover, the boilerplate objections that Open Text originally asserted are facially meritless.  *See, e.g.*, *id.* (finding that generalized, boilerplate objections are not sufficient to raise any substantial, meaningful or enforceable

-8-

objections); *USF Ins. Co.* v. *Smith's Food and Drug Center, Inc.*, 2011 WL 2457655, at *3 (D. Nev. June 16, 2011) ("boilerplate or generalized objection is 'tantamount to not making any objection at all'" (quoting *Walker* v. *Lakewood Condo Owners Assoc.*, 186 F.R.D. 584, 587 (C.D. Cal. 1999))).

Even if the Court considers Open Text's objections, they should be overruled.  *First*, the Request is not overly broad.  It is limited to documents necessary to establish infringement, inducement and damages.  *See Fisher* v. *Baltimore Life Ins. Co.,* 235 F.R.D. 617, 629 (N.D. W. Va. Mar. 31, 2006) (compelling production of "all documents [] which evidence or relate to any item of claimed damages"); *Lal* v. *Felker*, 2010 WL 582138, at *2 (E.D. Cal. Feb. 11, 2010) (boilerplate objections, including that requests are "overly broad," are improper).

*Second,* Open Text objects that the Request is "exceedingly multi-faceted," presumably because it is broken into subparts.  A document request with multiple subparts is substantively identical to separate requests and is not objectionable.

*Third*, the Request is not incomprehensible.  It refers to specific types of documents related to the accused products, and if Open Text did not understand any aspect of the request it could have clarified it when the parties met and conferred.

*Fourth*, the Request is not premature.  These Requests have been outstanding for two years and fact discovery is nearly complete.

*Fifth*, Open Text objects on the grounds that the Request seeks confidential, proprietary information and trade secrets.  This objection is without merit.  A Protective Order was entered in this action permitting the parties to restrict access to documents produced in discovery to outside counsel, experts and consultants, and individuals who have previously seen the documents.  (Dkt. 171.) The Protective Order further provides that "[n]o information may be withheld from

-9-

1   discovery on the ground that the material to be disclosed requires protection

2   greater than that afforded by this Protective Order unless the party claiming a need

3   for greater protection moves for an order providing such special protection

4   pursuant to Rule 26(c) and Local Rules 37-1 through 37-4." (*Id.* ¶ 19.)  Open Text

5   has not moved for any such order.  Nor would such an order be granted, given that

6   no one at j2 (other than outside counsel) will be able to see documents designated

7   Restricted Confidential under the existing Protective Order.

8           *Finally*, Open Text objects on the ground that these documents are

9   already in j2's possession.  This is simply inaccurate.  These documents relate to

10  Open Text's customers and resellers, and j2 does not have them.  The only other

11  potential source of this information is the customers and resellers themselves, and

12  Open Text has moved to prevent j2 from obtaining the information from them

13  partly on the grounds that j2 should seek it from Open Text.

14          **C.    Open Text Should Be Compelled To Produce Any Responsive Documents in Its Possession.**

15

16          j2 has reviewed the documents produced by Open Text in this action

17  and located only a handful of documents responsive to subsections (i) and (r).

18  (Johnson Decl. ¶ 5.)  Open Text has produced documents responsive to subsection

19  (u), but it is unclear whether it has produced all responsive documents.  As set

20  forth in the introduction, Open Text first told j2 its production was complete; then

21  offered to *begin* searching for responsive documents; then indicated that there were

22  no more responsive documents to be produced; then told the Court that j2 should

23  be prevented from seeking this information from third parties because Open Text

24  can produce it.  Open Text's positions are consistent only in that they are all

25  directed to preventing j2 from obtaining information that is clearly discoverable

26  and is crucial to j2's case.  Open Text should be compelled to produce all

27  responsive documents in its possession, custody or control or to certify that none

28  exist and withdraw its objections to j2's subpoenas.

**Open Text's Contentions:**

    **A.**    **j2 Has Circumvented its Meet and Confer Obligations on This Motion.**

As a threshold matter, j2's motion to compel should be denied in its entirety for the independent reason that j2 has completely ignored its obligation under C.D. Cal. L.R. 37-1 and 37-2 to meet and confer with Open Text.  C.D. Cal. L. R. 37-1 states, in relevant part:

> Prior to the filing of any motion relating to discovery pursuant to F.R.Civ.P. 26-37, counsel for the parties *shall confer in a good faith* effort to eliminate the necessity for hearing the motion or to eliminate as many of the disputes as possible.  *It shall be the responsibility of counsel for the moving party to arrange for this conference.* ... Unless relieved by written order of the Court upon good cause shown, counsel for the opposing party shall confer with counsel for the moving party within ten (10) days after the moving party serves a letter requesting such conference.  The moving party's letter shall identify each issue and/or discovery request in dispute, shall state briefly with respect to each such issue/request the moving party's position (and provide any legal authority which the moving party believes is dispositive of the dispute as to that issue/request), and specify the terms of the discovery order to be sought.  [Emphasis added]

Furthermore, Local Rule 37-2 states that a joint stipulation shall only be sent *after* the parties have met and conferred as contemplated by Rule 37-1.

j2 has disregarded its obligations under Local Rules 37-1 and 37-2. The first time j2 gave Open Text any indication that it would file the instant motion was on Thursday, October 6, 2011, when it sent this joint stipulation to Open Text's counsel.  Carmody Decl. ¶ 10.  Prior to sending this joint stipulation, the parties _never_ met and conferred about j2 filing a motion concerning *Open Text's* document production.  Among other things, j2:

- never tried to schedule a meet-and-confer to discuss *Open Text's* production of customer information (*id.*);

- never identified the document requests that it believed Open Text had not completely responded to, nor explained why it believed Open Text's responses to those particular requests were inadequate (*id.*);

-11-

- never discussed how Open Text might reasonably search for additional relevant documents, such as by proposing additional search terms (*id*.);

- never gave Open Text an opportunity to propose a compromise on the issues raised in this motion (*id*.); and

- never let Open Text know that if it did not produce additional documents by a unilaterally set deadline known only to j2, that j2 would bring this motion to compel (*id*.).

The record shows that this motion to compel is nothing more than a manufactured controversy put forth by j2 as a tit-for-tat response to Open Text's recently filed motion for protective order (to the extent that this motion is now noticed up on the same day).  For example, on October 6, 2011, the day that j2 sent this joint stipulation to Open Text, two different j2 attorneys spent over nine hours in a deposition room with Open Text's attorneys without ever once mentioning that they intended to bring this motion *that very same day*.  j2's tactics violate Local Rules 37-1 and 37-2, therefore, j2's motion to compel should be denied in its entirety.  *See So v. Land Base LLC*, Case No. No. CV 08-03336 DDP (AGRx), 2009 WL 2407954, at * (C.D. Cal. Aug. 4, 2009) (Pregerson, J.) (denying defendant's discovery motion due in part to failure to meet and confer as required by the Local Rules).

**B.    Open Text Should Not Be Compelled To Conduct a Duplicative Search And Review Because j2 Now Seeks Additional Documents Relating to Its Customers.**

Even if the Court were to overlook j2's failure to abide by the Local Rules, j2's motion should be denied on substantive grounds.  j2 concedes, as it must, that it cannot prevail on its indirect infringement claims unless Open Text has actually induced or contributed to its customers' supposed infringement of j2's patents.  Yet, even after Open Text searched for and produced hundreds of thousands of pages at a cost of nearly half a million dollars – and using search

-12-

terms that j2 agreed to – j2 wants to start the process over again with barely over a month remaining in discovery.

Not only there is there is *no evidence* that Open Text has actually induced a single customer's alleged patent infringement, but there is even less reason to believe that Open Text possesses such information.  j2 also offers no explanation why it never attempted to identify a need for such information when Open Text performed its original search and production, or why it waited until a month before the close of discovery to raise this issue.  Even now, j2 fails to offer any reasonable limitation, or even a suggestion how to search the hundreds of thousands of documents relating to Open Text's 28,000-plus customers, the vast majority of which have absolutely no relevance here, looking for documents that j2 merely *speculates* Open Text might have.

**1.  j2 Has Been Aware This Is An Indirect Infringement Case From The Outset.**

From the very beginning, this has always been an indirect infringement case.  After all, one cannot be held liable for direct infringement for making or selling less than a complete invention.  *See Rotec Indus., Inc. v. Mitsubishi Corp.,* 215 F.3d 1246,1252 n. 2 (Fed. Cir. 2000).  This is particularly true where, as here, the accused product is merely software, which must be loaded onto hardware and operated by an end-user in order to function. *Id.*  Thus, j2 has never been under an illusion that it could prove its case without customer-specific information.  There is nothing new that has happened in this litigation over the past three years – including since Open Text's initial document collection –  that has changed this fact.

## 2.    A Great Expense, Open Text Has Already Collected, Searched, Reviewed and Produced Documents Responsive to These Requests, Using Search Terms j2 Helped Create and Approved.

In response to these very same document requests that are at issue in this motion, Open Text previously engaged in an extensive, and costly, document collection, review and production that took place almost a year and a half ago. This process began at the outset of the case when Open Text collected a vast amount of electronic data related to the allegations in the Complaint. Carmody Decl. ¶ 2  The particular document requests at issue date as far back as September 2009. *See* Johnson Decl. Exh. 1.  Subject to and without waiving Open Text's objections to those requests at issue (*see id*. at Exh's 4, 5), after the document requests were served, Open Text repeatedly met-and-conferred with j2 concerning the document production in general, and, specifically, the search terms that would be applied to the electronic data.  Carmody Decl. ¶ 3.  During this process, j2 suggested numerous terms to be added in the list, and had every opportunity to include any additional terms j2 believed would be necessary to target the customer-related documents it now seeks.  *Id.*  j2 never made a single mention of any specific desire to collect customer-specific documentation, nor requested the inclusion of terms that would target such documents.  *Id.*

Utilizing the very search terms j2 approved and helped create, over a year ago, Open Text electronically searched for, reviewed and produced over two hundred thousand responsive pages.  Carmody Decl. ¶ 3.  Open Text's document collection and production was thorough and burdensome.  Among other things, Open Text:

- engaged an outside forensic consultant to assist in electronic document collection (*id.*);

- captured images of numerous hard drives and electronic databases (*id.*);

- processed the electronic data and created an electronic database in which it could be viewed (*id.*);

-14-

- worked with j2 to develop search terms that would be used to identify responsive documents (*id.*);

- negotiated and reached agreement with j2 regarding anomalies in the search results (*id.*);

- had attorneys review hundreds of thousands of pages of documents and identify and remove any privileged documents (*id.*);

- had its attorneys engage in "quality control" reviews to ensure that its document production was appropriate (*id.*); and

- converted the documents into the appropriate electronic format and produced them to j2 (*id.*).

Open Text's collection and production of electronic documents was not just burdensome, but it was very costly. Indeed, Open Text has incurred nearly a half million dollars in costs and fees in connection with its collection, review and production of documents to j2. *Id.*

Notably, j2 has demanded – and Open Text has diligently provided – substantial discovery beyond its document production. For example, Open Text has made its source code available to j2 on at least two occasions, and j2 has reviewed the source code. Carmody Decl. ¶ 4. Open Text has answered multiple sets of interrogatories served by j2, and allowed j2 to take the depositions of 8 separate current and former employees. In addition, j2 has subpoenaed and obtained documents from third parties. *Id.*

### 3.   Until Now, j2 Has Never Sought Customer-Related Documents Nor Raised Any Issue Concerning the Adequacy of Open Text's Production.

Open Text has already searched for and produced documents responsive to this Request. The difference here is that j2, for the first time in two years, now attempts to claim that its Requests also encompass any documents having anything to do with Open Text's more than 28,000 customers. j2's recent interpretation of this Request is highly dubious for several reasons. <u>First</u>, on their face, all but the most recent Requests do not specifically reference customer-specific information at all. <u>Second</u>, despite the numerous meet and confer sessions the parties have had in over two years of litigation, until recently j2 never indicated

-15-

1    any intention to have its Requests target all customer-specific documents (which
2    would have been objected to and grossly overbroad in any event).  Third, when
3    presented with the opportunity to add search terms that would target customer-
4    specific documentation, j2 never added such terms.  And fourth, in the year and a
5    half since Open Text completed its production, j2 never once mentioned that the
6    production was somehow lacking customer information that it now pretends it was
7    seeking all along.

8         j2's tardy change of position, after Open Text has already searched,
9    reviewed and produced its documents, and with very little time remaining in
10   discovery, ought to be rejected outright.

11        **4.    This is Nothing More Than An Attempt For j2 to Try For a
12              Second Bite At the e-Discovery Apple on the Eve of the
              Close of Fact Discovery.**

13        Beginning in August 2011 – with the close of fact discovery just
14   weeks away – j2 realized that it had no evidence that Open Text had actually
15   induced its customers to infringe j2's patents.  Nor did j2 have evidence that even
16   one Open Text customer had utilized a fax server configuration that allegedly
17   infringed its patents.  Faced with the reality that after years of discovery it could
18   not prove its case, j2 has now embarked on a desperate, last minute campaign to
19   scrape together some evidence that could sustain its indirect infringement case.

20        First, beginning in August 2011, j2 issued document subpoenas to
21   sixty-six (66) of Open Text's customers and re-sellers.  Carmody Decl. ¶ 5.  The
22   subpoenas contained a total of 638 individual document requests, including
23   requests aimed not only at the third-parties' fax server configurations, but also a
24   broad array of financial, sales, marketing and other information.  *Id*.  Open Text
25   objected to the subpoenas on several grounds, including that they were overly
26   broad and unduly burdensome because they sought documents from third-parties
27   that j2 had no valid reason to believe were infringing its patents.  *Id*.  After
28   multiple conferences of counsel, including a September 8, 2011 teleconference, the

-16-

1  parties were unable to reach a consensus about the proper scope of third-party
2  discovery.  *Id.* ¶ 6.  Therefore, on September 22, 2011, Open Text filed a motion
3  for a protective order relating to the third-party subpoenas.  *See* Dkt. Nos. 242,
4  243.  Open Text's motion is scheduled to be heard on November 14, 2011.  *See*
5  Dkt. No. 271.

6         Notably, at no point during meet-and-confer sessions did j2 inform
7  Open Text that it was considering filing a motion to compel the production of
8  documents *from Open Text*.  Carmody Decl. ¶ 6.  However, during the September
9  8, 2011 meet-and-confer session, j2 did inform Open Text for the first time that it
10  wanted to take the third-party depositions of Open Text's customers and re-sellers.
11  After Open Text objected to those depositions on a number of grounds, including
12  that j2 had no valid reason to believe the depositions were necessary, j2 filed with
13  this Court a motion for leave to take nearly 70 additional depositions.  Dkt. Nos.
14  240, 241.  That motion is also scheduled to be heard on November 14, 2011.  *See*
15  Dkt. No. 271.

16         Open Text argued in support of its motion for a protective order (Dkt.
17  No. 243), and in opposition to j2's motion for additional depositions (Dkt No.
18  241), that the third-party discovery j2 sought was unreasonably broad and
19  burdensome.  Because j2 had waited until the last minute to begin seeking third-
20  party discovery, it was unable to proceed in a reasonable and conscientious manner
21  (*i.e.*, by first identifying customers that might even have an allegedly infringing fax
22  server configuration, and *then* seeking sales, marketing, and other documents
23  concerning those individual customers.)  Rather, j2 sought to impose substantial
24  burdens and expenses on each of 66 haphazardly selected customers and re-sellers
25  based on j2's rank speculation that some of them *might* possess relevant
26  information.

27         Notably, Open Text has never sought to prevent j2 from obtaining a
28  *reasonable* amount of third-party discovery regarding its customers' fax server

-17-

1  configurations.  Quite to the contrary, Open Text has not opposed allowing j2 to

2  take document discovery from up to 27 third-parties regarding their fax server

3  configurations.  If the documents provide j2 with good cause to believe that

4  individual third-parties have adopted an allegedly infringing configuration, then j2

5  can proceed to take limited discovery regarding those particular customers'

6  financial information, sales, and communications with Open Text.  In short, Open

7  Text has merely attempted to ensure that j2's third-party discovery is reasonable

8  and minimizes the burdens on the subpoena recipients, who are not parties to this

9  litigation and who are valued customers of Open Text.

10
11  **C.    The Burden Associated With Forcing Open Text to Search
        Documents Relating to Its Roughly 28,000 Customers Far
        Outweighs Any Benefit That Might Result.**

12          j2 advances the misguided theory that as long as Open Text might

13  potentially possess a document that could be relevant in some tangential way,

14  Open Text must search for and produce that document regardless of how

15  burdensome it would be to do so.  j2 is wrong.  Federal Rule of Civil Procedure 26

16  "requires the Court to limit discovery if 'the burden or expense of the proposed

17  discovery outweighs its likely benefit,' after consideration of a number of factors.

18   *Oracle USA, Inc. v. SAP AG*, 264 F.R.D. 541, 542 (N.D. Cal. 2006) *citing* Fed. R.

19  Civ. P. 26(b)(2)(C).  Specifically, "production of electronically stored information

20  may be limited if the sources of the information are 'not reasonably accessible

21  because *of undue burden or cost*.'"  *Oracle*, 264 F.R.D. at 542 *citing* Fed.R.Civ.P.

22  26(b)(2)(B) (emphasis added).  This principle prevents a litigant from having to

23  undertake an "extreme[ly] burden[some]" "fishing expedition" to locate potentially

24  relevant documents from among its electronic files.  *Thermal Design, Inc. v.*

25  *Guardian Building Prods., Inc.*, No. 8-C-828, 2011 WL 1527025, *1 (E.D. Wis.

26  Apr. 20, 2011); *see also Gen. Steel Domestic Sales, LLC v. Chumley*, 2011 WL

27  2415715, *3 (D. Colo. Jun. 15, 2011) (denying motion to compel production of

28  electronic information regarding party's communications with its customers, due to

-18-

1    the time and cost involved with locating, reviewing, and producing such

2    information); *Rodriguez-Torres v. Government Development Bank of P.R.*, 265

3    F.R.D. 40, 44 (D. P.R. 2010) (denying a motion to compel production of electronic

4    information because the estimated $35,000.00 cost of production was too high).  It

5    is particularly appropriate to deny a motion to compel electronic discovery where,

6    as here, a party has already conducted a reasonable search for electronic

7    information.  *See Aguilar v. Immigration and Customs Enforcement Div. of U.S.*

8    *Dep't of Homeland Sec.*, 255 F.R.D. 350, 360 (S.D.N.Y. 2008) (denying plaintiffs'

9    motion to compel defendants to conduct a second, "more exhaustive search" for

10   electronic information, in light of burden and cumulativeness); *Graco, Inc. v. PMC*

11   *Global, Inc.*, No. 08-1304, 2011 WL 1114233, *45 (D. N.J. 2011) (denying in part

12   motion to compel production of additional documents, based prior production of

13   documents consistent with the parties' agreement regarding scope of production).

14          The Federal Circuit Court of Appeals recently made its voice heard on

15   the undue burdens of electronic discovery, as it issued an E-discovery Model Order

16   (Carmody Decl. Exh. B) that addresses the fact that "[p]atent cases … tend to

17   suffer from disproportionally high discovery expenses" (*id.*, introduction at 1).

18   Through the Model Order, the Federal Circuit has attempted to "streamline e-

19   discovery … rather than permitting unlimited fishing expeditions." *Id.*

20   (introduction at 2).  The Federal Circuit stated :

21          In recent years, the exponential growth of and reliance on
       electronic documents and communications has exacerbated
22     [electronic] discovery abuses.  Excessive e-discovery, including
       disproportionate, overbroad email production requests, carry
23     staggering time and production costs that have a debilitating effect on
       litigation.  Routine requests seeking all categories of Electronically
24     Stored Information often result in mass productions of marginally
       relevant and cumulative documents.  Generally, the production burden
25     of these expansive requests outweighs the minimal benefits of such
       broad disclosure.
26          Most discovery in patent litigation centers on what the patent
       states, how the accused products work, and what the prior art
27     discloses, and the proper calculation of damages.  These topics are
       normally the most consequential in patent cases.  Thus, far reaching e-
28     discovery, such as mass email searches, is often tangential to
       adjudicating these issues.

-19-

1   *Id.*  To address overly broad and burdensome e-discovery, the Federal Circuit's

2   model order limits the scope of e-discovery (*id.*, Model Order ¶¶ 5-11), requires

3   the requesting party to specify the particular custodians and search terms (with a

4   limit of five custodians and search terms per request) (*id*), and provides for cost-

5   shifting with respect to disproportionate electronic discovery requests (*id.* ¶ 3).

6        The Federal Circuit's sound reasoning applies with full force to this

7   motion.  j2's overly broad, highly burdensome, and unfocused discovery requests –

8   which will yield, at best, marginally relevant documents – are a quintessential

9   "fishing expedition" of the type that the Federal Circuit has sought prevent.

10   Indeed, as described below, there are several reasons why the burden to Open Text

11   of conducting another search to identify the requested documents plainly

12   outweighs any minimal, potential relevance those documents may have.

13       **1.**    **j2 Knows That Open Text's Fax Products Are Sold**

14                 **Through Resellers, Not by Open Text Itself, and That Open Text Does Not Track How Customers Decide to Deploy Its**

15                 **Software Within Their Individual Networks.**

16        There is absolutely no reason to believe that Open Text even

17   possesses relevant documents concerning its customers' fax server configurations.

18   As j2 is well aware, Open Text's business model for the products at issue is that

19   they are overwhelmingly sold by independent third-party re-sellers.  Carmody

20   Decl. ¶ 7.  Open Text typically receives virtually no information (if any) about how

21   the end users are using Open Text's products.  It would be highly unusual for Open

22   Text to obtain the documents j2 seeks concerning the customers' fax server

23   configurations.  *See id.*  Therefore, the document collection that j2 would have

24   Open Text undertake is not just burdensome – but in all likelihood it will not yield

25   the detailed information regarding the customers' fax server configurations that j2

26   claims to seek by way of this motion.

27        j2 attempts to confuse the issue by suggesting that *any* customer-

28   related documents necessarily would bear on j2's alleged theory of indirect

infringement.  However, large volumes of sales invoices, SKU sheets, and other routine, perfunctory sales documentation, which may happen to be linked to, or identify a customer, would <u>contain no information about a customer's network configuration</u>.  In other words, the very information that j2 claims it needs in order to try to show infringement is unlikely to be found in the types of customer-related documents that Open Text does maintain.  Thus, virtually all of Open Text's customer information is immaterial to this case.

### 2. The Customer-Related Documents Open Text Would Have to Search Have No Connection to This Case.

Even if Open Text did possess the documents j2 is seeking, this motion nevertheless should be denied because such documents are irrelevant to any issue in this case.  For example, in order to prove indirect infringement, j2 will have to demonstrate that Open Text's customers have directly infringed the patents-in-suit.  *See Joy Technologies, Inc. v. Flakt, Inc.*, 6 F.3d 770, 774 (Fed. Cir. 1993).  However, j2 has no evidence that even one of Open Text's customers or re-sellers is directly infringing its patents.  In the absence of *any* evidence that j2's customers are directly infringing j2's patents, Open Text cannot be liable for indirect infringement.  *Id.*  Therefore, any financial, marketing, sales or other documents Open Text may have regarding its customers, which j2 suggests is necessary to calculate damages on its meritless indirect infringement case, is irrelevant.

Moreover, none of the requested documents are relevant to the extent they pre-date Open Text's actual knowledge of the patents asserted in this case.  That is because an indirect infringement case "requires knowledge that the induced acts constitute patent infringement", *i.e.*, "knowledge of the existence of the patent that is infringed."  *Global Tech Appliances, Inc. v. SEB S.A.*, 131 S.Ct. 2060, 2068 (2011).  There is no evidence that Open Text was aware of the patents at issue before j2 commenced this case in June 2008.  Therefore, even if Open Text is

-21-

1    required to produce some additional documents on the theory that they are relevant

2    to j2's indirect infringement claims, they should be limited to documents (if any)

3    from June 2008 or later.  Documents from before June 2008 are simply irrelevant,

4    as they would not support a viable indirect infringement claim.

5        **3.     The Cost and Burden Associated With Searching This Largely Undiscoverable and Irrelevant Information Far**

6        **Outweighs The Likely Benefit.**

7            As described above, Open Text has already satisfied its discovery

8    obligations by conducting a good faith search for responsive documents, at great

9    expense and burden to Open Text.  To force Open Text to start anew, and search

10   its millions of documents again using new search criteria that j2 excluded from its

11   initial set of search terms is unreasonable.  At minimum, such a search would be

12   exceedingly expensive.

13           Notably, to the extent j2 lacks information regarding Open Text's

14   customers' fax server configurations, Open Text has not opposed *reasonable*

15   efforts by j2 to locate such documents.  For instance, Open Text does not oppose

16   j2's efforts to obtain configuration documents from particular customers that it has

17   good cause to believe have adopted allegedly infringing configurations.  But j2 has

18   no valid reason to believe that even one of Open Text's customers has an allegedly

19   infringing configuration, and therefore has taken the scattershot approach of

20   subpoenaing as many customers as it could identify.  Even still, Open Text has not

21   tried to prevent j2 from taking any configuration discovery from those haphazardly

22   selected customers.  Rather, it has sought to limit j2's fishing expedition to a

23   reasonable number of customers and re-sellers.

24           Finally, to the extent that j2's motion to compel is granted, j2 should

25   bear the costs (including attorneys' fees) of identifying and producing additional

26   documents, because (a) Open Text has already conducted a reasonable and good

27   faith document collection, using search terms that j2 provided, (b) j2 did not object

28   to Open Text's document production until the last minute, (c) there is no reason to

-22-

1   believe that Open Text possesses material, unproduced documents regarding its

2   customers' fax server configurations, (d) much of the information j2 is seeking is

3   irrelevant, and (e) it will, in all likelihood, be extremely burdensome and expensive

4   for Open Text to search for and produce any additional responsive documents it

5   might have.

6          In short, j2 cannot prove its case.  The Court should not condone j2's

7   effort to impose unreasonable and duplicative burdens and expenses on Open Text

8   based on j2's unfounded speculation that a new document collection would yield

9   evidence that could salvage its case.  j2 is using this motion – and, specifically, the

10  threat of the burden and expense that Open Text would incur if it is granted – to try

11  to create pressure on Open Text to settle j2's meritless claims, which it admittedly

12  lacks the evidence to provide.  This tactic should not be condoned by the Court,

13  and j2's motion should be denied its entirety.

14        **D.     j2 Has Attempted to Contort and Misconstrue Open Text's Good
15               Faith Efforts to Ease The Burden on Its Customers That Had
               Received Subpoenas.**

16         In the course of meeting and conferring with j2's counsel regarding

17  the scope and propriety of the third-party discovery, Open Text expressed to j2 its

18  desire to identify reasonable ways to alleviate the third-parties' discovery burdens.

19  Carmody Decl. ¶ 8  This included, potentially, Open Text's production of certain,

20  limited categories of documents that Open Text could reasonably locate – for

21  example, licensing contracts with the first 27 customers that j2 subpoenaed.  *Id*.

22  This was not a concession by Open Text that such documents were responsive or

23  even had any bearing on j2's claims, but rather an attempt to compromise, avoid

24  motion practice and ease the burden on Open Text's customers that had received

25  subpoenas.  *Id*.  Contrary to j2's characterization of those conferences (Johnson

26  Decl. ¶¶ 8, 9) Open Text's attorneys did not inform j2 that Open Text had

27  absolutely no customer-related information, nor did they say with certainty

28  whether Open Text would be able to locate and produce any such documents.  *Id*.

-23-

In fact, Open Text's attorneys repeatedly explained that they likely had no configuration-specific documentation given that independent resellers, and not Open Text, were the ones that sold Open Text's fax products to the ultimate customers. *Id*.

Notably, Open Text has investigated whether it could easily identify certain documents that j2 has subpoenaed from Open Text's customers and re-sellers. Carmody Decl. ¶ 9. It has become clear that identifying and producing such documents would consist, almost exclusively, of irrelevant sales documentation, and collecting such documents will be extremely burdensome, time-consuming, and expensive with little probability of yielding materially relevant information. *Id*. Indeed, Open Text's efforts to identify documents that might relate to the first 27 subpoena respondents generated over 100,000 pages of largely non-responsive documents. *Id*. That does not include the additional burden associated with the remaining 39 subpoenas (let alone the over 20,000 additional customers that j2 did not subpoena). *Id*.

**E.      j2's New Interpretation of Request Nos. 3(i), (r), and (u) Is Grossly Overbroad and Unduly Burdensome.**

As stated above, Open Text has already searched for and produced responsive documents. Moreover, j2 has never intended for this request to cover customer-specific documents. In any event, Open Text should not be compelled to produce all of its customer-specific documents pursuant to Requests 3(i)(r) and (u), in particular, because as applied to its over 28,000 customers, these requests are wildly overbroad, unduly burdensome, and not reasonably tailored to locate relevant documents or information.[2]

---

[2] j2's assertion that Open Text "conceded that the Request seeks relevant and responsive documents and agreed to produce them," is blatantly false. Open Text asserted written objections to the requests (*see* Johnson Decl. Exh's 4 and 5. Its agreement to search for a produce documents was subject to and without waiving those objections. *See* Carmody Decl. ¶ 2.

-24-

1   Request 3(i) seeks "all" documents and things that in any way concern
2   "illustrations or descriptions of the installation, operation, use or suggested use" of
3   Open Text's products, including all "documents concerning the use or performance
4   of each product or service."  In other words, Request 3(i) seeks all documents
5   Open Text may have regarding how *any* of its over 28,000 customers have
6   installed, operated, or used Open Text's fax products.  This is overbroad and
7   unduly burdensome because it calls for Open Text to search for and produce
8   documents concerning the configurations of thousands of customers – most (if not
9   all) of which do not even utilize a fax server configuration that j2 claims infringes
10   its patents.  Thus, it calls for Open Text to search for documents pertaining to tens
11   of thousands of customers who indisputably have not infringed j2's patents.

12   Request 3(r) seeks all agreements between Open Text and any person
13   regarding the "development, marketing, sale, license, or distribution of" its
14   products and services.  This request calls for the production of thousands of
15   completely irrelevant documents, insofar as it requires Open Text to produce *any*
16   contract with *any* person regarding *any* aspect of its products' development,
17   marketing, sale, licensing, or distribution.  j2 speculates that a vaguely defined
18   subset of these contracts (which it calls "customer and reseller agreements") might
19   "potentially" provide information about payments made by individual customers
20   and resellers.  However, this is an unduly burdensome way to get such information.
21   Open Text has already provided financial and sales information to j2, and has not
22   opposed j2's attempts to obtain additional financial and sales information *provided*
23   *it relates to specific customers that j2 has good cause to believe have directly*
24   *infringed its patents*.  Request 3(r) goes far beyond that, in that it seeks all
25   contracts of any nature with all customers and re-sellers, regardless of whether they
26   even use an allegedly infringing fax server configuration.  It also calls for the
27   production of types of contracts (*e.g.*, development contracts) that have no bearing
28   at all on j2's indirect infringement claims.

-25-

Request 3(u) requires Open Text to produce all advertisements, brochures, and promotional materials for the relevant products.  As a preliminary matter, many such documents have already been produced to j2 and/or are publicly available.  j2 speculates that additional "sales and marketing materials will show how Open Text instructed or encouraged its customers to configure and use the accused products."  There is no reason to believe that is true.  For instance, j2 has not provided a single example from the existing document production or publicly available advertisements where Open Text instructed a customer to infringe j2's patents.  In short, Request 3(u), like Requests 3(i) and 3(r), calls for Open Text to expend substantial time and resources hunting down responsive documents for a second time, based on nothing more than j2's unfounded speculation that such documents might contain relevant information.

In sum, j2's rank speculation that Open Text might possess a relevant document somewhere in its organization does not justify its unreasonable and overbroad discovery request.  Accordingly, j2's motion should be denied in its entirety, and the Court should award to Open Text such other relief as it deems just and equitable.  At minimum, j2 should bear the costs and fees incurred by Open Text in connection with any additional document search that the Court orders it to perform.

**Request No. 16:**

All documents and things concerning Captaris' financial information or projections concerning any Captaris product or service related to email to fax functionality including, but not limited to, RightFax software and servers, such as:

    a.    actual or projected unit sales of each such product or service or any component thereof;

    b.    actual or projected revenue generated from the sales of each such product or service or any component thereof;

…

1    **Response to Request No. 16:**

2           Captaris objects to this Request as overly broad, vague, unduly

3    burdensome and premature to the extent it seeks documents relating to damages.

4    Subject to and without waiving these objections and each of the foregoing General

5    Objections, Captaris will produce responsive documents.

6    **j2's Contentions:**

7           **A.    This Request Seeks Discoverable Information.**

8           This Request seeks documents with financial information and

9    information about unit sales of the accused products.  Open Text has produced

10   company-wide (or fax division-wide) financial data, but has not produced

11   responsive documents with information regarding specific customers and resellers.

12   Such documents are directly relevant to damages.  Given that not every customer

13   directly infringes, j2 needs usage and financial information regarding Open Text's

14   individual customers and resellers, including the number of individual users or

15   phone lines at each corporate customer, to estimate the damages caused by

16   infringement.

17          **B.    Open Text's Objections Should Be Overruled.**

18          In response to this Request, Open Text indicated that it would produce

19   responsive documents.  (Johnson Decl. Ex. 4.)  Having admitted its obligation to

20   produce documents responsive to this request, Open Text cannot now raise new

21   objections.  *See  M2 Software, Inc.* v. *M2 Commc'ns, LLC*, 217 F.R.D. 499, 501

22   (C.D. Cal. 2003) ("M2 Software may not claim at this late date that the requested

23   documents are irrelevant or beyond the scope of the lawsuit.  It has already waived

24   relevancy objections by responding to each request that it will produce the

25   requested documents.").  Moreover, the boilerplate objections that Open Text

26   originally asserted are facially meritless.  *See, e.g.*, *id.* (finding that generalized,

27   boilerplate objections are not sufficient to raise any substantial, meaningful or

28   enforceable objections); *USF Ins. Co.* v. *Smith's Food and Drug Center, Inc.*, 2011

-27-

WL 2457655, at *3 (D. Nev. June 16, 2011) ("boilerplate or generalized objection is 'tantamount to not making any objection at all'" (quoting *Walker* v. *Lakewood Condo Owners Assoc.*, 186 F.R.D. 584, 587 (C.D. Cal. 1999))).

Even if the Court considers Open Text's objections, they should be overruled. *First*, the Request is not overly broad. The Request is limited to documents related to Open Text's unit sales of, and revenues from, the allegedly infringing products, which are relevant to j2's damages. *See Fisher* v. *Baltimore Life Ins. Co.,* 235 F.R.D. 617, 629 (N.D.W. Va. Mar. 31, 2006) (compelling production of "all documents [] which evidence or relate to any item of claimed damages"); *Lal* v. *Felker*, 2010 WL 582138, at *2 (E.D. Cal. Feb. 11, 2010) (boilerplate objections, including that requests are "overly broad," are improper).

*Second*, the Request is not vague. It refers to specific information related to the accused products, and if Open Text did not understand any aspect of the request it could have clarified it when the parties met and conferred.

*Third*, Open Text fails to explain how this request is unduly burdensome. *See Panola Land Buyers Ass'n* v. *Shuman*, 762 F.2d 1550, 1559 (11th Cir. 1985) (conclusory recitations of expense and burdensomeness are not sufficiently specific to demonstrate why requested discovery is objectionable).

*Finally*, the Request is not premature. These Requests have been outstanding for two years and fact discovery is nearly complete.

### C.   Open Text Should Be Compelled To Produce Any Responsive Documents in Its Possession.

j2 has reviewed the documents produced by Open Text in this action and located only a handful of responsive documents that provide information regarding specific customers or resellers. (Johnson Decl. ¶ 5.) It appears that Open Text has additional such documents but has failed to produce them. As set forth in the introduction, Open Text first told j2 its production was complete; then offered to *begin* searching for responsive documents; then indicated that there were no more responsive documents to be produced; then told the Court that j2 should

-28-

1   be prevented from seeking this information from third parties because Open Text

2   can produce it.  Open Text's positions are consistent only in that they are all

3   directed to preventing j2 from obtaining information that is clearly discoverable

4   and is crucial to j2's case.  Open Text should be compelled to produce all

5   responsive documents in its possession, custody or control or to certify that none

6   exist and withdraw its objections to j2's subpoenas.

7   **Open Text's Contentions:**

8       Open Text repeats and incorporates by reference, as if fully set forth

9   herein, Subsections A through D of its Contentions regarding Request No. 3 in j2's

10  Second Set of Requests for Production (*supra*).  Each of the facts and arguments

11  contained therein applies with equal force to Request No. 16 in j2's Second Set of

12  Requests for Production.

13      Furthermore, Open Text should not be compelled to produce

14  documents in response to Requests Nos. 16(a) and (b) because they are overly

15  broad, unduly burdensome, and not reasonably tailored to lead to the discovery of

16  relevant evidence.  Requests Nos. 16(a) and (b) seek information regarding actual

17  and projected unit sales and revenue for Open Text's fax products.  As j2 readily

18  admits, Open Text has already produced substantial sales and revenue data.

19  However, j2 now claims that Open Text must produce such information "regarding

20  specific customers and resellers."

21      As an initial matter, Requests 16(a) and (b) do not require Open Text

22  to produce its sales and revenue information on a customer-by-customer basis.

23  Nor does it require Open Text to organize its sales and revenue information by re-

24  seller.  Thus, Open Text's existing document production contains a reasonable and

25  appropriate response to these Requests.

26      To the extent Requests 16(a) and (b) could be construed as requiring

27  Open Text to provide all sales and revenue information regarding all of its

28  customers and re-sellers on a customer-by-customer (or re-seller-by-re-seller)

-29-

1   basis, it is wildly overbroad and unduly burdensome.  Open Text has over 20,000
2   customers and re-sellers, most (if not all) of which have not adopted a fax server
3   configuration that j2 claims is infringing.  To force Open Text to search for and
4   provide sales and revenue information regarding tens of thousands of customers
5   and re-sellers who have *not* infringed j2's patents is onerous and will yield only
6   irrelevant information.  Notably, this is not a situation where j2 has identified
7   particular customers that it has good cause to believe have infringed j2's patents,
8   and sought sales and revenue information as to those specific customers.  Rather,
9   j2 improperly seeks *all* revenue and sales information about *all* customers and re-
10  sellers.  Thus, Open Text should not be compelled to produced additional
11  documents in response to Requests 16(a) and (b).

12  **Request No. 18:**

13         All documents and things concerning any contracts or license
14  agreements which Captaris is a party to or is aware of concerning any Captaris
15  product or service, or any component thereof, related to email to fax functionality
16  including, but not limited to, RightFax software and servers.

17  **Response to Request No. 18:**

18         Captaris objects to this Request as overly broad, vague and unduly
19  burdensome, as it exceeds the requirements under Federal Rules of Civil
20  Procedure, is not limited to the patents-in-suit and seeks documents outside
21  Captaris' possession, custody and control.  Subject to and without waiving these
22  objections and each of the foregoing General Objections, Captaris will produce
23  responsive documents.

24  **j2's Contentions:**

25         A.    **This Request Seeks Discoverable Information.**

26         This Request seeks documents similar to those sought by Request No.
27  3(r), *i.e.*, license agreements or other agreements concerning the accused products.
28  Such documents potentially will provide information about payments made by

-30-

1    Open Text's individual customers and resellers, the products or services they

2    purchased or re-sold, and information related to usage such as the capacity of the

3    licensed system or the number of authorized users.  j2 needs that information to

4    estimate the damages caused by Open Text customers' direct infringement.  In

5    addition, information about which products or services a customer purchased may

6    be relevant to whether the customer installed the Open Text system in an infringing

7    manner.

8               **B.    Open Text's Objections Should Be Overruled.**

9               In response to this Request, Open Text indicated that it would produce

10   responsive documents.  (Johnson Decl. Ex. 4.)  Having admitted its obligation to

11   produce documents responsive to this request, Open Text cannot now raise new

12   objections.  *See  M2 Software, Inc.* v. *M2 Commc'ns, LLC*, 217 F.R.D. 499, 501

13   (C.D. Cal. 2003) ("M2 Software may not claim at this late date that the requested

14   documents are irrelevant or beyond the scope of the lawsuit.  It has already waived

15   relevancy objections by responding to each request that it will produce the

16   requested documents.").  Moreover, the boilerplate objections that Open Text

17   originally asserted are facially meritless.  *See, e.g.*, *id.* (finding that generalized,

18   boilerplate objections are not sufficient to raise any substantial, meaningful or

19   enforceable objections); *USF Ins. Co.* v. *Smith's Food and Drug Center, Inc.*, 2011

20   WL 2457655, at *3 (D. Nev. June 16, 2011) ("boilerplate or generalized objection

21   is 'tantamount to not making any objection at all'" (quoting *Walker* v. *Lakewood*

22   *Condo Owners Assoc.*, 186 F.R.D. 584, 587 (C.D. Cal. 1999))).

23               Even if the Court considers Open Text's objections, they should be

24   overruled.  *First*, the Request is not overly broad.  The Request seeks agreements

25   related to the allegedly infringing products, all of which are relevant to j2's

26   damages.  *See Fisher* v. *Baltimore Life Ins. Co.*, 235 F.R.D. 617, 629 (N.D. W. Va.

27   Mar. 31, 2006) (compelling production of "all documents [] which evidence or

28   relate to any item of claimed damages"); *Lal* v. *Felker*, 2010 WL 582138, at *2

-31-

(E.D. Cal. Feb. 11, 2010) (boilerplate objections, including that requests are "overly broad," are improper).

Second, the Request is not vague. It refers to specific types of documents related to the accused products, and if Open Text did not understand any aspect of the Request it could have clarified it when the parties met and conferred.

Finally, Open Text fails to explain how this request is unduly burdensome. See Panola Land Buyers Ass'n v. Shuman, 762 F.2d 1550, 1559 (11th Cir. 1985) (conclusory recitations of expense and burdensomeness are not sufficiently specific to demonstrate why requested discovery is objectionable). Nor does Open Text explain how this Request is inconsistent with the Federal Rules. Open Text's assertion that the Request is not limited to the patents-in-suit is incorrect; the Request specifically targets the accused products, i.e., products "related to email to fax functionality including, but not limited to, RightFax software and servers." Finally, it is unclear why agreements entered into by Open Text would be outside its possession, custody or control.

## C. Open Text Should Be Compelled To Produce Any Responsive Documents in Its Possession.

j2 has reviewed the documents produced by Open Text in this action and located only a handful of responsive documents. (Johnson Decl. ¶ 5.) It appears that Open Text has additional responsive documents, but has failed to produce them. As set forth in the introduction, Open Text first told j2 its production was complete; then offered to begin searching for responsive documents; then indicated that there were no more responsive documents to be produced; then told the Court that j2 should be prevented from seeking this information from third parties because Open Text can produce it. Open Text's positions are consistent only in that they all are directed to preventing j2 from obtaining information that is clearly discoverable and is crucial to j2's case. Open Text should be compelled to produce all responsive documents in its possession,

-32-

1  custody or control or to certify that none exist and withdraw its objections to j2's

2  subpoenas.

3  **Open Text's Contentions:**

4         Open Text repeats and incorporates by reference, as if fully set forth

5  herein, Subsections A through D of its Contentions regarding Request No. 3 in j2's

6  Second Set of Requests for Production (*supra*).  Each of the facts and arguments

7  contained therein applies with equal force to Request No. 18 in j2's Second Set of

8  Requests for Production.

9         Request No. 18 is hopelessly vague and overbroad.  It calls for Open

10  Text to produce *all* documents and things concerning *all* contracts – regardless of

11  whether Open Text is even a party to those contracts – relating *in any way* to "e-

12  mail fax functionality."  As an initial matter, the term "e-mail fax functionality" is

13  vague and ambiguous, as there is no way to know what exact functionality j2

14  means to describe.  More importantly, this Request calls for the production of *all*

15  contracts of any nature that have anything to do with "e-mail fax functionality" –

16  including contracts to which Open Text is not a party.  Thus, this Request would

17  call for Open Text to produce all contracts relating to the design, conception,

18  development, manufacture, advertisement, marketing, distribution, sale, licensing,

19  and use of *any* product with "e-mail fax functionality."  Conceivably, that could

20  encompass every single contract relating to any fax server product in the market.

21         j2 attempts to justify Request No. 18 by speculating that it calls for

22  documents that "*potentially* will provide payments made by Open Text's

23  individual customers and resellers, the products or services they purchased or re-

24  sold, and information relating to usage such as the capacity of the licensed system

25  or the number of authorized users" [emphasis added].  However, even assuming,

26  *arguendo*, that j2 is entitled to this information, Request No. 18 is not reasonably

27  tailored to obtain it.  If j2 needs information regarding the products and services

28  that Open Text customers have purchased, requesting all contracts of any nature

-33-

1    (regardless of whether Open Text is even a party to those contracts) is not a

2    reasonable way to procure that information.

3            Moreover, as with j2's other Requests, Request No. 18 is overly broad

4    and unduly burdensome because it is not limited to those customers and re-sellers

5    that j2 has good cause to believe have infringed its patents.  Rather, it seeks all

6    contracts regarding (at minimum) Open Text's over 20,000 customers and re-

7    sellers, most, if not all, of which have not adopted a fax server configuration that j2

8    alleges is infringing.  Thus, Request No. 18 is nothing more than a fishing

9    expedition, and j2's motion to compel documents responsive to this Request

10   should be denied.

11            **Third Set of Requests for Production**

12   **Request No. 3:**

13            For each Captaris product or service related to fax to email

14   functionality including, but not limited to, RightFax software and servers or

15   FaxPress products and services, all documents and things concerning:

16            . . .

17            i.      illustrations or descriptions of the installation, operation, use or

18                    suggested use of the product or service including, but not

19                    limited to, user's guides, technical manuals, service manuals,

20                    installation guides, functional specifications, software

21                    functional specifications, software design documentation,

22                    software flow charts, or any other documentation concerning

23                    the use or performance of each product or service;

24            . . .

25            r.      the formation of any technical or commercial arrangement,

26                    including any agreements, between Captaris and any other

27                    person relating to the development, marketing, sale, license, or

28                    distribution of the product or service;

-34-

1     . . .

2       u.     advertisement, brochures, or promotional material for the

3             product or service.

4 **Response to Request No. 3:**

5       Subject to and without waiving each of the foregoing General

6 Objections, Captaris further objects to this Request as overly broad, exceedingly

7 multi-faceted, incomprehensible and premature, and objects on the basis that it

8 seeks information that is confidential, proprietary and trade secret information.

9 Captaris further objects to this request as, in part, calling upon Captaris to produce

10 documents already in Plaintiffs' possession.

11 **j2's Contentions:**

12       This Request is identical to Request No. 3 in j2's Second Set of

13 Requests for Production, except it relates to fax to email functionality rather than

14 email to fax functionality.  Accordingly, j2 incorporates by reference its

15 Contentions regarding Request No. 3 in j2's Second Set of Requests for

16 Production.

17 **Open Text's Contentions:**

18       Open Text repeats and incorporates by reference, as if fully set forth

19 herein, its Contentions regarding Request No. 3 in j2's Second Set of Requests for

20 Production (*supra*).

21 **Request No. 15:**

22       All documents and things concerning Captaris' financial information

23 or projections concerning any Captaris product or service related to fax to email

24 functionality including, but not limited to, RightFax software and servers or

25 FaxPress products and services, such as:

26       a.     actual or projected unit sales of each such product or service or

27             any component thereof;

28

-35-

b.      actual or projected revenue generated from the sales of each

such product or service or any component thereof;

. . .

**Response to Request No. 15:**

Captaris objects to this Request as overly broad, vague, unduly burdensome and premature to the extent it seeks documents relating to damages. Captaris further objects to this Request as duplicative of similar requests already propounded and responded to earlier in the litigation.  Subject to and without waiving these objections and each of the foregoing General Objections, Captaris has produced responsive documents identified as CAP-j2 014282 – CAP-j2 015117; CAP-j2 018333 – CAP-j2 018401; CAP j2 018503 – CAP-j2 020229. Captaris' investigation continues, and it will supplement its production with additional responsive documents as they are identified.

**j2's Contentions:**

This Request is identical to Request No. 16 in j2's Second Set of Requests for Production, except it relates to fax to email functionality rather than email to fax functionality.  Accordingly, j2 incorporates by reference its Contentions regarding Request No. 16 in j2's Second Set of Requests for Production.

**Open Text's Contentions:**

Open Text repeats and incorporates by reference, as if fully set forth herein, its Contentions regarding Request No. 16 in j2's Second Set of Requests for Production (*supra*).

**Request No. 18:**

All documents and things concerning any contracts or license agreements which Captaris is a party to or is aware of concerning any Captaris product or service, or any component thereof related to fax to email functionality

-36-

including, but not limited to, RightFax software and servers or FaxPress products and services.

**Response to Request No. 18:**

Captaris objects to this Request as overly broad, vague and unduly burdensome, as it seeks documents that are not limited to the functionality of the patents-in-suit and is duplicative of similar requests already propounded and responded to earlier in this litigation.  Subject to and without waiving these objections and each of the foregoing General Objections, Captaris has not identified any responsive documents but will supplement its production if responsive documents are identified.

**j2's Contentions:**

This Request is identical to Request No. 18 in j2's Second Set of Requests for Production, except it relates to fax to email functionality rather than email to fax functionality.  Accordingly, j2 incorporates by reference its Contentions regarding Request No. 18 in j2's Second Set of Requests for Production.

**Open Text's Contentions:**

Open Text repeats and incorporates by reference, as if fully set forth herein, its Contentions regarding Request No. 18 in j2's Second Set of Requests for Production (*supra*).

<u>**Sixth Set of Requests for Production**</u>

**Request No. 13:**

All DOCUMENTS CONCERNING the installation, set-up, or configuration of any Open Text Fax Product by YOU or any of YOUR customers.

**Response to Request No. 13:**

N/A.

-37-

**j2's Contentions:**

j2 served its Sixth Set of Requests on August 15, 2011.[3]  Open Text completely ignored the Requests.  It did not serve objections or responses within the time required by Fed. R. Civ. P. 34(b)(2).  j2 contacted Open Text to inquire about the responses a week after Open Text's September 17, 2011 deadline to respond, but Open Text ignored that too.  (Johnson Decl. ¶ 12 & Ex. 11.)  Accordingly, Open Text waived all objections to this Request, including privilege.  *See Richmark Corp.* v. *Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992) ("Failure to object to discovery requests within the time required constitutes a waiver of any objection.").

Even if Open Text had preserved its right to object, an order compelling production would be warranted.  This Request seeks documents concerning how Open Text's customers have configured the accused products.  This is directly relevant to infringement because whether a customer directly infringes depends on how that customer configures its Open Text system.  Moreover, information about a large number of customers is crucial because, in order to support a damages award in an indirect infringement case, the plaintiff must offer evidence of how often the accused product was used to infringe.  *See Lucent Techs., Inc.* v. *Gateway, Inc.*, 580 F.3d 1317, 1334-35 (Fed. Cir. 2009) (vacating damages award where there was no evidence of how many users had performed the patented method).  Open Text should be compelled to produce all responsive documents in its possession, custody or control or to certify that none exist and withdraw its objections to j2's subpoenas.

---

[3]     j2 agreed that Open Text need not respond to Request Nos. 1-12 of the Sixth Set of Requests for Production, because those requests related to Open Text's antitrust claims, which were voluntarily dismissed with prejudice after j2 served the Sixth Set of Requests.  (Johnson Decl. Ex. 10.)  Request Nos. 13 and 14, however, relate to the patent infringement case and were not withdrawn.

-38-

**Open Text's Contentions:**

Open Text repeats and incorporates by reference, as if fully set forth herein, Subsections A through D of its Contentions regarding Request No. 3 in j2's Second Set of Requests for Production (*supra*).  Each of the facts and arguments contained therein applies with equal force to Request No. 13 in j2's Sixth Set of Requests for Production.

Furthermore, Open Text should not be compelled to produce documents in response to Request No. 13 because there is no reasonable way that Open Text could possibly search for, identify, and produce such documents.  To the extent j2 has good cause to believe that an individual Open Text customer has directly infringed its patents, Open Text does not oppose j2's efforts to obtain reasonable discovery into that customer's fax server configuration.  However, Open Text has over 20,000 customers, and there is no reasonable way that Open Text could search for, locate, and produce configuration information for each and every one of those customers.

Moreover, as Open Text has already explained to j2 on multiple occasions, Open Text generally does *not* obtain information regarding end-user configurations.  That is because independent re-sellers market and sell Open Text's products directly to the end-users.  While Open Text cannot categorically deny that a few of its millions of documents might relate to end-user configurations in some way, there is no reasonable way to search for and identify those documents.  Notably, this is why Open Text has not opposed j2's efforts to conduct reasonable third-party discovery that shows customer configurations.

Finally, j2 has known all along that this is an indirect infringement case.  Yet, it chose to wait until August 15, 2011 to issue these documents requests.  Open Text previously spent substantial time and resources searching for documents in response to j2's earlier document requests.  It is fundamentally unfair for j2 to wait until that search was completed, and *then* require Open Text to

-39-

1   undertake a whole new search through millions of documents to try to find

2   documents (such as those requested by Request No. 13) that j2 knew all along that

3   it needed.

4   **Request No. 14:**

5          All DOCUMENTS CONCERNING the maintenance, service, or

6   upkeep of any Open Text Fax Product by YOU or any of YOUR customers,

7   including, but not limited to, all maintenance and support contracts and invoices

8   related to those contracts.

9   **Response to Request No. 14:**

10          N/A.

11   **j2's Contentions:**

12          j2 served its Sixth Set of Requests on August 15, 2011.[4]  Open Text

13   completely ignored the Requests.  It did not serve objections or responses within

14   the time required by Fed. R. Civ. P. 34(b)(2).  j2 contacted Open Text to inquire

15   about the responses a week after Open Text's September 17, 2011 deadline to

16   respond, but Open Text ignored that too.  (Johnson Decl. ¶ 12 & Ex. 11.)

17   Accordingly, Open Text waived all objections to this Request, including privilege.

18   *See Richmark Corp.* v. *Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir.

19   1992) ("Failure to object to discovery requests within the time required constitutes

20   a waiver of any objection.").

21          Even if Open Text had preserved its right to object, an order

22   compelling production would be warranted.  This Request seeks documents

23   concerning maintenance and service of the accused products, which are likely to

24   contain information concerning how Open Text's customers configure and use the

25

26   [4]      j2 agreed that Open Text need not respond to Request Nos. 1-12 of the Sixth
        Set of Requests for Production, because those requests related to Open
27      Text's antitrust claims, which were voluntarily dismissed with prejudice
        after j2 served the Sixth Set of Requests.  (Johnson Decl. Ex. 10.)  Request
28      Nos. 13 and 14, however, relate to the patent infringement case and were not
        withdrawn.

accused products.  That information is directly relevant to infringement because whether a customer directly infringes depends on how that customer configures its Open Text system.  Moreover, information about a large number of customers is crucial because, in order to support a damages award in an indirect infringement case, the plaintiff must offer evidence of how often the accused product was used to infringe.  *See Lucent Techs., Inc.* v. *Gateway, Inc.*, 580 F.3d 1317, 1334-35 (Fed. Cir. 2009) (vacating damages award where there was no evidence of how many users had performed the patented method).  Further, these documents are relevant to inducement because they are likely to show whether Open Text supports infringing uses of the accused products.  Open Text should be compelled to produce all responsive documents in its possession, custody or control or to certify that none exist and withdraw its objections to j2's subpoenas.

**Open Text's Contentions:**

Open Text repeats and incorporates by reference, as if fully set forth herein, Subsections A through D of its Contentions regarding Request No. 3 in j2's Second Set of Requests for Production (*supra*).  Each of the facts and arguments contained therein applies with equal force to Request No. 14 in j2's Sixth Set of Requests for Production.

As with Request No. 13 in j2's Sixth Set of Requests for Production (*supra*), Open Text should not be compelled to produce documents in response to Request No. 14 because (a) there is no reasonable way for Open Text to search for and produce *all* maintenance, service, and upkeep documents for all of its customers, and (b) in any event, j2 failed to request such documents until the last minute, and only after Open Text had conducted a burdensome and expensive search for documents in response to j2's earlier document requests.

Moreover, the notion that maintenance, support and upkeep documents have any bearing on the issues of this case is particularly dubious.  Apparently, j2 has imagined that at some point in time, some Open Text

-41-

1   representative may have caused a customer to adopt an infringing fax server

2   configuration while providing maintenance or upkeep to that customer.  Setting

3   aside that this theory is entirely speculative, Open Text cannot reasonably search

4   for or produce documents relevant to this request.  Because j2 is unable to identify

5   even one customer who has adopted an allegedly infringing fax server

6   configuration, Open Text would have to search for and produce *all* documents

7   regarding *all* service and maintenance of any nature provided to *all* customers.

8   That is wildly overbroad and patently unreasonable.  Accordingly, j2's motion

9   should be denied.

10  Dated: October 17, 2011                    Respectfully submitted,

11                                             /s/ Robert A. Sacks
                                               Robert A. Sacks (SBN 150146)
12                                             Brian R. England (SBN 211335)
                                               Edward E. Johnson (SBN 241065)
13                                             SULLIVAN & CROMWELL LLP
                                               1888 Century Park East
14                                             Los Angeles, California 90067-1725
                                               (310) 712-6600
15                                             (310) 712-8800 facsimile

16                                             Frank L. Bernstein (SBN 189504)
                                               KENYON & KENYON LLP
17                                             1801 Page Mill Road, Suite 210
                                               Palo Alto, California 94304-1216
18                                             (650) 384-4688
                                               (650) 384-4701 facsimile
19
20                                             *Attorneys for Plaintiffs j2 Global*
                                               *Communications, Inc. and Advanced*
                                               *Messaging Technologies, Inc.*
21

22  Dated:  October 17, 2011                   Respectfully submitted,

23
                                               /s/ Timothy J. Carroll
24                                             Timothy J. Carroll (*pro hac vice*)
                                               Matthew F. Carmody (*pro hac vice*)
25                                             LOEB & LOEB LLP
                                               321 North Clark Street, Suite 2300
26                                             Chicago, Illinois  60654
                                               Telephone:  (312) 464-3100
27                                             Facsimile:  (312) 464-3111

28

                                            -42-

1
2
3

Laura A. Wytsma (SBN 189527)
LOEB & LOEB LLP
10100 Santa Monica Boulevard, Ste. 2200
Los Angeles, California  90067-4120
Telephone:  (310) 282-2000
Facsimile:  (310) 282-2200

4
5

*Attorneys for Defendants Captaris, Inc. and Open Text Corporation*

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

-43-