Robert A. Sacks (SBN 150146)
sacksr@sullcrom.com
Brian R. England (SBN 211335)
englandb@sullcrom.com
Edward E. Johnson (SBN 241065)
johnsonee@sullcrom.com
SULLIVAN & CROMWELL LLP
1888 Century Park East, Suite 2100
Los Angeles, California 90067-1725
Tel.:  (310) 712-6600
Fax:  (310) 712-8800

Frank L. Bernstein (SBN 189504)
fbernstein@kenyon.com
KENYON & KENYON LLP
1801 Page Mill Road, Suite 210
Palo Alto, California 94304-1216
Tel.:  (650) 384-4688
Fax:  (650) 384-4701

*Attorneys for Plaintiffs j2 Global Communications, Inc. and Advanced Messaging Technologies, Inc.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| J2 GLOBAL COMMUNICATIONS, INC. and ADVANCED MESSAGING TECHNOLOGIES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> CAPTARIS, INC. and OPEN TEXT CORPORATION, <br><br> Defendants. <br><br> AND RELATED CROSS-ACTION | Case No. CV 09-4150 DDP (AJWx) <br><br> **PLAINTIFF J2 GLOBAL COMMUNICATIONS, INC'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL PRODUCTION OF DOCUMENTS** <br><br> **DISCOVERY MATTER** <br><br> **[Cent. Dist. Civ. L. R. 37-2]** <br><br> Judge: Hon. Andrew J. Wistrich <br> Courtroom: 690 (Roybal) <br> Hearing: November 14, 2011 <br> Time: 10:00 a.m. <br><br> Fact Discovery Cutoff: Oct. 13, 2011 <br> Pretrial Conference: Apr. 23, 2012 <br> Trial Date: May 1, 2012 |

Plaintiff j2 Global Communications, Inc. ("j2") respectfully submits this Supplemental Memorandum in Support of its Motion to Compel (dkt. 273).

## I.  j2 Fully Complied With Its Meet and Confer Obligation.

Open Text's claim that the parties have not met and conferred about the issues in j2's Motion to Compel is false. (Joint Stip. at 3-4, 11-12.) Counsel discussed Open Text's production of customer-specific information on at least three separate occasions, on August 22, 29, and September 8, 2011. (Declaration of Edward E. Johnson ("Johnson Decl.") ¶¶ 2-6.) Open Text acknowledges there were "multiple conferences," but apparently contends that those conferences related only to j2's third-party discovery. (Joint Stip. at 16-17.) That is incorrect. The conferences addressed customer-specific information, whether from the third parties directly *or from Open Text*—the issues are intertwined, because Open Text initially suggested that it could provide customer information so that it would be unnecessary for j2 to seek the information from third parties. (Johnson Decl. ¶ 3.) During the conferences, counsel expressly discussed such issues as the scope of j2's document requests; Open Text's concerns about the burden involved; possible ways to narrow the requests; and what responsive documents Open Text possesses.[1]  (*Id*. ¶ 4.)

Open Text's real complaint is not that j2 did not meet and confer (which cannot seriously be disputed), but that j2 did not warn Open Text the day it served the motion. (Joint Stip. at 4, 12.) But the Local Rules require that parties try to resolve the dispute informally, which j2 did, not that the moving party provide advance notice of the motion. Given Open Text's completely different representations to j2 (that it has no responsive documents) and to the Court (that it

---

[1]  Open Text's assertion that it offered to compromise by providing the licensing contracts for 27 customers is misleading. (Joint Stip. at 23.) Open Text indicated on August 22 that it *would* provide a limited number of contracts, but, to date, it has not done so. (Johnson Decl. at ¶ 4.)

likely does have responsive documents), and Open Text's failure to respond to j2's attempt to address the inconsistency (Johnson Decl. ¶¶ 5-6), j2 reasonably viewed further attempts to discuss this issue as futile.

**II.     Open Text's Assertion that j2 Agreed to Search Terms Is False.**

Open Text argues that j2 agreed to search terms with Open Text, and therefore that it would be unfair to require Open Text to conduct another email search. (Joint Stip. at 4-5, 12-18.) That argument comprehensively mischaracterizes what occurred. j2 never discussed search terms for Open Text to use in reviewing documents, much less approved a search term list or suggested that it was waiving the right to seek additional documents from Open Text. (Johnson Decl. ¶¶ 7-9.) Nor did Open Text ever offer j2 the opportunity to suggest search terms or reveal its search term list prior to producing documents. (*Id.*)

Presumably, although it does not say so, Open Text is conflating Open Text's search terms with the search terms used by Protus IP Solutions ("Protus"). Protus was the defendant in a related case (that is no longer pending), and was represented by the same counsel. j2 did suggest search terms for Protus to use, in August and September 2010. (Johnson Decl. Ex. 4.) There was no ambiguity about whether the search terms were for Open Text or Protus. The parties' communications on the subject expressly identified Protus, not Open Text. (*E.g., id*. Exs. 4, 5.) Further, Open Text represented a month before the parties began discussing Protus' search terms that its document production was substantially complete, so the search terms could hardly have been intended for Open Text's document review. (*Id*. Ex. 2.)

As such, there could not have been any doubt that j2 did not approve Open Text's search terms. If there were any doubt, it was dispelled in subsequent correspondence in which j2 repeatedly requested, in the course of questioning the paucity of electronic documents produced by Open Text, that Open Text provide its search term list. For example, in January 2011, j2 confirmed in an email that it

-2-

had not "received any information regarding the production process, the use of search terms, custodians, etc. up to this point" but that Open Text had agreed to provide the search term list. (*Id*. Ex. 6.) Open Text did not provide the list, however, until July 2011, a year after Open Text told j2 its production was complete and only after repeated requests by j2.[2] (*Id*. Ex. 7.) Open Text's assertion that j2 "approved and helped create" Open Text's search term list is completely false. (Joint Stip. at 4.)

To the extent Open Text contends that j2 somehow approved of Open Text's search terms by suggesting search terms in a different case, it is wrong. j2's case against Protus was a direct infringement case—Protus offered an infringing service, which it operated itself, directly to consumers, as opposed to providing software to businesses as Open Text does. Thus, there was no reason for discovery of customers in the Protus case, and j2 did not suggest search terms relating to Protus' customers. Simply put, j2 cannot have implicitly approved of Open Text's apparent failure to search for responsive documents related to indirect infringement issues by not suggesting search terms related to indirect infringement in a separate, *direct* infringement case.[3]

---

[2] In a Declaration submitted with the Joint Stipulation, Open Text's counsel asserts that j2 "suggested numerous search terms be added to the search term list (attached hereto as Exhibit A)." But the Declaration fails to mention that the attached search term list was not given to j2 until July 2011, and omits the July 2011 email attaching the list (Exhibit 7 to the Johnson Declaration). It is difficult to construe this omission as anything other than an attempt to mislead the Court.

[3] Open Text's suggestion that j2 improperly delayed in seeking these documents is wrong. (*E.g.*, Joint Stip. at 5.) j2 requested these documents at the beginning of discovery, and cannot be faulted for not moving to compel earlier given that Open Text represented that it had completed its production—without alerting j2 that it had not searched for these documents—and Captaris' former president testified that Captaris did not possess these documents. Once Open Text revealed in its papers that it may possess additional documents, j2 promptly demanded the documents and then moved to compel. Moreover, although Open Text states (at 16) that "very little time" remains in discovery, the parties have agreed to extend the case schedule, which will provide ample time for Open Text to provide the documents it should have already provided.

-3-

### III. j2's Requests Are Relevant and Are Not Unduly Burdensome.

Open Text makes a variety of arguments related to relevance and burden. (Joint Stip. at 18-26.) All of them are baseless.

*First*, Open Text's arguments are inconsistent. It claims that it "does not possess the documents j2 claims it needs," but that it would be overly burdensome to "produc[e] large volumes of documents." (Joint Stip. at 5.) Those assertions cannot both be true. If Open Text has responsive documents, it should be compelled to produce them; if not, it should drop its objections to j2 seeking the information from third parties.

*Second*, Open Text's claim that it has no configuration information because it sells through resellers is inaccurate. (Joint Stip. at 20.) Open Text does interface with the end customer. Maintenance and service make up a significant portion of Open Text's revenues and require knowledge of what software customers have and potentially how it is configured. (Johnson Decl. Ex. 8.) Open Text also has (or had) a direct sales force that works with end customers directly and therefore must have information about how customers use the software. (*Id*. Ex. 9.) Indeed, although Open Text apparently did not search for configuration documents, it has produced at least one, a proposal by Captaris directly to a customer showing how the software would be implemented. (*Id*. Ex. 10.) And, documents such as contracts and invoices can provide evidence of configuration—for example, proof that a customer bought multiple servers suggests that the customer implemented a redundant system, as taught in certain of the patents.

*Third*, Open Text's conclusory references to a large number of documents fail to establish any undue burden. (Joint Stip. at 18-26.) In particular, its complaints about burdensome email searches are misplaced. (*Id*. at 18-20, 24-25.) j2 mainly seeks documents like contracts, invoices, and financial reports that should not require an email search. These documents will show what products customers purchased and for how much, information that it crucial for damages.

-4-

(*See, e.g.,* Johnson Decl. Ex. 11.)  To the extent it is necessary to search emails (*e.g.*, of customer service personnel) to locate configuration documents, the burden is warranted given that such information is highly relevant to infringement.[4]

*Fourth*, Open Text argues that pre-2008 damages documents are irrelevant because there is no evidence Open Text was aware of the patents before then.  (Joint Stip. at 21-22.)  Such evidence is unnecessary to establish induced infringement, however.  *See SEB S.A.* v. *Montgomery Ward & Co.*, 594 F.3d 1360, 1377-78 (Fed. Cir. 2010).  Even if it were, Captaris' former President testified that he may have known of the patents earlier (Johnson Decl. Ex. 12), and, in any event, discovery is ongoing.  Precluding pre-2008 discovery would be premature.

*Fifth*, Open Text's suggestion that j2 should bear the cost of any additional document production should be rejected, because it depends upon Open Text's claim that it is being asked to re-do work that was already done.  (Joint Stip. at 22-23.)  That is untrue.  (*See* Part II, *supra.*)  These documents should have been produced the first time around.  There is no justification for cost-shifting.

## IV. Open Text Waived Any Objections to j2's Sixth Set of Requests.

To the extent the Court accepts any of Open Text's arguments, they should be limited to j2's Second and Third Sets of Requests.  Open Text failed to respond, timely or otherwise, to j2's Sixth Set of Requests.  Open Text does not acknowledge its failure to respond, much less attempt to justify it or argue there was no waiver.  (Joint Stip. at 39-42.)  Its objections were waived.  *See Richmark Corp.* v. *Timber Galling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992).

---

[4] Thus, Open Text's reliance on the Federal Circuit Model Order is misplaced.  The introduction to the Model Order suggests that e-discovery is often "tangential," but here j2 seeks documents directly relevant to how the accused product works and damages, two of the categories identified in the introduction of the Model Order as "the most consequential."  (Carmody Decl. Ex. B at 2.)  In addition, Open Text's complaints about e-discovery ring hollow given that it brought baseless antitrust counterclaims—that it has now voluntarily dismissed—which are responsible for much of the cost Open Text previously incurred, and which forced j2 to produce hundreds of thousands of electronic documents after review by a team of 30 contract attorneys.

## **CONCLUSION**

For the foregoing reasons, and those set forth in the Joint Stipulation, j2 respectfully requests that the Motion to Compel be granted.

Dated: October 31, 2011              Respectfully submitted,

/s/ Robert A. Sacks
Robert A. Sacks (SBN 150146)
Brian R. England (SBN 211335)
Edward E. Johnson (SBN 241065)
SULLIVAN & CROMWELL LLP
1888 Century Park East
Los Angeles, California 90067-1725
(310) 712-6600
(310) 712-8800 facsimile

Frank L. Bernstein (SBN 189504)
KENYON & KENYON LLP
1801 Page Mill Road, Suite 210
Palo Alto, California 94304-1216
(650) 384-4688
(650) 384-4701 facsimile

*Attorneys for Plaintiffs j2 Global Communications, Inc. and Advanced Messaging Technologies, Inc.*