1   Robert A. Sacks (SBN 150146)
    sacksr@sullcrom.com
2   Brian R. England (SBN 211335)
    englandb@sullcrom.com
3   Edward E. Johnson (SBN 241065)
    johnsonee@sullcrom.com
4   SULLIVAN & CROMWELL LLP
    1888 Century Park East, Suite 2100
5   Los Angeles, California 90067-1725
    Tel.:  (310) 712-6600
6   Fax:  (310) 712-8800

7   Frank L. Bernstein (SBN 189504)
    fbernstein@kenyon.com
8   KENYON & KENYON LLP
    1801 Page Mill Road, Suite 210
9   Palo Alto, California 94304-1216
    Tel.:  (650) 384-4688
10  Fax:  (650) 384-4701

11  *Attorneys for Plaintiffs j2 Global
    Communications, Inc. and Advanced*
12  *Messaging Technologies, Inc.*

13                **UNITED STATES DISTRICT COURT**

14                **CENTRAL DISTRICT OF CALIFORNIA**

15

16  J2 GLOBAL                          Case No. 09-4150 DDP (AJWx)
    COMMUNICATIONS, INC. and
17  ADVANCED MESSAGING                 **DECLARATION OF EDWARD E.**
    TECHNOLOGIES, INC.,                **JOHNSON IN SUPPORT OF**
                                       **PLAINTIFF J2 GLOBAL**
18                  Plaintiffs,        **COMMUNICATIONS, INC'S**
                                       **SUPPLEMENTAL MEMORANDUM**
19          v.                         **IN SUPPORT OF ITS MOTION TO**
                                       **COMPEL PRODUCTION OF**
20  CAPTARIS, INC. and OPEN            **DOCUMENTS – PUBLIC VERSION**
    TEXT CORPORATION
21                                     
                                       **DISCOVERY MATTER**
22                  Defendants.
                                       **[Cent. Dist. Civ. L. R. 37-2]**
23  _____
                                       Judge:       Hon. Andrew Wistrich
24                                     Courtroom:   690 (Roybal)
    AND RELATED CROSS-ACTION           Date:        November 14, 2011
25                                     Time:        10:00 a.m.

26                                     Fact Discovery Cutoff:   Oct. 13, 2011
                                       [Subject to Parties' agreement to a
27                                     November 27 extension]
                                       Pretrial Conference:   Apr. 23, 2012
28                                     Trial Date:            May 1, 2012

# DECLARATION OF EDWARD E. JOHNSON

I, Edward E. Johnson, declare as follows:

1.     I am an attorney admitted to the Bar of the State of California and to the Bar of this Court. I am an associate of the law firm of Sullivan & Cromwell LLP, counsel to Plaintiffs j2 Global Communications, Inc. and Advanced Messaging Technologies, Inc. (collectively, "j2") in this action. I submit this Declaration in support of j2's Supplemental Memorandum in support of its Motion to Compel the Production of Documents. I have personal knowledge of the facts set forth herein, and, if called to testify, could and would testify competently thereto.

## Meet and Confer Discussions

2.     Counsel for j2 discussed Open Text Corporation and Captaris, Inc.'s (collectively, "Open Text") production of customer-specific information on at least three separate occasions.

3.     On August 22, I am informed that Brian England, on behalf of j2, spoke with Tim Carroll and Matt Carmody, on behalf of Open Text. Mr. Carroll and Mr. Carmody brought up the third-party subpoenas that j2 has issued, and suggested that it could provide customer information so that it would be unnecessary for j2 to seek the information from third parties. Mr. England expressed surprise that Open Text may have customer information, because such information would be responsive to j2's long-outstanding document requests. Mr. Carroll and Mr. Carmody indicated that they would search for such documents and let j2 know what they found.

4.     On August 29, 2011, I spoke with Mr. Carmody about various document issues, including Open Text's efforts to search for the customer-related information that j2 was also seeking from third parties. We discussed the scope of j2's prior document requests, including specifically whether certain documents were called for by the requests; Mr. Carmody's view that searching for certain

documents would be overly burdensome; and Mr. Carmody's views about what customer-related documents Open Text possesses. I understood that at that time Open Text had not located any of the customer-specific documents we were discussing. Mr. Carmody indicated that he believed that Open Text had customer contracts, and offered to provide a limited number of its contracts with a few of the third parties that j2 subpoenaed, so that the parties would be able to discuss the appropriate scope of production with concrete information about what information the contracts contain. We never received the contracts that Mr. Carmody indicated would be produced.

5.    On September 8, 2011, I spoke with Mr. Carroll and Manny Caixiero, who also represents Open Text. Once again, we discussed both the third-party subpoenas and whether Open Text would be able to provide the customer-specific information directly. Mr. Carroll indicated that Open Text would not be able to provide the information.

6.    On September 12, 2011, I received an email from Mr. Caixiero which suggested that Open Text did possess at least some of the customer-specific information j2 was seeking with the subpoenas. I replied the same day, asking him to clarify what documents Open Text has. A true and correct copy of this email chain is attached hereto as Exhibit 1. Neither Mr. Caixiero nor any of Open Text's other attorneys ever responded to my email. Rather than providing any clarification, Open Text filed a motion for a protective order in which it indicated that, contrary to what j2 had been told, it "can likely provide j2 with information regarding th[e] third party's purchase of Open Text's products." (Dkt. 270-1 at 2).

**Search Terms**

7.    Open Text indicated in a July 19, 2010 letter that its document production was "substantially complete." A true and correct copy of the letter is attached hereto as Exhibit 2.

SULLIVAN & CROMWELL LLP

DECLARATION OF EDWARD E. JOHNSON

8.     I was the attorney for j2 principally responsible for communicating with Open Text's attorneys regarding Open Text's document search and production.  Prior to Open Text's statement that its document production was substantially complete, neither I nor, to the best of my knowledge, any other attorney for j2, ever discussed what search terms Open Text was using in connection with its documents search and review, much less approved a search term list or suggested search terms.  Open Text never offered j2 any opportunity to provide input on its search terms, or any other aspect of its collection, review or production of electronic documents.

9.     Indeed, when j2 sought information in a deposition about Open Text's document collection, Open Text's counsel instructed the witness not to answer, on the grounds that such information was attorney-client privileged and/or attorney work product.  A true and correct copy of excerpts of the deposition of Matthew Adney, in which he is not permitted to testify about the document collection, is attached hereto as Exhibit 3.

10.     On August 4, 2010, *after* Open Text's production was substantially complete, I spoke with Mr. Carmody about the search terms that the defendant in a related case, Protus IP Solutions ("Protus"), was going to use.  Protus was represented by the same counsel as Open Text.  Attached hereto as Exhibit 4 is a true and correct copy of an email I received from Mr. Carmody on August 4 with Protus' search term list.

11.     I had additional discussions and correspondence with Mr. Carmody and other attorneys for Open Text in August and September regarding Protus' search terms.  There was never any suggestion that the search terms we were discussing would be used by Open Text; given that our understanding was that Open Text's document production was complete, such a suggestion would not have made any sense.

3

12. In addition, on several occasions we discussed the results of certain search terms specifically as to Protus. For example, Open Text's counsel indicated that, when run on Protus' data, certain search terms returned an unreasonably high number of hits and proposed narrowing them. An example of this is attached hereto as Exhibit 5. This further confirmed that we were discussing search terms for a particular defendant—Protus.

13. In or around September 2010, j2 began questioning why Open Text had not produced more emails. In January 2011, I spoke with Mr. Carmody along with Brook Gotberg, another attorney for j2, about the emails. Attached hereto as Exhibit 6 is a true and correct copy of a January 20, 2011 email from Ms. Gotberg to Mr. Carmody, copying me, confirming a discussion with Mr. Carmody. Among other things, the email confirms that "[w]e had not received any information regarding the production process, the use of search terms, custodians, etc., up to this point."

14. After several additional follow-up emails, letters and phone calls, Mr. Carmody finally provided the search term list on July 7, 2011. A true and correct copy of the email and attached search term list (omitting the other attachment, which is not relevant to this dispute) is attached hereto as Exhibit 7. This appears to be the same list attached as Exhibit A to Mr. Carmody's declaration. Neither I nor, to the best of my knowledge, any other j2 attorney, received it prior to July 7, 2011.

**Open Text's Documents**

15. Attached hereto as Exhibit 8 is a true and correct copy of a document produced by Open Text in this litigation showing (at page 5, CAP-j2 0220891) that support revenue makes up more than half of Open Text's fax revenue.

16. Attached hereto as Exhibit 9 is a true and correct copy of a document produced by Open Text in this litigation indicating (at page 12, CAP-j2

4

168361) that in 2006 Captaris intended to "[i]mprove and grow enterprise direct account sales."

17.    Attached hereto as Exhibit 10 is a true and correct copy of a document produced by Open Text in this litigation which appears to be a proposal to a customer, including a suggested configuration.

18.    Attached hereto as Exhibit 11 is a true and correct copy of a document produced by Open Text in this litigation which appears to show (e.g., starting at CAP-j2 052453) the products purchased by a particular customer and the amounts paid.

19.    Attached hereto as Exhibit 12 is a true and correct copy of excerpts of the deposition of David Anastasi.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 31st day of October, 2011 at Los Angeles, California.

_____
Edward E. Johnson

DECLARATION OF EDWARD E. JOHNSON

**EXHIBIT  1**

**Johnson, Edward E.**

| | |
|---|---|
| **From:** | Johnson, Edward E. |
| **Sent:** | Monday, September 12, 2011 10:27 AM |
| **To:** | 'Manny Caixeiro' |
| **Cc:** | 'Tim Carroll'; 'Matt Carmody'; England, Brian R.; Shmidt, Denis; 'Bernstein, Frank'; Sacks, Robert |
| **Subject:** | RE: subpoenas |

Manny,

Thanks for your email.  We don't understand number 4, however.  If Open Text has documents regarding payments, or marketing materials or communications reflecting the implementation or configuration of its products, then those documents should have been produced a long time ago.  They are not tied to the subpoenas – they are responsive and relevant and must be produced.  Tim and Matt told us several weeks ago that you were searching for documents, like these, that would provide the same information we are seeking with the subpoenas, but my understanding was that nothing was found.  Most recently, Tim said on the call on September 8th that Open Text doesn't have customer-specific data.  So which is it?  If you have the documents described in 4, then they need to be produced immediately, as to all of Open Text's customers, not just 27 of them.

With respect to the rest of the proposal, we cannot agree to limit ourselves 27 customers and re-sellers.  As you know, we need discovery from enough third parties to permit our expert to draw conclusions about Open Text's customer base as a whole.  We would prefer to agree with you to limit the scope of third party discovery in return for Open Text agreeing that the results from that limited set of customers can be extrapolated to the rest of Open Text's customers.  I raised this with you last week, and made clear that we are willing to discuss with you how to ensure that the sample accurately reflects the rest of Open Text's customers, such as by taking into account that larger customers are more likely to infringe.  Such an agreement would enable the parties to fairly assess the level of direct infringement, with a minimum of inconvenience to Open Text's customers.  From your email below, which does not mention our offer, I take it Open Text is not interested in discussing such an arrangement.  Instead, you want to limit us to discovery of 27 customers, even though you and your colleagues have made clear on multiple phone calls that you intend to argue that whatever conclusion our expert reaches based upon information from customers will be unfounded because it will be based on information from too few customers to extrapolate.  We cannot agree to forego discovery when you have expressly told us you intend to rely on the absence of that very information to strike our expert report or undermine it at trial.

Regards,

Eddy Johnson
Sullivan & Cromwell LLP
1888 Century Park East, Suite 2100
Los Angeles, CA  90067
(310) 712-6604 - Phone
(310) 712-8800 - Fax

---

**From:** Manny Caixeiro [mailto:mcaixeiro@loeb.com]
**Sent:** Monday, September 12, 2011 8:50 AM
**To:** Johnson, Edward E.; Tim Carroll
**Cc:** Matt Carmody; England, Brian R.; Shmidt, Denis; 'Bernstein, Frank'
**Subject:** RE: subpoenas

Eddy,

EXH __1__ P _6_

Thank you for sending j2's offer for narrowing the subpoena. It was helpful to see this on paper. For the reasons we discussed during last week's meet-and-confer, we cannot agree to the terms you have proposed. However, we can make the following counter-offer, which I hope you will accept:

1. j2 withdraws the 39 subpoenas that it issued on August 30 and 31, and pursues only the original 27 subpoenas.

2. As to the original 27 subpoenas, j2 limits the subpoenas to the named subpoena recipient (i.e., not any affiliates, subsidiaries, etc.). If j2 can identify a specific affiliate of a subpoenaed entity from which it requires documents, we can consider that request on a case-by-case basis.

3. As to the original 27 subpoenas, j2 will only seek documents sufficient to show the subpoena recipients' configuration or implementation of the Open Text Fax Products. The re-sellers shall produce documents concerning their own configuration or implementation of the Open Text Fax Products, but not as to any of their ultimate customers.

4. If the documents j2 collects from the 27 subpoena recipients form a good faith basis for it to believe that a particular subpoena recipient has implemented the Open Text Fax Products in an allegedly infringing manner, Open Text will provide (1) documents sufficient to show the payments made by the subpoena recipient for the allegedly infringing products, and (2) marketing materials and/or communications with that recipient concerning the implementation or configuration of the Open Text Fax Products. Only if Open Text cannot produce such information as to a particular subpoena recipient should j2 be permitted to reinstate its subpoena as to that recipient. Open Text reserves the right to dispute that there exists a good faith reason to believe that a particular subpoena recipient has implemented the products in an allegedly infringing manner.

Please let us know if this agreeable to you. I look forward to your response.

Manny

**Manny Caixeiro**
*Attorney At Law*
**LOEB &**
**LOEB** LLP
345 Park Avenue | New York, NY 10154
**Direct Dial:** 212.407.4899 | **Fax:** 646.619.4728 | **Email:** mcaixeiro@loeb.com

**Los Angeles | New York | Chicago | Nashville | Washington, DC | Beijing** | www.loeb.com

CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-mail messages attached to it may contain confidential information that is legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify the sender. Please destroy the original transmission and its attachments without reading or saving in any manner. Thank you, Loeb & Loeb LLP.

**From:** Johnson, Edward E. [mailto:johnsonee@sullcrom.com]
**Sent:** Friday, September 09, 2011 6:28 PM
**To:** Tim Carroll
**Cc:** Matt Carmody; Manny Caixeiro; England, Brian R.; Shmidt, Denis; 'Bernstein, Frank'
**Subject:** subpoenas

Tim,

EXH _1_ P _7_

Pursuant to your request on our phone call yesterday, please find attached revised document categories for the subpoenas sent to customers.  (The reseller subpoenas were similar, so if we are able to reach agreement on these categories we should be able to conform the reseller subpoenas.)  Please note that we remain of the belief that the subpoenas were proper as served; we offer this in an effort to compromise and avoid motion practice.  As you will see, the changes are not necessarily independent of each other, and we are not necessarily willing to make one of these changes without the others.  Therefore we reserve the right to insist upon compliance with the subpoenas as served if Open Text is not willing to agree to these categories.  With that said, we will of course consider any suggestions Open Text has to modify the attached categories.  I note that, to date, Open Text has not made any concrete proposal to modify or narrow any category in the subpoena (setting aside demands that categories be withdrawn altogether).  Compromise requires participation by both parties, so I hope that you will join us in trying to find a resolution here.  We look forward to hearing from you.

Eddy Johnson
Sullivan & Cromwell LLP
1888 Century Park East, Suite 2100
Los Angeles, CA  90067
(310) 712-6604 - Phone
(310) 712-8800 - Fax

This e-mail is sent by a law firm and contains information that may be privileged and confidential. If you are not the intended recipient, please delete the e-mail and notify us immediately.

EXH __1__ P __8__

# EXHIBIT  2



**TIMOTHY J. CARROLL**

321 North Clark Street
Suite 2300
Chicago, IL 60654

Direct  312.464.3172
Main   312.464.3100
Fax     312.276.8616
tcarroll@loeb.com

Via Email

July 19, 2010

Brian England
SULLIVAN & CROMWELL LLP
1888 Century Park East, Suite 2100
Los Angeles, California 90067-1725

*Re:*   *j2 Global Communications, Inc. v. Protus IP Solutions, Inc,*
    *j2 Global Communications, Inc. v. Captaris, Inc.*
    <u>*j2 Global Communications, Inc. v. Packetel, Inc.*</u>

Dear Brian:

I write in response to your July 9, 2010 letter. For clarity's sake, I will address each of the issues raised in your letter one by one.

## 1. <u>Status of the Loeb Defendants' Productions</u>

As I have previously stated, my clients have been working diligently to complete their respective document productions. Packetel has long since fully completed its production (the only party able to make that claim), and Captaris is substantially complete having already produced roughly 200,000 pages of responsive material. Protus has continued to make rolling productions expects a substantial production to be made in the near future. Just as j2 has been doing, we will continue to produce documents on a rolling basis when they become available. In addition, all of my clients have undertaken aggressive, expensive efforts to complete their document productions that go well beyond what is required by law. Simply put, there is little more that can reasonably be done to speed up the process, nor does there need to be given the realities of the current case schedule.

The fact that certain document productions have taken longer than anticipated, particularly as they concern electronically stored information, is quite typical and is a routine event in many cases. This process is not a precise one. The exercise of collecting, processing and reviewing terabytes of information from numerous custodians, featuring the heavy involvement of outside vendors, is an inexact science that often involves unanticipated setbacks. This is the precise reason why my clients resisted guaranteeing or stipulating to making complete productions by a fixed date certain.

Moreover, your disparagement of my clients' efforts as inadequate is simply ridiculous. Their retention of 10 full-time attorneys and review of hundreds of thousands of pages of documents is more than reasonable given the context of this litigation. Because j2 is a litigation predator, it comes as no surprise to us that it has produced 850,000 pages of documents, or that it

A limited liability partnership including professional corporations

EXH  2  P. 9



retained 35 contract attorneys for its own review. However, what j2 has done is immaterial; that is simply not the standard that the law imposes upon my clients, nor it is the standard imposed on any other litigant for that matter.

Of my three clients, two have either totally completed or substantially completed their productions and have made productions consisting of hundreds of thousands of documents that was the result of great effort and expense on their part. Protus continues to engage in rolling productions and just produced approximately 1000 pages of documents last week. It also has a substantial ESI review presently underway that it expects will result in large productions as soon as it is completed. Once that occurs, Protus' production will be substantially complete. In addition, Protus' document requests have been outstanding far shorter than those directed to Captaris, as you are seeking documents to responses to were not even responded to until February of 2010. Even j2 failed to make full productions within that short of a timeframe. Under these circumstances, I fail to see what your threatened motion hopes to accomplish.

Finally, your continued suggestion that this is some kind of emergency is totally off-base. As you well know, the Markman hearing was continued by the Court until October 15, 2010. Because the current Scheduling Order of record calls for a "Markman-plus" deadline that falls 120 days until after a Markman Order is entered, the fact discovery cutoff, at its earliest, would be February 15, 2011. j2's fake outcry over a supposed discovery cutoff that does not comport with reality is yet another attempt to manufacture controversy where none exists.

With substantial productions already having been made, and the remaining documents currently in process, your insistence on pressing forward with motion practice is disappointing, to say the least. Such a motion is not only a waste of time and resources for *both* parties, but it will do nothing to facilitate getting the documents into j2's hands any sooner. Given this backdrop, you've made it rather obvious that j2's sole motivation here is to churn litigation costs, which ever more proof of our clients' claim that this litigation is nothing more than a sham designed to run up their expenses.

## 2. **j2's Burdensome and Unnecessary Demand for the Production of Source Code**

Defendants' position on source code has been clear for quite some time. As an initial matter, it was only recently that the parties' agreed to a final form of the Protective Order, in which a source code production procedure was a specific negotiated point. Thus, j2's protestations on this point ring hollow, as it knew perfectly well that the parties had not yet agreed on sufficient protections concerning source code.

Moreover, as stated in opposition to j2's Motions to Compel, which the Court denied, j2 has not justified its request for source code. Because source code is extremely confidential and proprietary, and the risk of inadvertent disclosure is high, the burden of producing source code will not be imposed upon parties unless such production is necessary. *See Forterra Sys., Inc. v. Avatar Factory*, Case No. 05-4472, 2006 WL 2458804, *2 (N.D. Cal. Aug. 22, 2006).

j2 has provided no justification for its request, nor has j2 attempted to obtain information relating to product functionality through other, less intrusive means. Each of Protus, Captaris and Packetel have produced substantial technical documentation regarding the products at issue.

EXH __2__ P __10__



In addition, j2 has already taken extensive deposition testimony of Protus' personnel concerning the operation of MyFax. Moreover, Captaris offered to allow an in-person inspection of RightFax, which j2 has not yet acted upon. Under such circumstances, j2's demand that source code be turned over is premature.

Finally, I would note that Defendants' have requested source code from j2 that has not been produced, adding yet another example where j2 expects others to held to different standards than it holds itself.

### 3. j2's Document Production

You have requested, per the Court's order, that we "clearly state as to each request, whether all responsive documents have been produced and, if not, what types of documents are being withheld and on what basis." In my July 2nd letter, I already identified what portion of the agreed to production has yet to be produced. However, j2 has made no such gesture in return.

Therefore, Defendants Packetel, Captaris and Protus hereby request that j2 certify in writing that its document production is fully complete. Please confirm that you will provide a written certification stating as much. Alternatively, if j2's production is not complete, please identify in writing which documents have not been produced, why they have not been produced and when they will be produced.

### 4. j2's Meet and Confer Request

Per the request in your recent email, we are available to meet and confer tomorrow. Notably, however, your statement that you will be unavailable throughout this entire week shows that j2 is not serious about its meet and confer obligations. Rather, your absence once again from our meet and confer sessions demonstrates that j2 is merely going through the motions, and that it is looking to initiate motion practice in a transparent attempt to drive up my clients' litigation costs. I offer to speak at a date/time that is convenient for you, regardless of whether that time is very early or very late in the day. Please let me know of your availability, or whether we will go through the motions tomorrow by way of speaking with Ms. Olesek and Mr. Johnson.

Very truly yours,

Timothy J. Carroll

cc:    Megan Olesek
       Eddy Johnson
       Laura Wytsma
       Matthew F. Carmody
       Will Brody

EXH __2__ P __11__

**EXHIBIT 3**

# REDACTED

# DOCUMENT
# FILED UNDER
# SEAL

**EXHIBIT 4**

## Johnson, Edward E.

| | |
|---|---|
| **From:** | Matt Carmody [mcarmody@loeb.com] |
| **Sent:** | Wednesday, August 04, 2010 1:44 PM |
| **To:** | Johnson, Edward E.; England, Brian R.; 'Bernstein, Frank'; Gotberg, Brook E. |
| **Cc:** | Tim Carroll; William Brody; Laura Wytsma |
| **Subject:** | j2 v. Protus - Search Term List |

Eddy,

As promised on today's call, attached please find the draft search term list used in connection with Protus' ongoing eDiscovery efforts.  As I mentioned, there are a number of items on this list that have already resulted in a overly large number of hits.  It would be helpful to work together to eliminate these if possible, as such a narrowing of the search scope will not only reduce costs for both sides, but will facilitate Protus being able to make more prompt productions by reducing the time necessary for processing and review.

Once you've had the chance to review this list, please let me know times when you'd be available to discuss it further.

Regards,

-Matt

**Matt Carmody**
*Attorney At Law*

[x]

321 North Clark Street, Suite 2300 | Chicago, IL  60654
**Direct Dial:** 312.464.3171 | **Fax:** 312.276.8787 | **Email:** mcarmody@loeb.com

**Los Angeles | New York | Chicago | Nashville | Washington, DC | Beijing | www.loeb.com**

CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-mail messages attached to it may contain confidential information that is legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify the sender. Please destroy the original transmission and its attachments without reading or saving in any manner. Thank you, Loeb & Loeb LLP.

1. soho
2. small office
3. home office
4. market w/20 share
5. compet* w/20 market
6. market definition
7. Market Analysis
8. Market Study
9. market w/20 research
10. geograph* w/20 market
11. rival*
12. subscrib*
13. expan w/20 sales
14. expan w/20 services
15. market power
16. relevant market
17. anticompetitive OR anti-competitive
18. monopol*
19. antitrust

(Exhibit __4__ Page _19_ )

1

20.     anti-trust
21.     Competitor
22.     Competition
23.     barriers
24.     patent AND litigation
25.     6,208,638 OR 6208638
26.     6,350,066 OR 6350066
27.     6,564,321 OR 6564321
28.     6,208,638 OR 6208638
29.     6,597,688 OR 6597688
30.     7,020,132 OR 7020132
31.     4,994,926 OR 4994926
32.     5,461,488 OR 5461488
33.     Bobo
34.     Narasimhan
35.     Sehmesh
36.     Kumar
37.     efax
38.     davidson
39.     portability
40.     licens*
41.     stor* w/s fax
42.     stor* w/s (e-mail or email)
43.         account w/s database
44.         conver* w/s (e-mail or email)
45.         queue
46.         validat*
47.         redirect*
48.         reassign*
49.         "network server"
50.         "httpd" or "hyper-text transfer protocol deamon"
51.         "access request"
52.     internet fax
53.     links* w/s message
54.     Patent and 066 OR Patent and '066
55.     Patent and 688 OR Patent and '088
56.     Patent and 132 OR Patent and '132
57.     Patent and 638 OR Patent and '638
58.     Patent w/20  license
59.     IPInvestment
60.     valid* AND patent
61.     invalid* AND patent
62.     fax w/5 (e-mail or email)
63.     facsimile w/5 (email or e-mail)
64.     peer
65.     forecast
66.     Netoffice Solutions
67.     Toast and Jam
68.     Pesso
69.     Pokrzywa
70.     Rieley
71.     Muller
72.     Foster
73.     Shemesh
74.     Kizou
75.     Hoang
76.     Pham
77.     j2
78.     catch curve
79.     dynamic depth
80.     advanced messaging technologies

(Exhibit ___ Page 20 )

81.   venali
82.   easylink
83.   packetel
84.   Audiofax
85.   Freescale
86.   Motorola
87.   Aircom
88.   Venali
89.   Zilker

(Exhibit ___4___ Page 21 )

**EXHIBIT  5**

**Johnson, Edward E.**

| | |
|---|---|
| **From:** | William Brody [wbrody@loeb.com] |
| **Sent:** | Friday, September 24, 2010 6:47 AM |
| **To:** | Johnson, Edward E. |
| **Cc:** | Tim Carroll; Matt Carmody |
| **Subject:** | j2 v. Protus |

Eddy:  I am writing in response to your email to Tim on Tuesday regarding additional searches relating to the word "queue."  You'll recall that the original search term "queue" turned up an unreasonably large number of hits.  Initially, although we have not yet run the searches, it does not seem that your proposal for us to search for the word "queue" within 10 words of 18 other words, will be sufficiently limiting.  I am also not sure that all of the searches proposed are necessary in light of the other words we have already searched.  Before we go through the effort of running searches that we might have to redo, I'd like to speak about your proposal to understand why the terms are relevant and whether there is a better way to approach this.

I am unavailable most of today, but can speak after 5 on Monday, or on Tuesday.  Let me know a time that works for you.
Thanks,

Will

**William Brody**
*Attorney At Law*

[x]

10100 Santa Monica Blvd., Suite 2200 | Los Angeles, CA  90067
**Direct Dial:** 310.282.2237 | **Fax:** 213.947.4319 | **Email:** wbrody@loeb.com

**Los Angeles | New York | Chicago | Nashville | Washington, DC | Beijing | www.loeb.com**

CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-mail messages attached to it may contain confidential information that is legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify the sender. Please destroy the original transmission and its attachments without reading or saving in any manner. Thank you, Loeb & Loeb LLP.

(Exhibit 5 Page 22)

# EXHIBIT  6

## Johnson, Edward E.

| | |
|---|---|
| **From:** | Gotberg, Brook E. |
| **Sent:** | Thursday, January 20, 2011 4:21 PM |
| **To:** | mcarmody@loeb.com |
| **Cc:** | Johnson, Edward E. |
| **Subject:** | j2 v. EasyLink |

Dear Matt,

Thanks for taking the time to talk with us yesterday. We thought it was very productive and hopefully we can continue to work through these issues in a cooperative way. Please find below a summary of our record of the proposals, action items, and issues to ponder that were raised on the call.

Redactions
- You indicated that, apart from the redactions based on privilege, there are redactions that were made on the basis that the information redacted was outside the bounds of the litigation. You are willing to explain the redactions on a case-by-case basis, but feel it would be inefficient to go back and unredact nonresponsive information.
- We feel this is a problem of Captaris' making, as a consequence of making redactions on the grounds of responsiveness in the first place. However, we recognize your hesitancy to redo the production.
- Accordingly, we proposed that you try to obtain a list of the documents that have been redacted and provide it to us. We would then come up with a subset of documents as to which we want additional information, and you would either confirm that the redactions were based on privilege or produce the documents without redaction (or we could discuss more limited redactions would be acceptable). You agreed to look into it.

Missing Emails
- You indicated that the small number of emails appearing in the production was simply the result of the collection and review process. You indicated that Captaris used search terms to cull its electronic discovery from a number of custodians, then reviewed the documents pulled in by the search terms. You suggested that the small number of emails that resulted from the process may have been because the search terms used, which you indicated were similar to those initially negotiated by j2 for its own production, do not translate well into the Captaris business model and terminology.
- We had not received any information regarding the production process, the use of search terms, custodians, etc., up to this point.
- You indicated that you would provide us with the search term list and confirm with your electronic discovery consultant that emails were a part of the collection and review.
- With respect to document retention, you indicated that you are not sure whether a new litigation hold notice was sent after the antitrust claims were brought, but that significant preservation efforts were made at the time of the Open Text acquisition. You agreed to produce Captaris' document retention policy, or confirm that it has been produced, and to produce any additional litigation hold notice that may have been sent.

Missing Reports
- You indicated that the inconsistency of the reports produced accurately reflects the inconsistency of Captaris' reporting. You agreed to look for particular reports across the years, if we will identify the specific ones we are interested in.

Board Materials
- You indicated that responsive materials were not withheld, but that in general the Board minutes have no substantive content.

Gross Number of Customers
- We indicated that, acknowledging that the Captaris model is different from j2's subscriber model, we were nonetheless interested in Captaris' sales by unit, as opposed to dollar sales, however it tracks that information.

(Exhibit  6   Page 23 )

You agreed to see if Captaris possesses documents tracking unit sales, suggesting that it may be simply the sale of hardware.

Merger
- You indicated that there was no instruction to reviewers to withhold merger-related documents, although merger documents were not produced that were not otherwise relevant to the issues in the case.
- We requested all Board presentations on the merger, from both Captaris and Open Text, regardless of whether they were otherwise related to the issues in the case, because such presentations are likely to be relevant to Captaris' participation and alleged injury in the alleged market.
- You agreed to conduct a reasonable search for such documents, and we will table our discussion of whether they are discoverable pending your search.

Damages
- We stated our position that, having made claims for damages of legal fees, you are obligated to produce documents relevant to these claims without delay.
- You responded that Captaris has produced all documents regarding other damages theories it intends to pursue, but has not yet concluded that it will pursue legal fees as damages. You indicated that if and when Captaris decides to pursue damages based upon its fees, it will produce documents related to its fees.
- We proposed that you consider providing a date certain by which these documents will be produced, but you declined. Please let us know if your position changes; otherwise we intend to present this issue to the Court forthwith.

Missing Attachments
- You again expressed unwillingness to redo the production in order to find any and all missing attachments.
- We proposed that you ask your vendor to run a search for family inconsistencies.
- You agreed that, if such a search was possible, you would produce documents not otherwise excluded on the grounds of privilege.

j2's Responses to Interrogatories
- You reminded us that Captaris had earlier voiced objections to specific interrogatory responses, but that no follow-up was made. You indicated you intend to send us a letter on this issue.
- You further raised an issue regarding j2's response to an interrogatory asking j2 to identify j2's technical personnel around the time of the patent applications. We indicated we would look into this.

Infringement Contentions Regarding FaxPress
- You raised the issue that, while j2 has brought allegations of infringement against both RightFax and FaxPress, the infringement contentions as currently drafted do not reference FaxPress.
- We indicated we would raise this internally and get back to you as soon as possible.

Markman Hearing
- You proposed that the parties confer regarding possible dates to conduct the second portion of the Markman hearing. We agree this is a good idea and are looking into dates that will work for us.

Depositions
- You indicated you are prepared make Jason Simon, who is in Canada, and Eric Chen, who is in San Francisco, available for depositions. We indicated we would get back to you on timing for the depositions.

Please let me know if your notes indicate anything contrary.

Best,

Brook E. Gotberg
Sullivan & Cromwell LLP
1888 Century Park East

(Exhibit __6__ Page_25_)

Los Angeles, CA 90067-1725
(310) 712-8846
gotbergb@sullcrom.com

EXH 6 25

**EXHIBIT  7**

**Johnson, Edward E.**

| | |
|---|---|
| **From:** | Matt Carmody [mcarmody@loeb.com] |
| **Sent:** | Thursday, July 07, 2011 1:02 PM |
| **To:** | Johnson, Edward E. |
| **Subject:** | RE: j2 v. Captaris Depositions |
| **Attachments:** | search term list.doc; Captaris_RedactionBreakdown.xlsx |

Eddy,

In advance of our call, here are two things that I owed to you following our last discussion:

1. A list of the search terms
2. A list of the bates ranges of the redactions in the production.

---

**From:** Johnson, Edward E. [mailto:johnsonee@sullcrom.com]
**Sent:** Wednesday, July 06, 2011 3:50 PM
**To:** Matt Carmody
**Subject:** RE: j2 v. Captaris Depositions

Do we need a call-in number?  If it will just be you I'll just give you a call.

---

**From:** Matt Carmody [mailto:mcarmody@loeb.com]
**Sent:** Wednesday, July 06, 2011 1:44 PM
**To:** Johnson, Edward E.
**Subject:** Re: j2 v. Captaris Depositions

That's fine.  Do you want to circulate a meeting planner?

Matthew F. Carmody
Loeb & Loeb LLP

On Jul 6, 2011, at 10:38 AM, "Johnson, Edward E." <johnsonee@sullcrom.com> wrote:

> Sure, how about 1 pacific?
>
> -------------------------
> Sent from my BlackBerry Wireless Handheld

---

**From:** Matt Carmody <mcarmody@loeb.com>
**To:** Johnson, Edward E.
**Sent:** Tue Jul 05 20:01:42 2011
**Subject:** Re: j2 v. Captaris Depositions

Sure.   How about Thursday?

Matthew F. Carmody
LOEB & LOEB LLP
321 North Clark Suite 2300

1

Chicago, Illinois 60654
(Bus.) 312.464.3171
(Cell) 312.399.5880

On Jul 5, 2011, at 8:47 PM, "Johnson, Edward E." <johnsonee@sullcrom.com> wrote:

    Matt,

    Is there a time in the next couple days you could discuss documents?

    Thanks,

    Eddy

---

**From:** Matt Carmody [mailto:mcarmody@loeb.com]
**Sent:** Thursday, June 23, 2011 8:45 AM
**To:** Johnson, Edward E.
**Cc:** Tim Carroll
**Subject:** RE: j2 v. Captaris Depositions

    Eddy,

    I am jammed through Monday, but can discuss documents next Tuesday.   On the SImon deposition, he is available in Waterloo, Ontario on Wednesday, July 20, 2011 if that works for you.   I think we spoke about this once before, but Waterloo is the location of Open Text's headquarters, and is slightly under an hour drive from the Toronto Airport.

    Let me know if that works.

    Thanks.

7   27.

**From:** Johnson, Edward E. [mailto:johnsonee@sullcrom.com]
**Sent:** Wednesday, June 22, 2011 6:21 PM
**To:** Matt Carmody
**Subject:** RE: j2 v. Captaris Depositions

Matt, have you been able to check Simon's availability?  Also, are you available
to discuss documents on Friday?

Thanks,

Eddy

---

**From:** Johnson, Edward E.
**Sent:** Tuesday, May 31, 2011 6:11 PM
**To:** Matt Carmody
**Subject:** RE: j2 v. Captaris Depositions

Matt,

We need to schedule a deposition of Simon.  Can you please let me know what
his availability is in June or early July?

Thanks,

Eddy

---

**From:** Matt Carmody [mailto:mcarmody@loeb.com]
**Sent:** Wednesday, March 02, 2011 3:49 PM
**To:** Johnson, Edward E.
**Subject:** j2 v. Captaris Depositions

Eddy,

Turns out that a Jason Simon deposition will not work the week of March 14th as the witness' schedule is jammed.  We could, however, possibly make him available the last week in March (week of 28th) or the sometime the following week (week of April 4th).  Would either of those work for you?  Any days to avoid?

Also, have you received word on whether Kathy Griggs can be available for deposition the week of March 28th?

**Matt Carmody**
*Attorney At Law*

 **LOEB& LOEB** LLP

321 North Clark Street, Suite 2300 | Chicago, IL  60654
**Direct Dial:** 312.464.3171 | **Fax:** 312.276.8787 | **Email:** mcarmody@loeb.com

**Los Angeles | New York | Chicago | Nashville | Washington, DC | Beijing | www.loeb.com**

CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-mail messages attached to it may contain confidential information that is legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify the sender. Please destroy the original transmission and its attachments without reading or saving in any manner. Thank you, Loeb & Loeb LLP.

This e-mail is sent by a law firm and contains information that may be privileged and confidential. If you are not the intended recipient, please delete the e-mail and notify us immediately.

7   29.

## Search Term List

- Asterisk (*) is a wild card character

1.      SAAS
2.      software as service
3.      cloud
4.      soho
5.      market w/20 share
6.      compet* w/20 market
7.      market w/20 definition
8.      market AND adney
9.      Market Analysis
10.     Market Study
11.     market w/20 research
12.     geograph* w/20 market
13.     rival*
14.     subscrib*
15.     pric*
16.     expand w/20 sales
17.     expand w/20 services
18.     monopoly
19.     market power
20.     relevant market
21.     market share
22.     market power
23.     anticompetitive OR anti-competitive
24.     monopol*
25.     antitrust
26.     anti-trust
27.     market AND power
28.     Federal Trade Commission
29.     FTC
30.     Regulators OR Regulations
31.     Market
32.     Competitor
33.     Competition
34.     Acquisition
35.     barriers to entry
36.     barriers to expansion
37.     (37. is included in 15.)
38.     patent AND litigation
39.     route OR router OR routed
40.     inbound

| 41. | outbound |
| 42. | tiff and (convert or fax) |
| 43. | gateway |
| 44. | raw email |
| 45. | conv* and fax |
| 46. | 6,208,638 OR 6208638 |
| 47. | switch |
| 48. | switching |
| 49. | 6,350,066 OR 6350066 |
| 50. | 6,564,321 OR 6564321 |
| 51. | 6,208,638 OR 6208638 |
| 52. | 6,597,688 OR 6597688 |
| 53. | 7,020,132 OR 7020132 |
| 54. | 4,994,926 OR 4994926 |
| 55. | 5,461,488 OR 5461488 |
| 56. | Bobo |
| 57. | Narasimhan |
| 58. | Sehmesh |
| 59. | Kumar |
| 60. | efax |
| 61. | davidson |
| 62. | host* |
| 63. | gateway |
| 64. | tenant* |
| 65. | portability |
| 66. | licens* |
| 67. | Patent and 066 OR Patent and '066 |
| 68. | Patent and 688 OR Patent and '088 |
| 69. | Patent and 132 OR Patent and '132 |
| 70. | Patent and 638 OR Patent and '638 |
| 71. | Patent and 926 OR Patent and '926 |
| 72. | Patent and 021 OR Patent and '021 |
| 73. | Patent and 034 OR Patent and '034 |
| 74. | Patent and 302 OR Patent and '302 |
| 75. | Patent and 584 OR Patent and '584 |
| 76. | Patent and 488 OR Patent and '488 |
| 77. | Patent and 895 OR Patent and '895 |
| 78. | Patent and 088 OR Patent and '088 |
| 79. | Patent and license |
| 80. | Handgards |
| 81. | IP Investments |
| 82. | valid* AND patent |
| 83. | invalid* AND patent |
| 84. | Fax Thru Email |
| 85. | Pregerson |
| 86. | Netoffice Solutions |

EXHIBIT B 31.

87.   Toast and Jam
88.   Pesso
89.   Pokrzywa
90.   Rieley
91.   Muller
92.   Foster
93.   (93. was duplicative of 57.)
94.   Shemesh
95.   (95. was duplicative of 59.)
96.   Kizou
97.   Hoang
98.   Pham
99.   License and patent
100.  Jim Greene
101.  John Krahmer
102.  j2
103.  catch curve
104.  dynamic depth
105.  advanced messaging technologies
106.  protus
107.  venali
108.  easylink
109.  packetel
110.  Audiofax
111.  ICG
112.  Freescale
113.  Motorola
114.  Xerox
115.  GoDaddy
116.  Call Wave
117.  EasyTel
118.  Mijanda
119.  CallWave
120.  2 Point Communications
121.  350 Nice
122.  Acumen Associates
123.  Aircom
124.  American Voicemail
125.  ArcoSoft
126.  ATG Technologies
127.  Baeder Corp
128.  Bob Costello
129.  Business Link International
130.  COA Network
131.  Comodo Communications
132.  Coren Telecommunications

133. Electrasoft
134. Faxbin
135. Fluentt Technology
136. Free Digits
137. Global Access
138. Gofaxer
139. Graphnet
140. Hostway
141. Inphonic
142. Inphonics
143. Integrated Global Concepts
144. Interfax
145. International Telecom
146. Internet America
147. Interpage Network Services
148. Launchfax
149. Meixler Technologies
150. MyVFM.com
151. Page One Northwest
152. Patlive
153. Popesco ITC Specialists
154. Protus IP Solutions
155. Ringdale
156. Savetz Publishing
157. Sepe
158. Shadowstorage
159. Sims Company
160. Srfax
161. Venali
162. Vitelity Communications
163. (163. is duplicative of 162.)
164. Xifax Limited
165. Zilker Ventures
166. 121 Ltd
167. Alt-N-Technologies
168. Arcosoft
169. Biscom
170. Boomerang.com
171. Broadfax
172. Callware Technologies
173. Callwave
174. Commetrex Corp
175. Copia International
176. Digital Speech Systems
177. EasyTEL Communications
178. EC Data Systems

EXH 7 P 33

179.   emFAST
180.   Esker
181.   Fax1.com
182.   Fax911.com
183.   Faxcore
184.   Faxts Now
185.   Fenestrae
186.   FileWorks
187.   GFI USA
188.   GoDaddy
189.   Hi-Tech Solutions
190.   Intellicomm
191.   Intermedia.NET
192.   Mijanda
193.   Newrise
194.   OneSuite
195.   Onset Technology
196.   People Line Telecom
197.   Smith Micro Software
198.   Steem Communications
199.   Stonevoice
200.   Telecentrix
201.   Topcall Corp
202.   Ureach Technologies
203.   Vera Cruz Marketing
204.   Voice Mail Depot
205.   peer
206.   forecast

**EXHIBIT  8**

# REDACTED

# DOCUMENT FILED UNDER SEAL

**EXHIBIT  9**

# REDACTED

# DOCUMENT
# FILED UNDER
# SEAL

**EXHIBIT  10**

# REDACTED

# DOCUMENT FILED UNDER SEAL

**EXHIBIT  11**

# REDACTED

# DOCUMENT FILED UNDER SEAL

**EXHIBIT  12**

# REDACTED

# DOCUMENT FILED UNDER SEAL

PROOF OF SERVICE

1
2          I am employed in the County of Los Angeles, State of California.  I am over the

3    age of 18 and not a party to the within action.  My business address is that of Sullivan &

4    Cromwell LLP, 1888 Century Park East, Los Angeles, Califonria 90067.

5          I served the below listed document described as:

6          **DECLARATION OF EDWARD E. JOHNSON IN SUPPORT OF**
           **PLAINTIFF J2 GLOBAL COMMUNICATIONS, INC'S SUPPLEMENTAL**
7          **MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL**
           **PRODUCTION OF DOCUMENTS – PUBLIC VERSION**
8

9    on October 31, 2011 on all parties in this action by placing a true copy of the above document

10   enclosed in a sealed envelope addressed as follows:

11          *Via Hand Delivery*

12          Laura A. Wytsma, Esq.
            Loeb & Loeb LLP
13          10100 Santa Monica Boulevard
            Suite 2200
14          Los Angeles, CA 90067

15          I am familiar with the office practice of Sullivan & Cromwell LLP, which

16   practice is that when correspondence is deposited with the Sullivan & Cromwell LLP personnel

17   responsible for delivering correspondence to the appropriate courier service, such

18   correspondence is delivered to the appropriate courier service that same day in the normal course

19   of business

20          I declare under penalty of perjury under the laws of the United States that the

21   foregoing is true and correct.

22          Executed on October 31, 2011 at Los Angeles, California.

23

24                                          _____
                                            Joyce L. Burton
25

26

27

28