Grant E. Kinsel (Bar No. 172407)
gkinsel@perkinscoie.com
**PERKINS COIE LLP**
1888 Century Park East, Suite 1700
Los Angeles, CA 90067-1721
Telephone: 310.788.9900
Facsimile: 310.788.3399

Timothy J. Carroll (pro hac vice)
tcarroll@perkinscoie.com
Matthew F. Carmody (pro hac vice)
mcarmody@perkinscoie.com
**PERKINS COIE LLP**
131 South Dearborn Street, Suite 1700
Chicago, IL 60603
Telephone: 312.324.8400
Facsimile: 312.324.9400

*Attorneys for Defendants CAPTARIS, INC., and OPEN TEXT CORPORATION*

[See signature block for full list of counsel]

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| J2 GLOBAL COMMUNICATIONS INC. and ADVANCED MESSAGING TECHNOLOGIES, INC.,<br><br>Plaintiffs,<br>v.<br><br>CAPTARIS, INC. and OPEN TEXT CORPORATION,<br><br>Defendants. | Case No. 09-4150-DDP (AJWx)<br><br>**DEFENDANTS' NOTICE OF MOTION & MOTION FOR LEAVE TO AMEND COUNTERCLAIMS**<br><br>Date: November 12, 2012<br>Time: 10:00 a.m.<br>Courtroom: 3<br><br>Judge: Hon. Dean D. Pregerson<br><br>**PUBLIC VERSION - REDACTED** |

| | |
|---|---|
| 1 | CAPTARIS, INC. and OPEN TEXT CORPORATION, |
| 2 | |
| 3 | Counterclaim-Plaintiffs, |
| 4 | |
| 5 | v. |
| 6 | J2 GLOBAL COMMUNICATIONS INC. and ADVANCED MESSAGING TECHNOLOGIES, INC., |
| 7 | |
| 8 | Counterclaim-Defendants. |
| 9 | |

TO THE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on November 12, 2012, at 10:00 a.m., or as soon thereafter as the matter may be heard in the United States District Court, Central District of California, 312 N. Spring Street, Courtroom 3, Los Angeles, California 90012, Defendants and Counterclaim-Plaintiffs Captaris, Inc. and OpenText Corporation will and hereby do move the Court for leave to amend their Counterclaims to include additional, newly discovered facts in support of their inequitable conduct counterclaim and to add counterclaims for tortious interference with prospective business advantage and unfair competition. The proposed amended counterclaims are attached as Exhibit 1 to the accompanying memorandum in support of this motion.

The motion will be based on this Notice of Motion and Motion, the concurrently filed Memorandum of Points and Authorities, the proposed Amended Counterclaims, the Declaration of Matthew F. Carmody, and such additional materials and argument as may be considered at the hearing.

*L.R. 7-3 Statement*

This motion is made following the conference with counsel pursuant to Local Rule 7-3, which took place on October 5, 2012.

Dated: October 11, 2012

By: */s/ David J. Palmer*

Grant Kinsel (Bar No. 172407)
gkinsel@perkinscoie.com
**PERKINS COIE LLP**
1888 Century Park East, Suite 1700
Los Angeles, CA 90067-1721
Telephone: 310.788.9900
Facsimile: 310.788.3399

Timothy J. Carroll (pro hac vice pending)
tcarroll@perkinscoie.com
Matthew F. Carmody (pro hac vice pending)
mcarmody@perkinscoie.com
**PERKINS COIE LLP**
131 South Dearborn Street, Suite 1700
Chicago, IL 60603
Telephone: 312.324.8400
Facsimile: 312.324.9400

David J. Palmer (Bar No. 217901)
dpalmer@perkinscoie.com
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, AZ 85012
Telephone: 602.351.8000
Facsimile: 602.648.7036

*Attorneys for Defendants*
OPEN TEXT CORPORATION and
CAPTARIS INC

**MEMORANDUM OF POINTS AND AUTHORITIES**

The facts underlying these proposed counterclaims are common to each of j2's three cases against Defendants and Counterclaim-Plaintiffs OpenText Corporation ("OpenText") and EasyLink Services International Corporation ("EasyLink") in this District.[1] Accordingly, both OpenText and EasyLink are filing this motion for leave to amend their counterclaims *in each of the three cases* to 1) add new facts recently discovered during this litigation in support of their common claim for a declaration that certain j2 patents are unenforceable due to inequitable conduct, and 2) to add claims for tortious interference with prospective business advantage and unfair competition based on facts that occurred in or around September 2012.

Leave to amend should be granted because Defendants have good cause for the amendments, which would not prejudice Plaintiff, because there has been no undue delay, and because the amendments would not be futile.

## I. BACKGROUND

In response to j2's patent infringement allegations against it, Captaris, Inc. (now OpenText) asserted inequitable conduct defenses and counterclaims for declaratory judgment that j2's fax-to-email and email-to-fax patents are unenforceable, on the basis of j2's knowing concealment of certain prior art references from the PTO during both the prosecution and reexamination of j2's asserted patents. [*See* Captaris' Second Amended Counterclaims, Case No. 09-cv-4150, Doc. 117] And on April 26, 2012, EasyLink filed amended counterclaims adding allegations based on j2's own JFAX fax-to-email and email-to-fax products having been in public and on sale more than one year before the filing of the '638, '688 and '132 patents. [*See* EasyLink's Amended Counterclaims, Case No. 11-cv-

---

[1] These cases are *j2 Global, Inc. et al. v. Captaris, Inc., et al.*, Case No. 09-cv-4150; *j2 Global, Inc. et al. v. EasyLink Services Int'l Corp.*, Case No. 09-cv-4189 and *j2 Global, Inc. et al. v. EasyLink Services Int'l Corp.*, Case No. 11-cv-4239, each before this Court.

4239, Doc. 49]  But recently, even more facts have come to light that provide further support for Defendants' contention that j2 committed inequitable conduct before the PTO.  Specifically, third party computer scientist Dr. David Farber testified in deposition that he was offered, received and used j2's fax-to-email service more than one year before j2's filing of the '638 patent.  Moreover, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ j2 knowingly and purposefully deleted ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *all* of the source code showing exactly how its pre-filing products operated, years after j2 had filed lawsuits asserting infringement of the '638 and '688 patents, and well after ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ and while the reexamination proceedings for the '638 and '688 patents were still pending at the PTO.  This willful spoliation of the most in-depth evidence of j2's inequitable conduct certainly qualifies either by itself, or in combination with j2's intentional misrepresentations to the PTO, as "affirmative act[s] of egregious misconduct" rising to the level of inequitable conduct.  *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1291-92 (Fed. Cir. 2011).

      As EasyLink's counterclaims have previously set forth, j2 never disclosed to the PTO that it had a product on sale more than one year before it filed for its patents, and never submitted the source code or any documentation for that product for examination by the PTO so it could determine whether, in light of those products, j2's claims were eligible for patent protection.  j2's omission of this information was no mere accident.  At the same time it was concealing these products from the PTO's patent examiner, j2 was explicitly *relying*, in sworn affidavits, on these early commercial uses of its product in applying to the PTO for trademark protection for its product, and in applying to the U.S. Copyright Office for copyright protection on its source code.  In fact, j2 submitted excerpts of the code to the Copyright Office in furtherance of its application for copyright

1  protection.[2] But because the code would have barred its patents from being issued,
2  j2 withheld the code, concealing even the existence of the products from the patent
3  examiner. [See EasyLink's Amended Counterclaims, Case No. 2:11-cv-04239,
4  Doc. 49].

5  In addition to concealing its early products from the PTO, j2 withheld its
6  early source code from discovery despite asserting the '638 and '688 patents
7  against several of its competitors, including Captaris, OpenText and EasyLink. The
8  trail of evidence of j2's inequitable conduct has now finally led to the discovery, ▮
9  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, that the source code itself had been
10 spoliated ▮▮▮▮ and can never be examined.

11 Moreover, Defendants have recently learned that j2 has been competing
12 unfairly by making knowingly false and grossly overreaching statements to a
13 prospective EasyLink customer that because of j2's patents, EasyLink and
14 OpenText have no right to offer email-to-fax products *at all*, without regard to how
15 such products operate or are configured.

16 Accordingly, Defendants now bring this motion to amend their counterclaims
17 to include these recently discovered facts.

18 **II. ARGUMENT**

19 **A. Legal Standard**

20 Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to
21 amend pleadings should be freely given, unless the amendment is futile, would
22 cause undue prejudice to the defendants, or is sought by plaintiffs in bad faith or
23 with a dilatory motive. Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182
24 (1962). Further, amendments adding claims are granted more freely than
25 amendments adding parties. *Union Pac. R.R. Co. v. Nevada Power Co.*, 950 F.2d

---

[2] Although j2's copyright registration documents show that code printouts were submitted, the Copyright Office no longer has possession of those documents. Defendants diligently have sought copies from j2 in discovery, but j2 has not preserved them either.

1429, 1432 (9th Cir. 1991). Where the deadline in a scheduling order for amending pleadings has passed, the Court may require a showing of good cause before permitting the amendment. *See* Fed. R. Civ. P. 16(b); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992).

### B. Defendants Have Good Cause to Amend to Add Recently Learned Facts Supporting Their Inequitable Conduct Counterclaim

Defendants have good cause to amend their counterclaims to add these newly discovered facts, because they have been diligent in adducing facts to ensure their claim would meet the Federal Circuit's recently heightened and clarified standards for pleading and proving inequitable conduct. *See Therasense*, 649 F.3d at 1291-92; *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 (Fed. Cir. 2009).

In *Exergen*, the Federal Circuit held that inequitable conduct allegations "must be pleaded in detail," including "identification of the specific who, what, when where, and how of the material misrepresentation or omission committed before the PTO." *Exergen*, 575 F.3d at 1327. In addition, "although 'knowledge' and 'intent'" may be averred generally, a pleading must include allegations allowing a "reasonable inference" that "a specific individual" knew of the information withheld from the PTO and withheld that information "with a specific intent to deceive the PTO." *Id*. at 1328-29.

Moreover, the Federal Circuit held in 2011 that proof of inequitable conduct will ordinarily require showing that the PTO would not have allowed a claim had it been aware of the undisclosed prior art—what the Court called "but-for materiality." *Therasense*, 649 F.3d at 1291. Alternatively, an inequitable conduct claim can be based on an affirmative act of egregious misconduct, such as filing an unmistakably false affidavit, for example, even if "but-for materiality" cannot be demonstrated. *Id*. at 1292.

Defendants were aware at the outset of the litigation that j2 had withheld certain prior art references from the PTO, and incorporated those facts into their

1  original counterclaims.  It was only through discovery, however, that Defendants
2  were able, through their own diligence, to discover and then very recently to obtain
3  corroborating deposition testimony from a neutral third party showing that j2's own
4  products, while withheld from the PTO, had, in fact, been publicly disclosed and
5  offered for sale more than one year before j2 filed for its patents. [*See* Defendants'
6  proposed Amended Counterclaims at Ex. 1, at ¶¶ 36-38]

7        Once Defendants developed evidence to support that fact, they then
8  attempted to gather any and all available evidence that the PTO would not have
9  allowed the patent had it known about j2's products, including attempting to
10 analyze the source code used in j2's pre-filing products.  Throughout discovery
11 Defendants have pressed for access to the source code, but ███████████████
12 ████████████████████████████████████████████████████████████
13 ████████████████████████████████████████████████████████████
14 ████████████████████████████████████████████████████████████
15 ██████████████████████████████████████. Incredibly, j2 deleted
16 the code ███████████████████████████████████████████████████
17 ██████████████████████████████ and while the reexaminations of its
18 patents were pending. [Ex. 1, ¶¶ 70-93]

19       Although j2's witness, Mr. Niedzielski, was aware of and testified that ███
20 ████████████████████████████████████████, he was unprepared to testify on
21 many other topics that had been noticed and for which he had been offered.  As a
22 result, j2 offered to allow OpenText to depose another Rule 30(b)(6) witness in
23 September, and that witness was scheduled to be deposed until j2 retracted its offer
24 and indicated it intended instead to move to disqualify all of OpenText's litigation
25 counsel. [Declaration of Matthew F. Carmody in Support of Defendants' Motion to
26 Amend its Counterclaims ("Carmody Decl."), ¶¶ 2-3] Earlier, Defendants had held
27 extensive discussions with counsel for j2 about deposing Jack Rieley, co-founder of
28 JFAX/j2, purported inventor of the '638 patent, and the person likely to have the

most knowledge regarding the products j2 had on sale before applying for its patents. But during the course of the discussions j2 represented that Mr. Rieley could not be made available for deposition, because he resides in Germany, and is too sick to travel to the U.S. consulate for a deposition within Germany conforming to German law, or to travel outside of Germany. [Carmody Decl., ¶ 1]

At that point, in light of the spoliation of the key source code and the unavailability of Mr. Rieley for deposition, it became clear that Defendants would not have an opportunity to discover additional evidence in support of their inequitable conduct claims, and so Defendants prepared this motion and the proposed amended pleadings.

A party has good cause to amend its pleading when it has spent time in discovery adducing facts to meet *Exergen*'s pleading standard. *See Kannar v. Alticor Inc.*, No. CV 09-2500 PSG (VBKx), 2010 WL 891289 at *4 (C.D. Cal. March 10, 2010) (Defendants were justified in waiting to amend to add inequitable conduct allegations until after obtaining a "concession" during plaintiff's deposition that supported the "specific intent to deceive" aspect of the heightened *Exergen* pleading standard). Indeed, the purpose of the Federal Circuit's heightening the burden to establish inequitable conduct was to prevent "slender[]" charges of inequitable conduct from being maintained without solid evidence having been marshaled to support them. *Therasense*, 649 F.3d at 1289 (citing *Burlington Indus., Inc. v. Dayco Corp.*, 849 F.2d 1418, 1422 (Fed. Cir. 1988)). Defendants now seek leave to amend promptly after adducing significant additional evidence supporting their inequitable conduct claim.

### C. Defendants Have Good Cause to Add Their Tortious Interference and Unfair Competition Counterclaims Because the Facts Giving Rise to Those Claims Only Recently Arose.

The basis of Defendants' proposed counterclaims for tortious interference with prospective business advantage and unfair competition is intentional

misrepresentations recently made by j2 to EasyLink's prospective customer claiming that j2's patents gave j2 the exclusive right to sell email-to-fax services, and that j2's patents prevented EasyLink or anyone else from selling any type of email-to-fax service. Defendants only became aware of the communications during September 2012, and Defendants believe the communications were made shortly before then. [*See* Ex. 1, ¶¶ 119-24)] Thus, Defendants are seeking leave to amend to add these counterclaims promptly upon learning of j2's wrongful effort to deprive EasyLink of email-to-fax customers, and to gain those customers for itself, and could not have brought the claims earlier.

Although the misrepresentations by j2 were made to a prospective EasyLink customer, OpenText has completed its acquisition of EasyLink, and, as successor-in-interest, has standing to assert a claim based on the injury to EasyLink. In seeking to amend to add counterclaims for tortious interference and unfair competition in the OpenText case as well as the EasyLink cases, Defendants are not seeking duplicate recovery for their injury, but do so in the interests of consistency across their pleadings and to ensure they get their day in court on the matter.

### D. Defendants' Proposed Amended Counterclaims Are Not Brought in Bad Faith, Would Not Be Futile and Would Not Prejudice j2.

As shown above, Defendants have a good faith basis both to allege the additional facts they have learned in support of their inequitable conduct case and for their tortious interference and unfair competition counterclaims. The additional facts alleged in support of the inequitable conduct claims are based largely on the testimony of j2's witness, a third party computer scientist, and facts shown in documents produced by j2 in discovery. [*See* Ex. 1, ¶¶ 34-94] Defendants also have a good faith basis for their proposed tortious interference and unfair competition claims, as they have good reason to believe that j2 recently made the statement alleged, and good reason to believe, ███████, that j2 knows the statement is false. [*See* Ex. 1 at ¶¶ 117-126].

Defendants' proposed amendments are not futile, because they allege facts that, if proven, would support the causes of action alleged. Specifically, on the basis of the facts alleged, this Court could find that j2 is guilty of inequitable conduct because j2, with intent to deceive, withheld material information from the PTO, namely, its own prior art products, and that the PTO would not have granted any one of the claims of the '638, '688 or '132 patents if it had been aware of j2's prior art products. Defendants' proposed amendment satisfies the *Exergen* standard, because it identifies the "who, what, when, where, and how of the material misrepresentation or omission." *Exergen*, 575 F.3d at 1328. The proposed amendment identifies named inventor and j2 co-founder Jack Rieley, and alleges that he knew of the JFAX and JFAX/Send products that predated the patent applications' filing dates by more than one year, as evidenced by his affidavits and submissions in support of his trademark and copyright applications, as well as his Internet posts advertising the JFAX services, and yet failed to inform the patent examiner about these affidavits, the underlying products or any associated documents. [Ex. 1, ¶¶ 33-62] These facts are also the basis of Defendants' allegation that in omitting this information, Rieley intended to deceive the PTO— he clearly was aware of the products, actively marketing them, and affirmatively using them as the basis for inducing the government to grant trademarks and copyrights to his company. Defendants have also specifically alleged that the JFAX and JFAX/Send services were material to the patentability of the applications that became the '638, '688 and '132 patents. [Ex. 1, ¶¶ 30-32, 63-68]

Further, Defendants have specifically alleged that j2 committed affirmative acts of egregious misconduct constituting inequitable conduct in that (1) Jack Rieley and j2 filed false affidavits with the PTO affirming that they did not know or believe that the fax-to-email and email-to-fax inventions claimed in their patent applications were "in public use or on sale in the United States more than one year before prior to" their patent application dates, and (2) j2 deleted the best evidence

of the materiality of its JFAX and JFAX/Send products despite its obligation to disclose information about those products to the PTO during the pending reexaminations of the '638 and '688 patents and preserve such information during active litigation in which they accused their competitors of infringing those patents. [Ex. 1, ¶¶ 44, 84-98]; *See Therasense*, 649 F.3d at 1292.

Similarly, Defendants' proposed tortious interference and unfair competition amendments would not be futile because they allege facts that, if proven, would establish j2's liability.

Finally, the proposed amendments will not prejudice j2 because they will not cause delay or require significant additional discovery. *See Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (citing *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir. 1999). The inequitable conduct allegations would not require any additional discovery because any further discovery relating to the new facts alleged to support inequitable conduct would be relevant and undertaken in any event for purposes of Defendants' invalidity defenses. The proposed amendments adding tortious interference and unfair competition claims are likewise not prejudicial. While these claims will require some third party discovery, there is sufficient time left to accomplish it. Moreover, j2 has already contended that extensive third-party discovery of OpenText's customers is necessary to establish its infringement case, and it continues to engage in such third-party discovery. j2 can hardly complain that a few depositions of Defendants' customers for purposes of Defendants' tortious interference and unfair competition claim would be substantially prejudicial while it races around the country deposing scores of Defendants' customers to develop its own claim. Because discovery, including discovery of Defendants' customers, is ongoing, with ample time remaining, the proposed amendment would cause no delay in the proceedings.

## III. CONCLUSION

For the foregoing reasons, Defendants request that the Court grant Defendants leave to file the proposed amended counterclaims attached as Exhibit 1.

Dated: October 11, 2012

By: /s/ David J. Palmer

Grant Kinsel (Bar No. 172407)
gkinsel@perkinscoie.com
**PERKINS COIE LLP**
1888 Century Park East, Suite 1700
Los Angeles, CA 90067-1721
Telephone: 310.788.9900
Facsimile: 310.788.3399

Timothy J. Carroll (pro hac vice)
tcarroll@perkinscoie.com
Matthew F. Carmody (pro hac vice)
mcarmody@perkinscoie.com
**PERKINS COIE LLP**
131 South Dearborn Street, Suite 1700
Chicago, IL 60603
Telephone: 312.324.8400
Facsimile: 312.324.9400

David J. Palmer (Bar No. 217901)
dpalmer@perkinscoie.com
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, AZ 85012
Telephone: 602.351.8000
Facsimile: 602.648.7036

*Attorneys for Defendants*
*OPEN TEXT CORPORATION and*
*CAPTARIS INC*