Grant E. Kinsel (Bar No. 172407)
gkinsel@perkinscoie.com
PERKINS COIE LLP
1888 Century Park East, Suite 1700
Los Angeles, CA 90067
Telephone: 310.788.9900
Facsimile: 310.788.3399

Timothy J. Carroll *(Pro Hac Vice)*
tcarroll@perkinscoie.com
Matthew F. Carmody *(Pro Hac Vice)*
mcarmody@perkinscoie.com
PERKINS COIE LLP
131 South Dearborn Street, Suite 1700
Chicago, IL 60603
Telephone: 312.324.8400
Facsimile: 312.324.9400

Attorneys for Defendants/ Counterclaimants
CAPTARIS, INC., and OPEN TEXT
CORPORATION

[See signature block for full list of counsel]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| J2 GLOBAL COMMUNICATIONS INC., and ADVANCED MESSAGING TECHNOLOGIES, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>CAPTARIS, INC., and OPEN TEXT CORPORATION,<br><br>Defendants.<br><br>And Related Counterclaims | Case No. 09-cv-4150-DDP (AJWx)<br><br>**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO AMEND THEIR COUNTERCLAIMS**<br><br>Date:       November 19, 2012<br>Time:       10:00 a.m.<br>Courtroom: 3<br><br>Judge:      Hon. Dean D. Pregerson |

80040-0001/LEGAL25074645.1

**INTRODUCTION**

Defendants seek leave to amend to add facts to support their inequitable conduct counterclaims, and to add counterclaims for tortious interference and unfair competition. j2 contends the inequitable conduct amendments are too late, even though j2 *just days ago* revealed for the first time that it has found 1996 JFAX source code directly bearing on the inequitable conduct counterclaim. But j2's opposition would be groundless, even if it had not just disclosed newfound evidence on the issue. Courts permit defendants to explore the basis for inequitable conduct claims in discovery before pleading them, since such claims must be pled with particularity. Thus, Defendants should be permitted to add recently discovered facts to support their inequitable conduct counterclaim.

j2 does not oppose allowing the tortious interference and unfair competition counterclaims to be raised in the 2011 case, but opposes them in the 2009 cases, presumably because j2 would prefer to delay their adjudication. But this argument fails because adding the claims to the 2009 cases would cause no discovery delay or prejudice to j2. j2 also half-heartedly argues that the amendments would be futile in the 2009 cases, even though it does not oppose adding them to the 2011 case. In any event, there is no reason to bar Defendants' counterclaims from the 2009 cases, and Defendants' motion should be granted.

**ARGUMENT**

**A.      Defendants' Motion To Add Recently Learned Facts To Their Inequitable Conduct Counterclaim Should Be Granted.**

j2 does not contend that the new facts that Defendants seek to add to their inequitable conduct allegations would be futile, would cause undue prejudice, or are sought by the Defendants in bad faith. Rather, j2 contends that Defendants should not be allowed to amend their inequitable conduct allegations because certain discrete facts were not "recently discovered." j2's argument misses the point, which is that although *some* of the predicate facts have been known to Defendants,

Defendants continued their investigation to uncover additional facts, including the details of how JFAX's source code operated, before filing the proposed counterclaim amendment. This approach is consistent with the Federal Circuit's recent case law on inequitable conduct, and the district courts' application of it.

### 1. Defendants' Pursuit of Specific Facts Supporting Inequitable Conduct Before Moving for Leave to Amend is Mandated by Federal Circuit Law.

In contending that none of Defendants' allegations are new, j2 misleadingly focuses on facts relating to Dr. David Farber's use of the 1996 JFAX product, as well as the 1995 and 1996 copyright and trademark filings by j2. But although those facts illustrate that the JFAX product was indeed available and in use long before j2 filed for its patents, that information does not by itself establish that j2's failure to disclose JFAX to the Patent Office constituted inequitable conduct. Defendants must also show that the omission of this information was in fact material to patentability. *See Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1291-92 (Fed. Cir. 2011). Moreover, facts that, if true, would establish inequitable conduct, must be pled with particularity. *See Exergen v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327-29 (Fed. Cir. 2009).

Consistent with these requirements, before seeking to amend their complaint, Defendants appropriately proceeded with discovery, seeking to examine the best evidence of the materiality of the 1996 JFAX products—the 1996 source code. District courts applying the *Exergen* pleading standard have authorized this approach. For example, in *Kannar v. Alticor Inc.*, No. CV 09-2500 PSG (VBKx), 2010 WL 891289, at *4 (C.D. Cal. Mar. 10, 2010), the court held that Defendants were justified in waiting to amend to add inequitable conduct allegations until after obtaining a concession during plaintiff's deposition that supported the "specific intent to deceive" aspect of the heightened *Exergen* pleading standard. Similarly, in *SKF Condition Monitoring, Inc. v. Invensys Sys., Inc.*, No. 07cv1116 BTM (BGS), 2010 WL 3463686, at *4 (S.D. Cal. Aug. 31, 2010), the Defendant properly waited

to amend its counterclaim to add inequitable conduct where the evidence necessary to meet the heightened pleading standard became clear after receiving an Invention Disclosure and then deposing the inventors about it.

Other cases are in accord. *See Birchwood Lab., Inc. v. Battenfeld Tech., Inc.*, 762 F. Supp. 2d 1152, 1155 (D. Minn. 2011) (allowing late amendment of inequitable conduct counterclaim where party waited until they could "confirm [their] suspicions through additional discovery" because otherwise, it would "only encourage litigants to prematurely allege inequitable conduct on the merest suspicion, or run the risk of having the defense blocked as untimely," promoting "the very 'plague' of unsubstantiated inequitable conduct claims that the Federal Circuit has warned against."); *Douglas Press Inc. v. Int'l Gamco, Inc.,* Civ. No. 00-7340, 2004 WL 2937392, *1 (N.D. Ill. May 3, 2004) (stating that because of the seriousness of inequitable conduct claims and the high pleading requirements, it is proper for a party to wait beyond the scheduling deadline before asserting such claims); *Enzo Life Sciences, Inc. v. Digene Corp.,* 270 F. Supp. 2d 484, 487-88 (D. Del. 2003) (finding that "good cause" to add inequitable conduct claims was shown after the expiration of a deadline for the amendment of pleadings by waiting until the moving party could confirm its suspicions of inequitable conduct by taking the depositions of the two inventors of the patent at issue); *Advanced Cardiovascular Sys. Inc. v. SciMed Life Sys., Inc.,* 989 F. Supp. 1237, 1247 (N.D. Cal. 1996) (finding that defendant is entitled to confirm factual allegations through discovery before amending to include inequitable conduct defense).

**2.  j2 Contributed to any Delay by its Failure to Search for and Produce Crucial Source Code Evidence in a Timely Manner.**

Defendants tried for a long time to gain the necessary information to show that j2's patents would not have been granted had the Patent Office known about j2's products. EasyLink amended its invalidity contentions to put j2 on notice of

80040-0001/LEGAL25074645.1 -3-

this inequitable conduct argument approximately eight months ago.[1] [Declaration of David J. Palmer ("Palmer Decl."), Ex. 1 (EasyLink Amended Invalidity Contentions) at 8-10, 17-19 and 27-29]. Defendants sought to review j2's source code from the relevant time period, to take a 30(b)(6) deposition regarding the operation of the prior art JFAX system, and requested depositions of the founders of JFAX (and inventors of the '638 patent). Defendants were stonewalled at every turn: the inventors are unavailable, and j2's Rule 30(b)(6) witness knew nothing about how the early JFAX products worked and testified that the code had been discarded in 2006. [Palmer Decl. Ex. 2 (Niedzielski Dep.) at 31, 55-57, 59-60, 85-87]

j2's testimony that the JFAX source code repository had not been preserved came only recently. j2's destruction of 1996 JFAX source code while litigation was pending, together with j2's concealment of the products from the PTO would constitute an affirmative act of egregious misconduct sufficient to justify a finding of inequitable conduct. *See Therasense*, 649 F.3d at 1292. Because these facts were only recently brought to light, Defendants should be granted leave to add them to their inequitable conduct counterclaims.

Furthermore, in opposing Defendants' motion for spoliation sanctions, j2 now suddenly claims, for the first time, to be in possession of at least some of its 1996 JFAX source code after all, on a server it is now restoring. [Case No. 09-cv-4150, Dkt. #363 at 3] j2 waited until near the very end of the discovery period to reveal this fact, and Defendants have not yet had a chance to review that code. Yet j2 attempts to use its dilatory conduct in discovery to its advantage, arguing that Defendants have run out of time to amend their inequitable conduct allegations based on facts relating to that code. j2's perverse argument, if accepted, would

---

[1] The fact that Defendants had already pleaded inequitable conduct in their counterclaims and that EasyLink has already disclosed many of these facts in their invalidity contentions means that j2 would not be prejudiced by the proposed amendment. In addition, j2 would not be prejudiced by adding the proposed facts because Defendants would be entitled to rely on these facts at trial to support their unclean hands defense, in any case.

reward j2 for its failure to diligently search for and produce any of the code establishing its inequitable conduct until a motion for spoliation sanctions had been filed against it. Accordingly, Defendants should not only be permitted to amend their counterclaims, but should also be allowed to rely on any new facts revealed during the review of j2's newfound and yet to be produced 1996 source code.

### 3. j2 Agreed that this Motion Should be Delayed, Pending the October Mediation.

j2 claims (at 6) that Open Text unreasonably delayed filing for leave to amend to add facts to its inequitable conduct claim for months after EasyLink had amended its claims to add those facts. But j2 omits to mention that the parties had agreed in August to delay filing their respective motions on pleading amendments, spoliation sanctions and disqualification, hoping that an October mediation would resolve the litigation. j2 *relied* on that agreement to contend that it did not unreasonably delay its disqualification motion [Case No. 09-cv-4150, Dkt. #340-1 at 8 n.5], and yet attempts to use that delay in opposing Defendants' Motion for Leave to Amend. Because j2 agreed to it, no part of that delay should be held against Defendants.

## B. Defendants' Motion to Amend Their Counterclaims to Add Tortious Interference and Unfair Competition Claims Should Be Granted.

j2 does not oppose Defendants asserting their tortious interference and unfair competition counterclaims in the 2011 case it brought against EasyLink. But j2 opposes any addition of these claims to the 2009 cases it brought against Open Text and EasyLink, transparently seeking to delay their adjudication as long as it can. But j2's arguments against Defendants' proposed amendments fail.

*First,* j2 points to section 47 of the California Civil Code and contends, without any explanation, that Defendants' allegations are futile because j2's statements to potential customers are "protected by the litigation privilege." That argument is wholly without merit. Open Text's tortious interference and unfair competitions claims are based on the fact that j2 told a potential Open

Text/EasyLink *customer*, Intermedia, that no one other than j2 could legally provide fax-to-email and web fax services of any kind. [Def.'s Motion to Amend Countercl., Ex. A, Para. 118.] That communication was made by j2 to a third party for the purpose of dissuading them from purchasing Open Text/EasyLink services, and to induce them to purchase j2's services instead. As the Courts have explained, "[s]tatements to non-participants in the action are generally not privileged under Section 47(b)." *Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, 790 F. Supp. 2d 1024, 1031 (N.D. Cal. 2011) (internal quotation and citation omitted); *see also Am. Dental Ass'n v. Khorrami*, No. CV 02-3853 DT (RZX), 2004 WL 3486525, *5 (C.D. Cal. Jan. 26, 2004) ("Communications which only serve interests that happen to parallel or complement a party's interest in the litigation do not establish the requisite connection or logical relation element, and are not privileged.") (internal quotation omitted). j2's wrongful claims that its patents cover the entire field of email-to-fax services cannot be protected by the litigation privilege, because they were made to a third party.

*Second,* j2 claims that Open Text does not have standing to bring the tortious interference and unfair competitions claims because j2's statement "could only have injured EasyLink. But j2's argument completely ignores the fact that Open Text completed its purchase of EasyLink in July 2012, *before* j2's statements to Intermedia were made in September 2012. [*See* Case No. 09-cv-4150, Dkt. #337 at Ex. 1 (Defendants' Proposed Amended Counterclaims), ¶¶ 114, 119] Open Text had acquired EasyLink and was therefore itself selling the EasyLink services at the time of j2's statements, and was injured by j2's conduct.

*Third,* j2 asserts that Defendants' claims arise from a different set of facts than j2's patent infringement claims, and should therefore be litigated separately. Again, this argument is baseless, as evidenced by the lack of any supporting cases in j2's brief. The fact is that courts have generally held that tortious interference claims relating to wrongful assertions of patent infringement do, in fact, arise out of

the same transaction as the underlying patent infringement claim. Thus, contrary to j2's unsupported assertion, such claims are typically held to be compulsory counterclaims in the patent infringement suit. *See Eon Lab. v. SmithKline Beecham Corp.*, 298 F. Supp. 2d 175, 182-84 (D. Mass. 2003) (tortious interference claim arising from sham patent litigation preventing plaintiff from entering contracts or supplying prospective customers held to be compulsory counterclaim because it arose from the same transaction or occurrence as patent infringement claims); *JCM Am. Corp. v. Mars Elec. Int'l, Inc.*, No. CV-S-05-0946-RCJ-LRL, 2006 WL 813086, at *1-2 (D. Nev. Feb. 8, 2006) (tortious interference claim arising from false statements regarding patent infringement in press releases and in mailings to plaintiff's customers was a compulsory counterclaim because it arose from the same transaction or occurrence as the underlying patent infringement suit). Just as in these cases, the facts giving rise to Defendants' tortious interference and unfair competition claims arise out of the same transaction or occurrence as j2's claims for infringement of its email-to-fax patents, and should properly be included as counterclaims in the 2009 cases in which j2 has asserted infringement of those patents against Open Text and EasyLink.

*Finally*, j2 argues that Defendants' amended pleading should not be allowed because the addition of the new claims would inevitably delay the litigation. j2 is wrong, both procedurally and factually.

Contrary to j2's assertions, any delay would be highly unlikely. Discovery in these cases remains open, and Defendants' tortious interference and unfair competition counterclaims will not significantly expand discovery. In support of its assertion that delay is likely, j2 can identify only three depositions that might be required—the customer, the reseller, and a deposition of Defendants regarding damages. [Case No. 09-cv-4150, Dkt. #364 at 4] There is no reason these depositions could not be completed before discovery closes on December 21,

2012.[2] *See City and County of San Francisco v. Factory Mut. Ins. Co.*, No. C 04-5307 PJH, 2007 WL 2904254, at *4 (N.D. Cal. Oct. 3, 2007) (rejecting plaintiff's argument that it would be prejudiced by having to defend new counterclaim under existing schedule). Indeed, the relatively minimal discovery that would be required for these counterclaims pales in comparison to the dozens of depositions that j2 has demanded of third parties—located in various corners of the country—as part of its fishing expedition to locate some Open Text customer that has directly infringed its patents. Thus, j2 cannot, in good faith, argue that taking a few additional depositions would impose a substantial burden.

Moreover, even if delay were likely (and it is not), delay alone is generally insufficient justification for denying a motion to amend unless the court also specifically finds prejudice to the opposing party, bad faith of the moving party, or the amendment is futile. *Bowles v. Reade,* 198 F.3d 752, 757-58 (9th Cir. 1999). None of these factors are present here. j2 does not claim that it would be prejudiced by Defendant's amendment,[3] nor does it contend that Defendant's actions are in bad faith. j2's allegations of futility are baseless for the reasons discussed above. Moreover, delay is not likely to result from the addition of these simple counterclaims and the additional discovery that would be required.

Thus, it is evident that j2's attempt to relegate Defendants' tortious interference and unfair competition counterclaims to the 2011 EasyLink case (No. 11-cv-4239) is nothing more than an attempt to shelve these counterclaims for a

---

[2] j2 asserts that a damages deposition for *both* Open Text and EasyLink would be necessary. Since Open Text acquired EasyLink before the tortious interference occurred, it is unclear why separate damages depositions would be needed. In any event, even if j2 needed two damages depositions, those depositions could easily be done within the current discovery period.

[3] Prejudice results when an amendment would unnecessarily increase costs or would diminish the opposing party's ability to respond to the amended pleading. *BNSF Ry. Co. v. San Joaquin Valley R.R. Co.*, No. 1:08-CV-01086-AWI, 2011 WL 3328398, at *2 (E.D. Cal. Aug. 2, 2011). Prejudice and delay are "inherent" only where an amendment is brought *after* the close of discovery. *Id.* (emphasis added).

few years and delay their adjudication. The claims should be added to the 2009 actions, as j2's ability to defend the claims would not be diminished in any way.

## CONCLUSION

For the foregoing reasons, Defendants should be permitted to amend their counterclaims to add facts supporting their inequitable conduct claims and to add their tortious interference and unfair competition counterclaims.

Dated: November 5, 2012

By: */s/ Timothy J. Carroll*

Grant Kinsel (Bar No. 172407)
gkinsel@perkinscoie.com
Gigi C. Hoang (Bar No. 241182)
ghoang@perkinscoie.com
PERKINS COIE LLP
1888 Century Park East, Suite 1700
Los Angeles, CA 90067
Telephone: 310.788.9900
Facsimile: 310.788.3399

Timothy J. Carroll *(Pro Hac Vice)*
tcarroll@perkinscoie.com
Matthew F. Carmody *(Pro Hac Vice)*
mcarmody@perkinscoie.com
PERKINS COIE LLP
131 South Dearborn Street, Suite 1700
Chicago, IL 60603
Telephone: 312.324.8400
Facsimile: 312.324.9400

David J. Palmer (Bar No. 217901)
dpalmer@perkinscoie.com
PERKINS COIE LLP
2901 N. Central Avenue, Suite 2000
Phoenix, AZ 85012
Telephone: 602.351.8000
Facsimile: 602.648.7036

Attorneys for Defendants/
Counterclaimants
CAPTARIS, INC., and OPEN TEXT CORPORATION