Grant E. Kinsel (Bar No. 172407)
gkinsel@perkinscoie.com
PERKINS COIE LLP
1888 Century Park East, Suite 1700
Los Angeles, CA 90067
Telephone: 310.788.9900
Facsimile: 310.788.3399

Timothy J. Carroll *(Pro Hac Vice)*
tcarroll@perkinscoie.com
Matthew F. Carmody *(Pro Hac Vice)*
mcarmody@perkinscoie.com
PERKINS COIE LLP
131 South Dearborn Street, Suite 1700
Chicago, IL 60603
Telephone: 312.324.8400
Facsimile: 312.324.9400

Attorneys for Defendants/ Counterclaimants
CAPTARIS, INC., and OPEN TEXT CORPORATION

[See signature block for full list of counsel]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| J2 GLOBAL COMMUNICATIONS INC., and ADVANCED MESSAGING TECHNOLOGIES, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>CAPTARIS, INC., and OPEN TEXT CORPORATION,<br><br>Defendants.<br><br>And Related Counterclaims | Case No. 09-cv-4150-DDP (AJWx)<br><br>**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR SPOLIATION SANCTIONS**<br><br>Date: November 19, 2012<br>Time: 10:00 a.m.<br>Courtroom: 3<br><br>Judge: Hon. Dean D. Pregerson |

80040-0001/LEGAL25085889.1

**INTRODUCTION**

j2 failed to conduct anything approaching a thorough search for the 1996 source code that operated its first product (JFAX) until Defendants filed their spoliation motion. On October 29, 2012, more than four years after j2 initiated this litigation, and on *the same day* that j2 filed its response in opposition to Defendants' motion, j2's counsel offered, for the very first time, the 1996 JFAX source code for review and claimed that j2 is working to restore a "decommissioned" server containing code that j2 would make available. [Declaration of David J. Palmer ("Palmer Decl."), Ex. 1 (Oct. 29, 2012 Bernstein Email to Carroll)] But Defendants have been deprived of the opportunity to take meaningful depositions of j2 and its witnesses, and they were forced to proceed in the case for years without the benefit of the newly surfaced source code. Accordingly, Defendants should be awarded their fees and costs under Rule 37 for the time and expense they have been forced to incur to compel j2 to comply with its discovery obligations, which only came about through motion practice.

The Court should reserve its ruling on the case-dispositive relief that Defendants have sought in their motion for spoliation sanctions, because Defendants and the Court have not had the opportunity to verify j2's counsel's claims regarding j2's supposedly newfound source code. Once Defendants have had an opportunity to conduct a forensic examination of the code and the media containing it, Defendants will seek case-dispositive relief if warranted. However, j2's failure to produce any JFAX code until this motion was filed amounts to, at best, a striking lack of diligence, or a total disregard for the discovery process. j2 must be sanctioned under Rule 37 of the Federal Rules of Civil Procedure.

The fact discovery cutoff date is just seven weeks away, so the Court should allow Defendants' expert (or immediately appoint an expert) to undertake forensic examinations of the media that j2 has only now offered. Otherwise, neither the Defendants nor the Court will know if j2 recovered all available code, when the

code files were created and/or modified, and whether the available data truly depicts the requested JFAX code.[1] *See Advante Int'l Corp. v. Mintel Learning Tech.*, No. C 05-01022 JW (RS), 2006 WL 3371576, at *1 (N.D. Cal. Nov. 21, 2006) (allowing forensic examination of plaintiff's hard drive because "serious questions" existed as to reliability and completeness of materials produced); *Genworth Fin. Wealth Mgmt., Inc. v. McMullan*, 267 F.R.D. 443, 449 (D. Conn. 2010) (allowing forensic examination to determine extent of spoliation; awarding costs and fees as sanctions and shifting 80% of cost of forensic review to offending party).

## ARGUMENT

**A.    Years After Initiating These Litigations, j2 Now Promises to Make the JFAX Source Code Available for Review.**

The incredible revelation that j2 has just now located the 1996 JFAX code, and that it is now working to restore a "decommissioned" source code server, comes:

(1) more than ***eight years*** after j2 first began suing its competitors for infringing its fax-to-email patent in 2004 and was required to preserve and/or produce this code [Dkt. #336-2 (Palmer Declaration In Support of Defendants' Motion for Spoliation Sanctions), Ex. 28];

(2) more than ***four years*** after j2 filed its initial lawsuits against Open Text and EasyLink;

(3) more than ***three years*** after Defendants' first requested the 1996 code [*See, e.g.*, Declaration of David J. Palmer in Support of Defendants' Reply In

---

[1] This information is relevant because the code concerns the operation of j2's product before it filed its fax-to-email and email-to-fax patents. The functions j2's product performed, and when it performed those functions, are important to the question of whether j2's own product should have been disclosed to the PTO and/or whether it invalidates its patents.
    j2 has refused to allow forensic access to the actual media containing its source code. It has agreed only to make copies of the code available for review during business hours in its outside counsel's office.

Support of Their Motion for Spoliation Sanctions, Ex. 2 (Captaris' First Requests For Production Nos. 16, 18-19)];

(4) *four months* after j2's Rule 30(b)(6) witness testified that (i) j2's CVS repository was the system j2 had used to preserve and track changes to JFAX code from 1997 until 2006, (ii) the code in the CVS repository had *not* been preserved and (iii) no backup tapes for it could be found despite multiple searches [Palmer Decl., Ex. 6 (Niedzielski Dep.) at 84-87, 109];

(5) more than *three months* after Open Text's counsel and expert traveled to New York to review j2's early source code production, which j2 made available for review at its outside counsel's office, without indicating that it had reason to believe that later searches would find the 1996 JFAX code; and

(6) just a few weeks before the December 21, 2012 close of fact discovery in the earlier-filed Open Text and EasyLink cases.

**B.    j2 Testified that the Source Code Repository Containing its 1996 JFAX Code Had Not Been Preserved, and j2 Never Informed Defendants that its Testimony Was in Any Way Wrong or Mistaken.**

j2 tries to hide its discovery failures by falsely claiming that Defendants filed the instant spoliation motion without meeting and conferring and despite knowing that j2 was still diligently searching for its code. In reality, j2's Rule 30(b)(6) witness testified under oath that the 1996 JFAX code had *not* been preserved and that no backups could be found. In the four months since that deposition, j2 never gave *any* indication to Defendants that it had any reasonable hope of finding the 1996 JFAX code on yet-to-be-searched media or from additional custodians. [Palmer Decl., Ex. 6]

Indeed, unless j2 misrepresented that it lacked possession of the JFAX source code, it must be the case that the code j2 now offers to restore was just found, and likely came from another source. In late June, j2's 30(b)(6) testimony was that its

JFAX source code repository had not been preserved and all the backups had been lost. [*Id.*] Shortly thereafter, Defendants' counsel and its expert traveled to j2's counsel's New York offices to review the bits of code that j2 had in its possession. That review revealed, just as Mr. Niedzielski testified, that there were no code files or files of any other type dating back to 1997 or earlier.[2] [*Id.* at 84-87, 108-109]

Defendants then sent a follow-up letter to j2 on July 12, 2012, asking j2 to clarify that "all j2 source code repository files … have been made available to us." [Palmer Decl., Ex. 4 (July 12, 2012 Palmer Letter to Bernstein)] Defendants never received any response to this letter, nor any other communication indicating that j2 was attempting to, and had a reasonable hope of, locating JFAX's 1996 source code from undisclosed sources.

On August 27, 2012, counsel for Open Text and j2 discussed the upcoming mediation and each side's threatened motions. [*See* Case No. 09-cv-4150, Dkt. #336 (Defendants' Motion for Spoliation Sanctions) at 1] j2's attorney never informed Defendants' counsel that j2 was searching for the 1996 JFAX code, or that there were additional sources yet to be searched. On October 3, 2012, in preparation for an October 10 mediation, the parties exchanged mediation statements. [Palmer Decl., ¶ 5] In Defendants' mediation statement, they expressed to j2, in significant detail, their argument that j2 had spoliated the 1996 JFAX source code, and that Defendants intended to seek relief should the mediation fail to produce a settlement. Thus, j2's claim (at 4) that Defendants had only mentioned their intent to seek spoliation sanctions for the first time five days before the mediation and "in passing" is not true. Even so, j2 did not represent on any of these occasions that it had found the 1996 JFAX code in some form.

---

[2] This was also consistent with j2's counsel's statement that the code j2 had found, collected and made available for review was "not much." [Palmer Decl., Ex. 3 (Nov. 2, 2012 Bernstein Email to Carroll)]

j2's Rule 30(b)(6) witness, Mr. Niedzielski, now argues, in a declaration attached to j2's opposition (at ¶ 5), that he did not testify that the CVS code repository was destroyed, and that he "made clear" that j2's attempts to find and restore code were "ongoing." Niedzielski's new contention must be disregarded because it is an effort by j2's Rule 30(b)(6) witness to use a sham declaration to change his deposition testimony. *See Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991) (a "sham" affidavit, intended to raise issues of fact by conflicting with deposition testimony is to be disregarded).

In any event, j2 (and Niedzielski) mischaracterize Niedzielski's deposition testimony. Mr. Niedzielski testified on behalf of j2, without ambiguity, that the CVS repository was the exclusive code repository used by j2 from 1997 (when j2's first Chief Technology Officer first loaded the JFAX code into a version control system[3]) until 2006, that the CVS repository had not been "carried forward," and that no backups of the CVS repository could be found. [Palmer Decl., Ex. 6 (Niedzielski Dep.), at 84-87, 108-09] In contrast, Mr. Niedzielski separately testified that different backup tapes—labeled "eFax"—had been located.[4] [*Id.* at 90-91] But j2 has *not* stated that the newfound 1996 JFAX code was located on the eFax-labeled backup tapes Mr. Niedzielski testified about. Instead, j2 claims in its opposition (at 3-4) that the newfound code was located on a "VSS development server," in "archived folders," and in the possession of an unidentified former employee. But at his deposition, Mr. Niedzielski did ***not*** testify about the existence of a VSS[5] development server or additional former employees from whom documents had not yet been collected.

---

[3] [Case No. 09-cv-4150, Dkt. #336-2, Ex. 1 (Narasimhan Dep.) at 69]

[4] eFAX is the name of a company that j2 did not acquired until 2000, suggesting that whatever was stored on the eFAX backup tape did not contain the 1996 JFAX code.

[5] Open Text specifically asked j2 if it had any relevant code in a VSS repository. j2 ignored the question. [*See* Palmer Decl. Ex. 4 (July 12, 2012 Palmer Letter to Bernstein at 3)]

Amazingly, j2 attempts (at 4 and 5) to blame Defendants for not "follow[ing] up on the status of the backup tapes that Mr. Niedzielski was trying to restore," suggesting that j2 somehow had no obligation to produce the code until Defendants asked for it yet again. But as j2 well knows, Defendants at all times sought production of early JFAX source code, as such code evidences j2's inequitable conduct on the Patent Office. Defendants' requests for the 1996 JFAX code had been outstanding for years, and Open Text's counsel and expert had traveled to j2's counsel's offices in New York for the purpose of reviewing all the code j2 had then made available. [*See* Palmer Decl., Exs. 8-10] Furthermore, j2 knew about Defendants' instant motion for a month before it was filed but never revealed any newfound JFAX code or reported any progress whatsoever on its purported attempts to find the code. The only conclusion that can be drawn from j2's conduct is that j2 either (1) misrepresented to Defendants that it did not possess the code, or (2) did not want to find the code and so did not take seriously its responsibility to conduct a thorough search for the code until Defendants brought a spoliation sanctions motion against it.[6]

j2 also argues that Defendants wrongly refused to withdraw their motion in response to j2's October 25, 2012 email, reporting that it had found more code. However, on October 25th, j2 did not produce, identify or describe its newfound code other than to say it included "pre-2006" code "from the late 1990s." [Palmer Decl., Ex. 5] j2's vague October 25 email promised to make this new code available for inspection, but avoided representing that it had found the 1996 JFAX

---

[6] j2 also suggests (at 1) that it had no obligation to preserve the 1996 JFAX source code before it "contemplated" litigation, even though j2 concealed the existence of its 1996 products from the PTO, and then began to threaten its competitors once it had induced the PTO to grant the patents. [*See* Case No. 09-cv-4150, Dkt. #336 (Defendants' Motion for Spoliation Sanctions) at 5-9] But j2 misses the point—according to the testimony of j2's witnesses, j2 appears to have *actually preserved* the 1996 JFAX code in a version-control system until 2006, when litigation was pending. [Palmer Decl., Ex. 6 (Niedzielski Dep.) at 88-89]

code that was the subject of Defendants' motion. Only later, in Mr. Bernstein's email of October 29 (after j2 had filed its opposition), did j2 first reveal that it had found some code that dates back to 1996. But that claim remains unverified.

j2 also contends that the fact that its 30(b)(6) deposition was left open excuses j2's failure to produce the code for several years. This argument is specious, because j2 produced a witness who was unprepared to testify on the many topics for which the witness had been offered, including the products j2 offered for sale before 1997 [Palmer Decl., Ex. 7 at 3-13 (Noticed Deposition Topics); Ex. 6 (Niedzielski Dep.) at 31, 33, 53-54, 59-60, 66-67, 78; Declaration of Matthew Carmody, ¶ 3]. Defendants reserved their right to continue the 30(b)(6) deposition [Palmer Decl., Ex. 6 (Niedzielski Dep.) at 115], while examining the witness on the information he was prepared to provide. [Carmody Decl., ¶ 4][7]

Notably, however, one of the few topics that the 30(b)(6) witness was prepared to, and did, testify about was j2's document retention practices. That testimony established that the CVS source code repository that j2 had used to preserve the JFAX source code through 2006 was "not carried forward" in connection with a change in version control systems, and that multiple searches for backup tapes for the CVS system had come up empty. [Palmer Decl., Ex. 6 (Niedzielski Dep.) at 84-87, 108-09] In its opposition to the instant motion, j2 has attempted to change the record, claiming that, despite its 30(b)(6) witness's testimony, the JFAX source code was accessible and is in the process of being produced for inspection. But even assuming that j2's new story is true, it would still mean that j2 has engaged in sanctionable conduct, namely, (i) producing a 30(b)(6) witness who provided false testimony or was not adequately prepared to testify about j2's document retention; and (ii) failing to collect and produce the

---

[7] Defendants refrained from pursuing sanctions against j2 for producing an unprepared witness, hoping to avoid costly motion practice and that j2 would satisfy its obligations under Rule 30(b)(6) in a subsequent setting.

source code for years, until the filing of the instant motion. Either way, j2's conduct can not be condoned, and it merits sanctions.

### C. j2 and Its Counsel Must Be Held Accountable for j2's Discovery Failures.

"When a lawyer who has been retained to handle a matter learns that litigation is probable or has been commenced, the lawyer should inform the client of its duty to preserve potentially relevant documents and the possible consequences of failing to do so." ABA Section of Litigation, *Civil Discovery Standards*, Standard IV (Aug. 1999). As set forth in *Zubulake v. UBS Warburg LLC*, outside counsel "must take affirmative steps to monitor compliance [with the litigation hold] so that all sources of discoverable information are identified and searched." 229 F.R.D. 422, 432 (S.D.N.Y. 2004). Outside counsel must also "oversee compliance with the litigation hold, monitoring the party's efforts to retain and produce the relevant documents." *Id.*; *see also Housing Rights Ctr. v. Sterling*, No. CV 03 -859 DSF, 2005 WL 3320739, at *3 (C.D. Cal. Mar. 2, 2005) ("[C]ounsel's apparent failure, in this electronic age, to verify with appropriate representatives of their client whether there was an e-mail backup system, cannot be countenanced."); *United Factory Furniture Corp. v. Alterwitz*, No. 2:12–cv–00059–KJD–VCF, 2012 WL 1155741, at *3 (D. Nev. Apr. 6, 2012) (counsel has duty to monitor discovery and its failure to do so "constitutes gross negligence for sanctions purposes [] because it is likely to result in destruction of relevant information") (citation omitted). Further, outside counsel must ensure that relevant information is (i) identified, (ii) retained, and (iii) produced in response to discovery demands. In contravention of these obligations, j2's attorneys:

- presented a Rule 30(b)(6) witness who was unprepared to answer questions under oath concerning the existence, location, state or availability of the 1996 JFAX source code;
- ignored discovery requests to examine the 1996 JFAX source code;

- provided shifting explanations and details regarding the code;
- did not make relevant source code available to Defendants until the close of fact discovery was near;
- prevented Defendants from taking meaningful discovery and depositions; and
- forced Defendants to incur the expenditures associated with (i) forcing j2 to search for the requested source code, (ii) traveling to New York to review a purported "source code" production that was almost completely devoid of any code at all [Palmer Decl., Ex. 4] and (iii) bringing this motion.

## CONCLUSION

In light of j2's promised production of materials relating to the JFAX code, the Court should reserve its ruling on the case-dispositive relief requested in Defendants' spoliation motion, including whether an adverse inference instruction should be given as a result of j2's failure to preserve evidence. After reviewing the code and files j2 claims to have recently found, Defendants will determine whether to renew their petition for outcome-dispositive relief.

However, j2's failure to locate and produce the 1996 code despite years of litigation over these patents, document requests that have been pending for two years, and months of active discovery efforts cannot be condoned. j2's entire effort here lacks credibility because the version of events set forth in j2's opposition is different from and contradicts j2's witness testimony and its attorney explanations. The best and most efficient way for the Court and Defendants to know whether j2 failed to conduct a reasonable and timely search for the source code, and whether j2 failed to preserve and/or destroyed critical evidence, is for the Court to appoint a Special Master under Rule 53 of the Federal Rules of Civil Procedure to investigate this issue. The Special Master should be given access to all of the j2 source code and related documentation so that he or she can examine it, assess whether it is an accurate production of the 1996 JFAX source code, analyze whether any of the data has been spoliated and/or manipulated, and determine whether more unproduced

evidence exists.  j2 should bear the cost of the work performed by this Special Master because it was necessitated by j2's repeated discovery failures.

       Further, as a result of j2's discovery failures, sanctions must be awarded to Defendants (including under Rule 37 of the Federal Rules of Civil Procedure), given that the Defendants spent significant time and money reviewing incomplete portions of source code, were forced to take depositions without first having the benefit of examining the source code, and have been prejudiced in their ability to complete fact discovery due to j2's shifting explanations regarding the source code. The sanctions awarded to Defendants should include their fees and costs incurred in investigating whether j2 had produced its 1996 JFAX source code, including the time from Defendants' on-site review of j2's purported source code in July 2012 (conducted, it turns out, before j2 had conducted a full and reasonable search for the code being sought), preparing for and taking of a second Rule 30(b)(6) deposition concerning the JFAX source code, and arguing this motion after reasonably relying on j2's witness's testimony that the 1996 code had been destroyed and no backups could be found.  This work would not have been necessary if j2 had complied with its discovery obligations in a timely manner and conducted a reasonably thorough search for the 1996 JFAX source code before this motion was filed, or at any point during the years that j2 has been asserting its fax-to-email and email-to-fax patents.

Dated: November 5, 2012

By: */s/ David J. Palmer*

Grant Kinsel (Bar No. 172407)
gkinsel@perkinscoie.com
Gigi C. Hoang (Bar No. 241182)
ghoang@perkinscoie.com
PERKINS COIE LLP
1888 Century Park East, Suite 1700
Los Angeles, CA 90067
Telephone: 310.788.9900
Facsimile: 310.788.3399

Timothy J. Carroll *(Pro Hac Vice)*
tcarroll@perkinscoie.com
Matthew F. Carmody *(Pro Hac Vice)*
mcarmody@perkinscoie.com
PERKINS COIE LLP
131 South Dearborn Street, Suite 1700
Chicago, IL 60603
Telephone: 312.324.8400
Facsimile: 312.324.9400

David J. Palmer (Bar No. 217901)
dpalmer@perkinscoie.com
PERKINS COIE LLP
2901 N. Central Avenue, Suite 2000
Phoenix, AZ 85012
Telephone: 602.351.8000
Facsimile: 602.648.7036

Attorneys for Defendants/ Counterclaimants
CAPTARIS, INC., and OPEN TEXT CORPORATION