Grant E. Kinsel (Bar No. 172407)
gkinsel@perkinscoie.com
PERKINS COIE LLP
1888 Century Park East, Suite 1700
Los Angeles, CA 90067
Telephone:  310.788.9900
Facsimile:  310.788.3399

Timothy J. Carroll *(Pro Hac Vice)*
tcarroll@perkinscoie.com
Matthew F. Carmody *(Pro Hac Vice)*
mcarmody@perkinscoie.com
PERKINS COIE LLP
131 South Dearborn Street, Suite 1700
Chicago, IL 60603
Telephone:  312.324.8400
Facsimile:  312.324.9400

Attorneys for Defendants/ Counterclaimants
CAPTARIS, INC., and OPEN TEXT
CORPORATION

[See signature block for full list of counsel]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| J2 GLOBAL COMMUNICATIONS INC., and ADVANCED MESSAGING TECHNOLOGIES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> CAPTARIS, INC., and OPEN TEXT CORPORATION, <br><br> Defendants. <br><br> And Related Counterclaims | Case No. 09-cv-4150-DDP (AJWx) <br><br> **SUPPLEMENTAL BRIEF IN SUPPORT OF DEFENDANTS' OPPOSITION TO J2'S MOTION TO DISQUALIFY PERKINS COIE AND COMPEL DISCOVERY** <br><br> Date:          November 19, 2012 <br> Time:          10:00 a.m. <br> Courtroom:  3 <br><br> Judge:        Hon. Dean D. Pregerson |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................................................. 1

II. ARGUMENT ..................................................................................................... 3

    A. Mr. Findley Has No Affiliation Whatsoever With Perkins and Perkins is Not Accused of, Nor Has It Committed, Any Misconduct ................................................................................................. 3

    B. The Law Does Not Require the Automatic Disqualification of Perkins, An Innocent Bystander Not Affiliated With the Alleged Conflict ....................................................................................................... 5

    C. Should the Court Deem it Necessary to Impose a Remedy Here, Less Draconian Remedies Than Disqualification Are Available and Appropriate................................................................................... 8

        1. The Court Has The Discretion to Fashion a Remedy That Is More Suitable Than Complete Disqualification.................... 8

        2. Consideration #1:  Nothing In The Record on this Motion Supports the Drastic Remedy of Disqualifying Perkins........... 10

        3. Consideration #2: Open Text Would Be Severely Prejudiced If Perkins Were to Be Disqualified ....................... 12

        4. Consideration #3: Open Text Has No Culpability, and Has Acted Reasonably and Ethically....................................... 15

        5. Consideration #4:  Disqualifying Perkins Would Not Result in Greater Protection of j2's Confidences.................... 16

        6. Consideration #5:  Disqualifying An Innocent, Unaffiliated Firm That Committed No Ethical Misconduct Is Unjust and Would Create Bad Law and Public Policy........ 17

        7. Consideration #6:  Numerous Less Severe, More Targeted Remedies are Available to the Court in Order to Protect j2's Client Confidences ........................................................... 19

III. CONCLUSION ........................................................................................... 20

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Airport Car Rental Antitrust Litig.*, 470 F. Supp. 495 (N.D. Cal. 1970) ..................5

*Akerly v. Red Barn Sys.*, 551 F.2d 539 (3d Cir. 1977) ................................................5

*Canatella v. Krieg, Keller, Sloan, Reilley & Roman*,
   No. C 11-05535, 2012 WL 847493 (N.D. Cal. Mar. 13, 2012)........................5, 8

*Columbia Pictures Indus., Inc. v. Bunnell*,
   No. CV 06-1093 FMC(JCX), 2007 WL 4916963 (C.D. Cal. Aug. 10, 2007) .....12

*Dodson v. Floyd*, 539 F. Supp. 1056 (N.D. Ga. 1981)..............................................5, 8

*Flatt v. Superior Court of Sonoma County*, 9 Cal. 4th 275 (1994) ............................6

*Gregori v. Bank of Am.,* 207 Cal. App. 3d 291 (1989)................................................9

*Hartford Cas. Ins. Co. v. Am. Dairy and Food Consulting Lab., Inc.*,
   No. 1:09-cv-0914, 2010 WL 2510999 (E.D. Cal. June 17, 2010).......................11

*Kirk v. First Am. Title Ins. Co.*, 183 Cal. App. 4th 776 (2010)..........................2, 7, 8

*Neal v. Health Net, Inc.,* 100 Cal. App. 4th 831 (2002)..............................................9

*Pound v. DeMera DeMera Cameron*, 135 Cal. App. 4th 70 (2005)......................5, 6

*Smith v. Whatcott*, 774 F.2d 1032 (10th Cir. 1985)..................................................5, 8

*UMG Recordings, Inc. v. MySpace, Inc.*,
   526 F. Supp. 2d 1046 (C.D. Cal. 2007) ...............................................................9

*Vieste, LLC v. Hill Redwood Dev.*, No. C-09-040240JSW (DMR),
   2010 WL 4807058 (N.D. Cal. Nov. 18, 2010) ....................................................12

**Other Authorities**

Geoffrey C. Hazard, Jr. & W. William Hodes, *The Law of Lawyering: A
   Handbook on the Model Rules of Professional Conduct* § 4.7, at 4-22
   (Aspen 3d ed. 2007) ...............................................................................................9

Matthew Lenhardt, *Ethical Screens in the Modern Age Ethics Review*, 50
   Santa Clara L. Rev. 1345, 1363, 1366 (2010)......................................................19

Richard E. Flamm*Lawyer Disqualification: Conflicts of Interest and Other
   Bases* § 23.1, at 443-45 (Banks and Jordan, 2003)................................................9

## I.    INTRODUCTION

Perkins Coie ("Perkins") is situated differently from other law firms that have faced disqualification under California authority because it has no ties to the conflicted attorney.[1]   Rather, Perkins is an innocent bystander; a firm that has defended this litigation for four years, had no knowledge whatsoever of any potential conflict and has always conducted itself ethically.  Perkins' lawyers have all sworn under oath, as officers of the Court, that they never received *any* information from Mr. Findley about j2, confidential or otherwise.  Open Text has also provided declarations from its highest ranking legal officers that (i) they did not receive any of j2's confidential information from Mr. Findley; (ii) they were unaware of Mr. Findley's prior work for j2; and (iii) Mr. Findley specifically advised Open Text that his prior work on an unidentified "Bobo" patent did not create a conflict of interest.  Upon learning of Mr. Findley's potential conflict, Perkins and Open Text promptly cut off all contact with him.

Against this backdrop, it would be unfair, unprecedented and severely prejudicial to penalize Open Text by automatically disqualifying Perkins, a law firm that has not violated any ethical rules, committed any errors in its conflicts procedures, nor compromised j2's confidential information in any way.  Unlike law firms or lawyers that are subject to disqualification—who often have failed to either identify or adequately deal with a conflict of interest—Perkins has done nothing wrong, has no conflict of interest, and was involved in this litigation years before the issue of a conflict concerning Crowell & Moring and Mr. Findley ever arose.

While California law compels automatic disqualification under many scenarios, it does not here, where the target of the motion has no affiliation or association with the conflicted attorney.  There is not a single California case requiring the automatic disqualification in this unique scenario.  Indeed, in similar

---

[1] Capitalized terms are given the same meaning as in defendants' memorandum of law in opposition to plaintiff's motion to disqualify.

settings, the law counsels *against* automatic disqualification, as courts can use their discretion to fashion less draconian remedies that are more in proportion with the alleged harm.  Given the particular facts of this case, it would be unreasonable and inappropriate to disqualify Perkins.

The *Pound* case that is the centerpiece of j2's argument does not compel disqualification here.  *Pound* addressed a different scenario, in which a <u>law firm</u> associated an outside lawyer as <u>counsel of record</u> despite <u>knowing</u> that the outside lawyer had consulted with the opposition in the <u>same litigation</u>, and thereby had <u>obtained</u> the opposition's confidential information.  None of those facts are present here.  Specifically, (i) Perkins did not associate Mr. Findley as its co-counsel; (ii) Mr. Findley did not provide services to j2 in the current litigations; (iii) Perkins was unaware of the potential for a conflict and, upon learning of such potential, promptly ceased communications with Findley; and (iv) there is not even a shred of evidence that Mr. Findley actually obtained or recalled j2's confidential information, let alone transmitted it to Perkins.  Other more recent California authority, such as *Kirk v. First Am. Title Ins. Co.*, 183 Cal. App. 4th 776 (2010), views *Pound* with disfavor*, and counsels against automatic disqualification in favor of a more measured approach, such as the imposition of an ethical wall.

Should the Court nevertheless deem it necessary to address the issues caused by Mr. Findley, a more focused and appropriate remedy would better address this situation than disqualifying Perkins.  Such a remedy should take the following into account:

- Disqualifying Perkins—a party that has acted ethically, had minimal access to Mr. Findley, did not receive j2's confidential information, and has cut off contact with Findley—will do little to advance the supposed purpose of this motion: i.e., to protect j2's client confidences.

- Defendant Open Text, which has acted ethically at all turns, was advised by Crowell that there was no conflict and has severed all ties to Findley, would

1    endure severe prejudice if Perkins is disqualified.  Given the history and

2    complexity of these cases, as well as the volume of discovery, having to hire

3    a new law firm at this late stage will put Open Text at a gross disadvantage

4    on the merits over a situation not of its own making.

5    • Disqualifying Perkins would cause Perkins and Open Text to suffer other

6    forms of prejudice, including (a) the forfeiture of millions of dollars Open

7    Text has invested in Perkins' defense of its case, (b) the cost (untold

8    additional millions) to Open Text for a new firm to learn these cases, and (c)

9    undeserved damage to their respective professional reputations.  And this

10    will be imposed against two parties who were not the conflicted entity.

11    • Disqualifying Perkins would be inconsistent with California policy.  It would

12    have a chilling effect on law firm practice and attorney-client relationships to

13    disqualify long-standing counsel when, through no fault of its own and

14    unbeknownst to it, an unaffiliated actor appears to commit an ethical

15    violation.

16    In light of the foregoing, the Court should deny j2's motion to disqualify

17 Perkins.  At the very minimum, the Court should utilize its discretion to impose a

18 less severe remedy than disqualifying Perkins, which would be less prejudicial to

19 Open Text and that could more effectively protect j2's client confidences.

20

21    **II.    ARGUMENT**

22    **A.    Mr. Findley Has No Affiliation Whatsoever With Perkins and Perkins is Not Accused of, Nor Has It Committed, Any Misconduct.**

23

24    j2 concedes, as it must, that Perkins has not engaged in any misconduct or

25 ethical violations.  [*See* Oct. 24, 2012 Hr'g Tr. at 36 ("I'm not blaming Mr. Carroll.

26 … I'm not saying Mr. Carroll did it intentionally.  I'm not saying he did or didn't

27 know."); *see also id.* at 23-24 ("[Mr. Sacks] [has] told me I did nothing wrong.  My

28

team did nothing wrong.  He's told me that much.")]  Nevertheless, j2 asks this Court to take the unprecedented step of disqualifying Perkins.  The allegedly conflicted attorney, Mr. Findley, is not an attorney at Perkins, nor was he retained by Perkins.  Perkins did not have the responsibility, knowledge or means to conduct a conflicts check with respect to Mr. Findley, nor to address any conflict that Findley and Crowell Moring may have had.  Perkins was given no reason to suspect that Findley had done work for j2 in his past and, even if it did, it had no ability to control Crowell Moring's conflicts procedures.  Perkins also never received any information from Mr. Findley about j2 that it suspected to be confidential.  Moreover, when j2 raised the potential that Findley might be conflicted, Perkins ceased communicating with him.  Simply put, Perkins is an innocent party that had no obligation or ability to act differently than it did with respect to Mr. Findley or his potential conflict of interests.

The same is true for Open Text, which (i) never received confidential information about j2 from Findley, (ii) justifiably relied on Crowell's conflicts procedures and Mr. Findley's advice that there was no conflict of interest, and (iii) ended its relationship with Mr. Findley once it learned of the potential for a conflict.

Perkins' lack of culpability distinguishes this from the typical disqualification case, and removes it from the purview of all of the cases cited by j2.  None of j2's cases—including *Pound*, discussed below—involve the disqualification of a law firm, such as Perkins, that has acted beyond reproach and bears no responsibility for the ethical quandary giving rise to the disqualification motion.  To extend those cases to cover Perkins' situation—especially if the Court were to *automatically* disqualify Perkins—would be an unprecedented expansion of California's disqualification rules that constitutes an abuse of discretion.

**B.    The Law Does *Not* Require the Automatic Disqualification of Perkins,
An Innocent Bystander Not Affiliated With the Alleged Conflict.**

The overwhelming majority of courts considering the issue have rejected a
rule requiring a law firm to be automatically disqualified based on the conflict of
interest of a lawyer who is not part of that firm.  *See Canatella v. Krieg, Keller,
Sloan, Reilley & Roman*, No. C 11-05535, 2012 WL 847493, at *2 (N.D. Cal. Mar.
13, 2012); *Airport Car Rental Antitrust Litig.*, 470 F. Supp. 495, 501-02 (N.D. Cal.
1970); *Smith v. Whatcott*, 774 F.2d 1032, 1034 (10th Cir. 1985); *Akerly v. Red Barn
Sys.*, 551 F.2d 539, 543 (3d Cir. 1977); *Dodson v. Floyd*, 539 F. Supp. 1056, 1066
(N.D. Ga. 1981).   Rather, in such cases, the party seeking disqualification must
prove that (1) the firm had an intimate relationship and worked closely with the
conflicted lawyer *and* (2) the firm actually received confidential client information
from the conflicted lawyer.  *Canatella*, 2012 WL 847493, at *5; *see also Smith*, 774
F.2d at 1034; *Dodson*, 539 F. Supp at 1066.

Against this tide of case law, j2 cites to only one case where a non-conflicted
firm was automatically disqualified:  *Pound v. DeMera DeMera Cameron*, 135 Cal.
App. 4th 70 (2005) ("*Pound*").   However, *Pound* is not controlling because it
concerns a completely different set of facts from those presented here, as illustrated
by the following table:

| ***Pound v. DeMera DeMera Cameron*, 135 Cal. App. 4th 70 (2005)** | ***j2 vs. Open Text / EasyLink*** |
|---|---|
| The conflicted attorney (Bradley) was associated by the non-conflicted firm as counsel of record in the litigation, and was part of a trial team with the non-conflicted firm. *See* 135 Cal. App. 4th at 73. | Findley was not associated as counsel with Perkins, was not counsel of record, and was not Defendants' litigation counsel.  [Davies Decl. at ¶¶ 10-12; Carroll Decl. at ¶ 25] |
| The conflicted attorney previously met with the opposition *in* | j2 has not alleged that Findley performed any work for j2 in the *current* |

| | |
|---|---|
| *the same case* and "discussed the case in specific terms, including issues, personalities, vulnerabilities, and other topics properly described as attorney work product." 135 Cal. App. 4th at 74. | cases against Defendants (which did not begin until years after Findley left Kenyon). |
| The non-conflicted attorney that was disqualified (Jones) initiated contact with the conflicted attorney. *See* 135 Cal. App. 4th at 74. | Perkins did not initiate contact with Findley; rather, he was independently retained by Open Text without Perkins' knowledge. [Davies Decl. at ¶¶ 6, 9, 10; Carroll Decl. at ¶¶ 22-23] |
| The disqualified attorney knew that the conflicted attorney had consulted for the opposing party. 135 Cal. App. 4th at 74. | Neither Perkins nor Open Text knew that Findley had done any work relating to j2. [Carroll Decl. at ¶¶ 24, 30; Carmody Decl. at ¶ 4; Palmer Decl. ¶ 3; Lubezny Decl. ¶ 3; Caixeiro Decl. ¶ 3; Parker Decl.¶ 4] |
| The disqualified attorney *disregarded the potential conflict of interest*, and associated the conflicted attorney in the case despite having *knowledge* of the conflicted attorney's prior representation. *See* 135 Cal. App. 4th at 73-74. | When Perkins first learned of Findley's prior representation, it ceased all substantive interaction with him, as did Open Text. [Davies Decl. at ¶ 15; Parker Decl. ¶ 5; Carroll Decl. at ¶¶ 24, 30, 32, 33; Carmody Decl. at ¶¶ 4, 14; Palmer Decl. ¶ 6; Lubezny Decl. ¶ 5; Caixeiro Decl. ¶ 5] |

Nevertheless, j2 erroneously contends that California law requires the automatic disqualification of Perkins under the rule announced in *Flatt v. Superior Court of Sonoma County*, 9 Cal. 4th 275 (1994), that one attorney cannot take on an adverse engagement against a former client where there is a substantial relationship between the prior matter and the current engagement. But neither *Pound* nor any other case cited by j2 has held that *Flatt* automatically requires a law firm's disqualification where a lawyer in a different firm, unaffiliated or connected to the

conflicted lawyer, represented the opposition in a prior matter.  j2's misstatement of the law is undermined by (i) a review of the aforementioned cases rejecting a rule of automatic disqualification; (ii) the expert opinion in this case of Hon. Carlos R. Moreno, formerly of the California Supreme Court, that the question presented here is "unprecedented under California law" [Moreno Decl. ¶ 20], and that "*Pound* … is not binding California law" [*id.* ¶ 38]; and (iii) the California Court of Appeal's post-*Pound* decision in *Kirk v. First Am. Title Ins. Co.*, 183 Cal. App. 4th 776 (2010), which, as discussed below, rejected the automatic disqualification rule, criticized the *Pound* decision, and described California's vicarious disqualification law as "Not Consistent" (*id.* at 799).

*Kirk* presented a much stronger case for disqualification than here.  In *Kirk*, the conflicted attorney was part of *the same law firm* as the non-conflicted attorneys, and indisputably possessed the opposing party's confidential information. *Id.* at 789.  The trial court had ruled that disqualification of the entire firm was automatically required due to an irrebuttable presumption that the conflicted attorney had shared client confidences with the other lawyers in the firm.  *Id.* at 790.  But the trial court's decision was reversed on appeal.  *Id.* at 817.  The appellate court held "under the circumstances of this case, *automatic* vicarious disqualification is not required … instead, there is a *rebuttable* presumption that the attorney's knowledge of client confidences is imputed to the firm, which can be refuted by evidence that the law firm adequately screened the attorney from the others at the firm representing the adverse party."  *Id.* at 784 (emphasis in original). The *Kirk* court also rejected the notion, advanced here by j2, that *Flatt* controls:

> [I]t is improper to rely on *Flatt* as creating an absolute rule of vicarious disqualification.  Instead … the state of the law is that as initially expressed by the appellate courts: (1) a case-by-case analysis based on the circumstances present in, and the policy interests implicated by, the case; (2) tempered by the *Henriksen*

1  
2  
3  

> rule that vicarious disqualification should be automatic in cases of a tainted attorney <u>possessing actual confidential information</u> from a representation, who switches sides <u>in the same case</u>.

4   *Id.* at 800 (emphasis added).  Notably, *Kirk* is more recent than the *Pound* decision,

5   yet disagreed with it, particularly with respect to its failure to consider the nature of

6   the conflicted attorney's conduct, and noted that the *Pound* court did not even

7   consider whether a presumption of a taint could be rebutted by an appropriate

8   ethical wall.  *Id.* at 800 n.20.

9        Thus, as *Kirk* makes clear, automatic vicarious disqualification is not

10   required, particularly where, as here, the conflicted attorney is not a part of a non-

11   conflicted firm.   Rather—and consistent with aforementioned cases such as

12   *Canatella* and *Airport Car Rental*—the question of disqualifying one firm based on

13   the conflict of an outside lawyer requires the application of discretion and an

14   inquiry into whether confidential information was actually conveyed from the

15   conflicted attorney to the non-conflicted firm.  *See Canatella*, 2012 WL 847493, at

16   *5; *Smith*, 774 F.2d at 1034; *Dodson*, 539 F. Supp at 1066.

17   **C.**    **Should the Court Deem it Necessary to Impose a Remedy Here, Less**
18            **Draconian Remedies Than Disqualification Are Available and**
              **Appropriate.**
19  
20           **1.**    **The Court Has The Discretion to Fashion a Remedy That Is More**
                  **Suitable Than Complete Disqualification**

21        Courts are recognizing with increased frequency that disqualification is not

22   the best remedy in all cases of ethical misconduct.  Indeed, this Court has stated:

23  
24  
25  
26  
27  
28  

> Courts have begun to register growing dissatisfaction with the use of disqualification as a remedy for ethical misconduct.  It has been recognized that ... judicial entry into the field of lawyer ethics through the medium of motions to disqualify has not been a salutary development.  In part for this reason, it has been said that courts should not apply the ethical rules in a way that is mechanical, didactic, or inflexible.   Courts have been admonished to take a 'functional' approach, pursuant to which

1   disqualifications are evaluated with a keen sense of practicality
2   ....”

3   *UMG Recordings, Inc. v. MySpace, Inc.*, 526 F. Supp. 2d 1046, 1062 (C.D. Cal.
4   2007), *citing* Richard E. Flamm, *Lawyer Disqualification: Conflicts of Interest and*
5   *Other Bases* § 23.1, at 443-45 (Banks and Jordan, 2003).

6   The same power that allows a trial court to control its administrative affairs
7   “also entitles the Court to deny a disqualification motion on condition that the
8   attorney or firm … comply with certain limitations.   This is because a court’s
9   authority to disqualify an attorney or craft appropriate relief to punish or deter
10  attorney misconduct derives from the court’s equitable powers.” *UMG Recordings*,
11  526 F. Supp. 2d at 1062, *citing* Geoffrey C. Hazard, Jr. & W. William Hodes, *The*
12  *Law of Lawyering: A Handbook on the Model Rules of Professional Conduct* § 4.7,
13  at 4-22 (Aspen 3d ed. 2007).

14  Applying these principles, “California courts have found that sanctions less
15  severe than disqualification … may be appropriate.” *UMG Recordings, Inc.*, 526
16  F.Supp.2d at 1063, *citing Neal v. Health Net, Inc.,* 100 Cal. App. 4th 831, 844
17  (2002) (reversing trial court’s disqualification order and stating that “[r]ather than
18  disqualification of counsel, other sanctions can suffice.   Client confidences can be
19  protected from unwarranted public disclosure by less drastic measures such as:
20  protective orders, limiting the admission of evidence; in camera proceedings; the
21  use of sealed records; payment of attorney fees and costs; and disciplinary sanctions
22  through the State Bar of California in appropriate circumstances”) (citation
23  omitted); *Gregori v. Bank of Am.,* 207 Cal. App. 3d 291, 308-09 (1989) (affirming
24  order denying disqualification and stating that “[T]he purpose of a disqualification
25  order must be prophylactic, not punitive ... [d]isqualification is inappropriate,
26  however, simply to punish a dereliction that will likely have no substantial
27  continuing effect on future judicial proceedings ... [t]here are other sanctions which

28

in that situation must suffice, including imposition of attorneys' fees and costs incurred by the other side as a result of the misconduct ….") (citation omitted).

Consequently, if the Court decides that it must take measures to address any harm that may have been caused by Mr. Findley, it should utilize its discretion to fashion a more appropriate and proportional remedy than disqualifying Perkins. The Court could issue an order—for example, the imposition of an ethical wall— that would give it assurance that j2's confidentiality is being preserved, while avoiding the extreme and unnecessary prejudice to Open Text and an unnecessary expansion of California law to disqualify an innocent law firm not affiliated with the allegedly conflicted attorney.

In deciding what remedy is appropriate under the circumstances, the Court should take the following considerations into account.

### 2.      Consideration #1:  Nothing In The Record on this Motion Supports the Drastic Remedy of Disqualifying Perkins.

Even j2, the party bringing this Motion, has conceded that Perkins has done nothing wrong.  [*See* Oct. 24, 2012 Hr'g Tr. at 23-24, 36]  Defendants have called the Court's attention to evidence weighing against the disqualification of Perkins, including:

- the undisputed evidence that Findley *never* communicated any of j2's confidential information to Perkins [*see* Carroll Decl. at ¶ 26; Carmody Decl. at ¶ 7; Palmer Decl. at ¶ 4; Lubezny Decl. at ¶ 4; Caixeiro Decl at ¶ 4];

- the lack of evidence that Findley, then a junior associate at a large law firm, actually received any j2 confidential information[2];

---

[2] The only information mentioned by j2 that Findley received is a July 2005 document referencing Dr. Farber, which it has not produced even in redacted form. Although the content and context of that document is unknown to Defendants and the Court, it could not have contained any relevant confidential information.  That is because the relevant facts about Farber's use of j2's early product are simple and straightforward, and were all published on the Internet and produced by j2 long before Findley became involved with Open Text.

- the lack of evidence that Findley recalled any of j2's confidential information in 2011 and 2012, over six years after he left Kenyon;

- the lack of competent evidence concerning the nature of the work Findley performed for j2 while at Kenyon, and the evidence that any such work involved matters different from this litigation;

- the undisputed fact that Findley provided services for Open Text—not Perkins [Davies Decl. at ¶¶ 10-12; Carroll Decl. at ¶ 25];

- the undisputed fact that Perkins was unaware of Findley's prior representation of j2 [Carroll Decl. at ¶¶ 24, 30; Carmody Decl. at ¶ 4; Palmer Decl. ¶ 3; Lubezny Decl. ¶ 3; Caixeiro Decl. ¶ 3];

- the undisputed fact that, upon learning of Findley's prior representation of j2, Perkins immediately ceased substantive contact with Findley (as did Open Text) [*see* Davies Decl. at ¶ 15; Parker Decl. ¶ 5; Carroll Decl. at ¶¶ 24, 30, 32, 33; Carmody Decl. at ¶¶ 4, 14; Palmer Decl. ¶ 6; Lubezny Decl. ¶ 5; Caixeiro Decl. ¶ 5].

Moreover, the record that j2 has proffered is filled with inconsistencies that should be scrutinized by the Court.[3]   For example, the Bernstein and Sacks declarations appear inaccurate, and suggest that j2 has resorted to exaggerating Mr. Findley's knowledge and role at Kenyon in order to obtain a tactical advantage in this motion.   For example, j2 did not identify Mr. Findley in response to Open Text's interrogatory asking for the names of everyone, including patent attorneys, who had performed work relating to the patents at issue.   [*See* Carmody Decl. ¶ 6,

---

[3] j2 must support its motion with competent evidence. *Hartford Cas. Ins. Co. v. Am. Dairy and Food Consulting Lab., Inc.*, No. 1:09-cv-0914, 2010 WL 2510999, at *2 (E.D. Cal. June 17, 2010).   Instead, j2 has presented the Court with hearsay, unfounded declarations and conjecture.   For example, the declarations of Frank Bernstein and Robert Sacks are inadmissible because (i) they contain hearsay regarding the content of documents (such as billing records and e-mails) that are not before the court, and (ii) the declarants lack personal knowledge regarding the work performed by Findley while he was at Kenyon.   *See* Evidentiary Objections to Declaration of Frank L. Bernstein, Oct. 29, 2012; Evidentiary Objections to Declaration of Robert A. Sacks, Oct. 29, 2012.

Exh. B (Response to Interrogatory No. 7)]  Furthermore, Sacks' claim that Findley was a party to over 300 relevant, privileged e-mails [Sacks Decl. at ¶ 15] is directly contradicted by j2's own privilege log, which contains fewer than 25 e-mails sent or received by Findley.[4]  Sacks' unsupported claim should therefore be disregarded. Moreover, j2 has waived privilege for any e-mails sent or received by Findley that j2 now contends are relevant to this litigation but that are not listed on j2's privilege log and should produce them before the Court decides the instant motion.  *See Columbia Pictures Indus., Inc. v. Bunnell*, No. CV 06-1093 FMC(JCX), 2007 WL 4916963, at *2 (C.D. Cal. Aug. 10, 2007) (ordering production of allegedly privileged documents that did not appear on privilege log); *Vieste, LLC v. Hill Redwood Dev.*, No. C-09-040240JSW (DMR), 2010 WL 4807058, at *9 (N.D. Cal. Nov. 18, 2010) (it is within the Court's discretion to deem a waiver of privilege for documents not listed on initial privilege log).

Under the circumstances and the current record, including the lack of testimony—*in camera* or otherwise—from Mr. Findley regarding his conduct, current knowledge of j2's confidential information, and state of mind, there is a lack of competent evidence to justify the severe sanction of disqualification.[5]

### 3.     Consideration #2: Open Text Would Be Severely Prejudiced If Perkins Were to Be Disqualified.

Open Text bears no responsibility or culpability for Mr. Findley's conduct or the alleged conflict.  Yet, it stands to suffer tremendous prejudice if j2's motion is granted.  The degree of prejudice that Defendants would sustain if Perkins were

---

[4] j2's privilege log is attached as Exhibit A to the Supplemental Declaration of Matthew F. Carmody in support of Defendant's Opposition to Motion to Disqualify Counsel Perkins Coie LLP and to Compel Discovery, filed herewith.  It was inadvertently omitted as an exhibit in Matthew Carmody's initial declaration (only the cover letter was submitted).

[5] Although the Court has expressed concern that it may not be in the best position to conduct an *in camera* examination of Mr. Findley, the parties could submit relevant questions to the Court to help steer the examination into relevant matters.

1   disqualified at this late stage cannot be overstated.  These cases involve highly
2   complex technologies, multiple patents, numerous accused devices, differing
3   theories of infringement, several invalidating prior art references, scores of
4   witnesses and an extensive record.  Moreover, discovery in these cases has involved
5   the production of millions of pages of documents, source code for multiple software
6   programs, scores of party and non-party depositions, and dozens of written
7   discovery requests and responses.  It would take new counsel at least several
8   months to review the record and become somewhat familiar with this case.[6]

9           Even so, the close of fact discovery would be just a few weeks away (it is set
10  for December 21, 2012), with critical j2 depositions—including j2's 30(b)(6)
11  deposition on technological issues and depositions of the patents' inventors and j2's
12  executives with knowledge regarding damages—yet to occur.[7]   Expert reports
13  would be due four weeks thereafter (initial reports are currently due on January 25,
14  2013), and summary judgment briefs would be due a few months later (moving
15  papers are currently due on May 3, 2013).[8]  Open Text would be disadvantaged
16  throughout this critical phase of the litigation, as its new counsel would be less
17  familiar with the case and less knowledgeable than j2's longstanding attorneys.  j2
18  will likely exploit this asymmetry by seeking more third-party depositions of Open
19  Text's customers and re-sellers once the stay is lifted, a tactic that would (i) tie up
20  Defendants' new attorneys; and (ii) continue to disrupt Open Text's business
21  relationships.[9]

22  _____

23        [6] Presumably, the Court will stay the proceedings for new counsel to learn the case.

24        [7] Notably, the deposition of j2's 30(b)(6) witness on technical issues has been
25  held in abeyance due to j2's failure to produce an adequately prepared deponent when Open Text first attempted to take the deposition.

26        [8] This schedule applies to Case Nos. 09-CV-4150-DDP and 09-CV-4189-DDP. Case No. 11-CV-4239-DDP is on a different schedule.

27        [9] j2 currently  has deposed less than one-half of the 70 Open Text customers
28  and re-sellers that it has subpoenaed.  Although j2 presumably has ceased taking the third-party depositions due to the lack of helpful evidence resulting from those

1    The uneven playing field would be exacerbated by the fact that j2 will use the

2    stay to perfect its expert positions, organize its summary judgment evidence, and

3    draft its summary judgment papers—all while Defendants' new attorneys will be

4    reviewing the record.

5    Thus, the net effect of disqualifying Perkins would be to create a situation

6    where j2 has an obvious informational and tactical advantage over Defendants for

7    the remainder of the litigation.  This is because of the hardship Defendants' new

8    attorneys will face in litigating this case against j2's long-time attorneys, who will

9    have far more knowledge and experience concerning the issues in this case.

10   Beyond the substantive prejudice to Defendants, disqualifying Perkins would

11   result in substantial pecuniary prejudice to Open Text.  Open Text has invested

12   more than $5 million in Timothy Carroll and his team, the vast majority of which

13   will be wasted if their institutional knowledge is lost to Open Text.  That loss will

14   be compounded by the fact that it will likely cost Defendants additional millions of

15   dollars in fees to attempt to bring a new firm and discovery systems up to speed.

16   Thus, in the short term, the monetary impact to Defendants of disqualifying Perkins

17   would be many millions of dollars.

18   Finally, Perkins and Defendants will suffer unfair and unwarranted damage

19   to their reputations if j2's motion is granted.  There is no dispute that Perkins has

20   done nothing wrong, yet its attorneys will suffer the indignity and reputational harm

21   of being disqualified in prominent and very public patent cases.  An attorney's

22   reputation for honesty and ethical practice is vital, and there is no telling the

23   detrimental impact that disqualification will have on the Perkins attorneys' future

24   dealings with their clients and other courts.  The same is true of Open Text's in-

25   house counsel, who have been unfairly disparaged and painted as insidious by j2

26   despite having done nothing wrong.

27

28   depositions, it is foreseeable that j2 will have renewed vigor to take third-party depositions after a presumed stay would end.

-14-

**4.      Consideration #3: Open Text Has No Culpability, and Has Acted
Reasonably and Ethically.**

In an effort to justify the draconian and highly prejudicial remedy of
disqualification, j2 makes the baseless and speculative accusation that Open Text
might have received j2's confidential information from Mr. Findley despite the fact
that two of its legal officers have stated in declarations that no such thing ever
happened.  Thus, j2 is using innuendo and conjecture to suggest that Open Text has
somehow acted improperly.  Nothing could be farther from the truth.

Open Text is an innocent party.  Its Canadian in-house attorneys, who are
unfamiliar with California's ethics rules, justifiably relied on Crowell & Moring to
identify any potential conflict relating to Mr. Findley, and they were not notified by
Crowell & Moring that (i) Mr. Findley had previously done work for j2, or (ii) that
such work created the possibility of a conflict of interests.  [Davies Decl. ¶ 9;
Parker Decl. ¶ 4].  To the contrary, Mr. Findley affirmatively represented to Open
Text that although he had once performed a public prior art search relating to an
unidentified Bobo patent, Crowell & Moring had determined that there was *no*
conflict of interest.  [Parker Decl. ¶ 4]  Open Text had no reason to suspect that
Crowell & Moring's conflicts procedures were deficient in any way, or that Mr.
Findley had failed to disclose a potential conflict of interest to Open Text.

Notably, the mere fact that Mr. Findley stated to Mr. Parker that he had once
performed a prior art search for a Bobo patent did not cause Open Text to doubt
Crowell's conflicts analysis.  There are many Bobo patents that j2 has no interest in
and bear no relationship to this dispute.  j2 has acknowledged as much when it was
in its own interests to do so.  For example, in 2011, j2 opposed an effort to create a
multi-district litigation covering all litigations regarding the Bobo patents by
emphasizing the differences between the one Bobo patent at issue in this case and

the multiple Bobo patents at issue in other cases.[10]   Similarly, Mr. Findley's mention of a Bobo patent—without providing context such as which Bobo patent, or the party he was representing when he did work relating to the Bobo patent—could not reasonably have raised suspicion that Crowell & Moring's conflicts assessment was unreliable.

In sum, Open Text is a responsible, careful, and ethical company.  It is undeserving of the punitive and highly prejudicial measures that j2 is asking the Court to impose.

### 5.   Consideration #4:  Disqualifying Perkins Would Not Result in Greater Protection of j2's Confidences.

There appears to be no legitimate dispute that Mr. Findley never communicated j2's confidential information to the attorneys at Perkins.  Multiple attorneys at Perkins—all of whom are officers of the Court—have submitted declarations stating that they did not receive j2's confidential information from Mr. Findley.  Carroll Decl. at ¶ 26; Carmody Decl. at ¶ 7; Palmer Decl. at ¶ 4; Lubezny Decl. at ¶4; Caixeiro Decl at ¶ 4.  j2 has not offered any contradictory evidence. Indeed, the Court has previously (and rightfully) expressed its willingness to accept the Perkins' attorneys' representations on this point.  *See* Oct. 24, 2012 Hr'g Tr. at 24 ("I certainly accept your representations.").

The Court has, however, expressed concern that j2's confidential information may have been inadvertently passed from Mr. Findley to Open Text.  But, as the Court previously observed, if that had occurred (it did not) then "the rabbit [would be] out of the hat," and there would be no way that Open Text could unlearn that information.  [*See* Oct. 24, 2012 Hr'g Tr. at 36-38]  Replacing Perkins with another law firm would not remediate this hypothetical problem.  The new attorneys would

---

[10]   *See  In re Bobo Patent Litig.*, MDL No. 2297, Dkt. No. 74 [j2 Global Communications, Inc. and Advanced Messaging Technologies, Inc.'s Opposition to Facebook, Inc.'s and LinkedIn Corp.'s Motion for Transfer and Coordination of Pretrial Proceedings Under 28 U.S.C. § 1407] at 7-8.

1  be no more or less likely than Perkins to be "tainted" by whatever information Mr.
2  Findley may have.

3      If the goal here is to protect j2's client confidences, then any remedy should
4  be focused on the conflicted party and those with whom the conflicted party was
5  affiliated.  Open Text and Perkins already have taken multiple steps that eliminate
6  the likelihood (however remote) that j2's confidential information could be
7  disclosed.   These include ending contact with Mr. Findley (who has ceased
8  providing services to Open Text), and removing King & Spalding as EasyLink's
9  counsel of record.  But disqualifying Perkins would not advance any legitimate goal
10  of j2, or of California's ethics laws.

11      **6.      Consideration #5:  Disqualifying An Innocent, Unaffiliated Firm**
12          **That Committed No Ethical Misconduct Is Unjust and Would**
13          **Create Bad Law and Public Policy.**

14      If the Court takes the unprecedented step of disqualifying Perkins, it would
15  create undesirable precedent and bad policy.  As described above, Open Text has
16  not acted improperly in any respect and its reliance on Crowell & Moring to
17  perform a thorough and appropriate conflict check was reasonable, appropriate and
18  a common practice.  Yet, disqualifying Perkins under these circumstances would be
19  tantamount to establishing a rule that a client cannot rely on its attorneys (here,
20  Crowell Moring) to run a competent and thorough conflict check.  Rather, *the client*
21  itself would be charged with responsibility for ensuring that all of the individual
22  lawyers working on its matters are not conflicted, or run the risk of losing the
23  assistance of even its in-house or separate outside counsel.  That is something that
24  clients (particularly foreign-based companies, such as Open Text) are not equipped
25  to do.

26      Disqualifying Perkins under these circumstances would also dissuade clients
27  from promoting coordination among law firms handling different aspects of the
28

client's business (e.g., litigation attorneys would be discouraged from coordinating with tax counsel from another firm), and diversifying the law firms that represent them.  Unless a client isolates each of its law firms there would be a potential for spreading a "taint."  Moreover, if j2's argument is accepted, even isolating the law firms would be inadequate, because all attorneys representing a client could be vicariously disqualified if there is a risk that one lawyer, at one law firm, may have inadvertently disclosed confidential information to the client (regardless of whether such information was actually communicated to the other law firms).  The resulting chilling effect on attorney-client relationships would be far-reaching and immeasurable.

In addition, from the law firms' perspective, automatically disqualifying Perkins based on defects in Crowell's conflict procedures would create a requirement that law firms must perform conflict checks on its clients' other attorneys—despite the fact that it would lack access to much of the information needed to perform such a conflict check.  Otherwise, there would be no reasonable means for law firms to prevent being unknowingly disqualified through no fault of their own, which is the possibility Perkins faces here.  As a result, lawyers and firms representing the same client would face pressure to exchange all the information underlying their respective conflicts checks, since they could not rely on each other's conflict procedures.  Without independently vetting another attorney or firm's conflict checks, any law firm would be susceptible to automatic disqualification based on the undisclosed conflict of an unaffiliated attorney in a different matter.  That would place an increased and unfair burden on attorneys and their firms due to the increased disclosures that would be required, while jeopardizing untold numbers of attorney-client relationships.

Furthermore, no legitimate goal would be achieved by disqualifying an innocent law firm based on the unknown conflict of a lawyer at another firm.  While it is understandable why the law would require disqualification in cases

1   where a law firm has disregarded or violated its ethical obligations, there is no

2   reason why the law should be as severe in cases where the law firm (Perkins) has

3   acted properly and there is no evidence of confidential information having passed.

4   The punishment of ethical lawyers is not an objective of the disqualification laws.

5       These policy considerations underscore why j2 bears the burden on this

6   motion, and why the Court should not automatically disqualify Perkins given the

7   absence of competent evidence and controlling case law.

8       **7.   Consideration #6:  Numerous Less Severe, More Targeted**
9       **Remedies are Available to the Court in Order to Protect j2's**
10      **Client Confidences.**

11      As discussed above, disqualifying Perkins is a severe remedy, and other, less

12  draconian remedies are available to the Court.  As the aforementioned *Kirk*, *UMG*

13  *Recordings*, *Gregori* and *Neal* cases illustrate, California is becoming increasingly

14  receptive to means such as ethical screens and protective orders to remediate

15  conflict issues.  Indeed, the stringent interpretation of California disqualification

16  law, advanced here by j2, is antiquated and does not reflect the modern reality

17  wherein lawyers frequently change law firms and can have highly discrete and

18  compartmentalized roles in any given matter.  *See* Matthew Lenhardt, *Ethical*

19  *Screens in the Modern Age Ethics Review*, 50 Santa Clara L. Rev. 1345, 1363, 1366

20  (2010) (observing a "slow and steady shift in California towards accepting

21  screening in the private sector," and opining that this development "seems to be a

22  good idea because lateral employment changes are more prevalent in the legal

23  profession and attorneys are not restricted to strict state boundaries in their

24  practice").

25      Nothing in the ethics canons requires innocent parties such as Perkins and

26  Open Text to endure the overwhelming prejudice that would result from the

27  disqualification of Perkins.  If Clyde Findley and Crowell have created an issue

28

here, there are narrower and more reasonable tools available to this court to address it.   Disqualification of Perkins is the harshest and most prejudicial option, and would amount to using a sword when a scalpel will suffice.

### III.   Conclusion

Perkins and Open Text take their ethical responsibilities very seriously.   If any attorney at Perkins had received j2's confidential information, or if the case law required its withdrawal under the circumstances, then Perkins would withdraw.   But this situation compels no such result.   Perkins and Open Text have done nothing wrong, and have been an "open book" in response to j2's disqualification motion.   The misconduct of Crowell & Moring and Clyde Findley, however egregious in the eyes of the Court, cannot be ascribed to Open Text or Perkins.   The innocent parties should not be punished for the failures of another.   Automatically disqualifying Perkins would be unjust and would result in severe and undeserved financial and other prejudice against Open Text.   Such a result would be grossly out of proportion with the alleged harm to j2, and in the process, would accomplish little towards protecting j2's client confidences.

1

2   Dated:  November 15, 2012                By: */s/ David J. Palmer*

3                                            Grant Kinsel (Bar No. 172407)
4                                            gkinsel@perkinscoie.com
                                             Gigi C. Hoang (Bar No. 241182)
5                                            ghoang@perkinscoie.com
                                             PERKINS COIE LLP
6                                            1888 Century Park East, Suite 1700
7                                            Los Angeles, CA 90067
                                             Telephone:  310.788.9900
8                                            Facsimile:  310.788.3399

9                                            Timothy J. Carroll *(Pro Hac Vice)*
10                                           tcarroll@perkinscoie.com
                                             Matthew F. Carmody *(Pro Hac Vice)*
11                                           mcarmody@perkinscoie.com
                                             PERKINS COIE LLP
12                                           131 South Dearborn Street, Suite 1700
                                             Chicago, IL 60603
13                                           Telephone:  312.324.8400
                                             Facsimile:  312.324.9400
14

15                                           David J. Palmer (Bar No. 217901)
                                             dpalmer@perkinscoie.com
16                                           PERKINS COIE LLP
                                             2901 N. Central Avenue, Suite 2000
17                                           Phoenix, AZ  85012
                                             Telephone:  602.351.8000
18                                           Facsimile:  602.648.7036

19
                                             Attorneys for Defendants/
20                                           Counterclaimants
                                             CAPTARIS, INC., and OPEN TEXT
21                                           CORPORATION

22
                                             Edith R. Matthai (Bar No. 66730)
23                                           ematthai@romalaw.com
                                             ROBIE & MATTHAI, APC
24                                           500 S. Grand Ave, Ste 1500
                                             Los Angeles, CA 90071-2609
25                                           Telephone: 213.706-8000
                                             Facsimile: 213.706-8000
26
                                             Attorneys for Non-Party Perkins Coie
27                                           LLP

28