Brad D. Brian (State Bar No. 079001)
Stuart N. Senator (State Bar No. 148009)
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
Los Angeles, CA  90071-1560
Telephone:  (213) 683-9100
Facsimile:   (213) 687-3702
Brad.Brian@mto.com
Stuart.Senator@mto.com

Special Counsel for Defendants / Counterclaimants
CAPTARIS, INC. AND OPEN TEXT
CORPORATION

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J2 GLOBAL COMMUNICATIONS INC. and ADVANCED MESSAGING TECHNOLOGIES, INC.<br><br>Plaintiffs,<br><br>vs.<br><br>CAPTARIS, INC. and OPEN TEXT CORPORATION,<br><br>Defendants. | CASE NO.  CV 09-4150-DDP (AJWx)<br><br>**[1]  DEFENDANTS' NOTICE OF MOTION AND MOTION FOR CERTIFICATION OF DECEMBER 19, 2012 ORDER FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. §§ 1292(b) AND (c)(1) AND FOR STAY OF PROCEEDINGS PENDING APPELLATE REVIEW**<br><br>**[2]  SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>DATE:      February 11, 2013<br>TIME:      10:00 a.m.<br>CTRM:    3<br><br>**Hon. Dean D. Pregerson** |
| AND RELATED CROSS-ACTIONS | |

1    TO THE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:

2    PLEASE TAKE NOTICE THAT, on February 11, 2013 at 10:00 a.m., or as

3  soon thereafter as the matter may be heard, in the United States District Court,

4  Central District of California, located at 312 North Spring Street, Los Angeles,

5  California, Defendants Open Text Corporation ("Open Text") and Captaris, Inc.

6  (collectively "Defendants") will, and hereby do, move this Court to certify its

7  December 19, 2012 Order (ECF No. 406) for interlocutory appeal to the United

8  States Court of Appeals for the Federal Circuit pursuant to 28 U.S.C. §§ 1292(b)

9  and (c)(1).  Because a petition seeking relief from an attorney disqualification order

10  does not automatically stay proceedings in this Court, Defendants also move to stay

11  proceedings in this Court while the Federal Circuit considers Defendants'

12  interlocutory appeal (or any petition for writ of mandamus if an interlocutory

13  appeal does not go forward).

14    This motion is made following the conference of counsel pursuant to L.R. 7-3

15  which took place on January 11, 2013.

16    This Motion is supported by the Memorandum of Points and Authorities

17  attached hereto and such additional argument and evidence as may be presented in

18  Reply and at any hearing on the Motion.

19  DATED:  January 14, 2013          MUNGER, TOLLES & OLSON LLP

20

21

22                    By:    /s/ Stuart N. Senator
23                              Stuart N. Senator

24                    Special Counsel for Defendants /
25                    Counterclaimants Captaris, Inc. and Open
                      Text Corporation
26

27

28

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ............................................................................ 1

II.  BACKGROUND .............................................................................. 3

III. GOVERNING LAW ......................................................................... 4

IV.  ARGUMENT .................................................................................. 6

    A.   The Court's Disqualification of Perkins Coie Warrants Interlocutory Review .................................................................. 6

    B.   The Court's Disqualifying Defendants' in-House Attorneys and Prohibiting Successor Counsel From Communicating With Them And Others Also Warrant Interlocutory Review ..................... 11

    C.   An Immediate Appeal May Materially Advance The Ultimate Termination Of The Litigation ............................................. 16

    D.   The Court Should Stay This Case Pending Review ..................... 17

V.   CONCLUSION .............................................................................. 20

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Airport Car Rental Antitrust Litig.*,
   470 F. Supp. 495, 501-02 (N.D. Cal. 1970) ........................................................ 1

*American Can Company v. Citrus feed Co.*,
   436 F.2d 1125 (5th Cir. 1971) ........................................................................... 14

*Asis Internet Serv. v. Active Response Grp.*,
   No. C07 6211 TEH, 2008 WL 4279695 (N.D. Cal. Sept. 16, 2008) ................. 18

*Ass'n of Irritated Residents v. Fred Schakel Dairy*,
   634 F. Supp. 2d 1081 (E.D. Cal. 2008) ....................................................... 17, 18

*Atasi Corp. v. Seagate Technology*,
   847 F.2d 826 (Fed. Cir. 1988) ............................................................................. 5

*Canatella v. Krieg, Keller, Sloan, Reilley & Roman*,
   No. C 11-05535, 2012 WL 847493 (N.D. Cal. Mar. 13, 2012) ........................... 1

*Christensen v. U.S. Dist. Court for Cent. Dist. of California*,
   844 F.2d 694 (9th Cir. 1988) ............................................................................... 8

*Cole v. U.S. Dist. Court for Dist. of Idaho*,
   366 F.3d 813 (9th Cir. 2004) ............................................................................... 8

*Couch v. Telescope Inc.*,
   611 F.3d 629 (9th Cir. 2010) ............................................................................... 9

*Dalie v. Pulte Home Corp.*,
   636 F.Supp.2d 1025 (E.D. Cal. 2009) ................................................................. 7

*Davis Moreno Const., Inc. v. Frontier Steel Bldg. Corp.*,
   2011 WL 347127 (E.D. Cal. Feb. 2, 2011) .......................................................... 9

*Deutsche Bank Nat. Trust Co. v. F.D.I.C.*,
   854 F.Supp.2d 756 (C.D. Cal. 2011) (Feess, J.)............................................... 7, 9

*Dieter v. Regents of the Univ. of Cal.*,
   963 F. Supp. 908 (E.D. Cal. 1997) ............................................................... 13, 14

1

2

# TABLE OF AUTHORITIES
### (continued)

Page

3

4

*Filtrol Corp. v. Kelleher,*
    467 F.2d 242 (9th Cir. 1972) ............................................................... 18

5

6

*In re Calif. Title Ins. Antitrust Litig.,*
    No. 08-01341 JSW, 2010 WL 785798 (N.D. Cal. Mar. 3, 2010) ...................... 18

7

8

*In re Cement Antitrust Litig.,*
    673 F.2d 1020 (9th Cir. 1982) ................................................................ 7

9

*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.,*
    658 F.2d 1355 (9th Cir. 1981) .............................................................. 17

10

11

*In re Shared Memory Graphics,*
    659 F.3d 1336 (Fed. Cir. 2011) ............................................................. 19

12

13

*Kemin Foods, L.C. v. Pigmentos Vegetales del Centro S.A. de C.V.,*
    384 F.Supp.2d 1334 (S.D. Iowa 2005) ..................................................... 18

14

15

*Kennecott Corp. v. U.S. Dist. Court for South. Dist. of Cal.,*
    873 F.2d 1292 (9th Cir. 1989) ................................................................ 5

16

17

*Kuehner v. Dickinson & Co.,*
    84 F.3d 316 (9th Cir. 1996) ................................................................... 7

18

19

*Lakeland Vill. Homeowners Ass'n v. Great Am. Ins. Group,*
    727 F. Supp. 2d 887 (E.D. Cal. 2010) ..................................................... 18

20

*Mediterranean Enterprises, Inc., v. Ssangyong Corp.,*
    708 F.2d 1458 (9th Cir. 1983) .............................................................. 18

21

22

*Mohawk Indus., Inc. v. Carpenter,*
    130 S. Ct. 599 (2009) .................................................................... 6, 7, 8

23

24

*Reese v. BP Exploration (Alaska) Inc.,*
    643 F.3d 681 (9th Cir. 2011) ............................................................. 9, 16

25

26

*Richardson-Merrell, Inc. v. Koller,*
    472 U.S. 424 (1985) ........................................................................ 6, 7

27

28

*Rivers v. Walt Disney Co.,*
    980 F. Supp. 1358 (C.D. Cal. 1997) ....................................................... 19

# TABLE OF AUTHORITIES
## (continued)

**Page**

*State Contracting & Eng'g Corp. v. State of Fla.*,
   258 F.3d 1329 (Fed. Cir. 2001) ...................................................................... 5

*Sun Studs, Inc. v. Applied Theory Associates, Inc.*,
   772 F.2d 1557 (Fed Cir. 1985) ...................................................................... 5

*Tawsaura Grp., LLC v. Threshold Enters., Ltd.*,
   No. SA CV 12-01364 SJO ............................................................................ 11

*Telectronics Proprietary, Ltd. v. Medtronic, Inc.*,
   836 F.2d 1332 (Fed. Cir. 1988) ................................................................. 5, 7

*Univ. of Va. Patent Found. v. Gen. Elec. Co.*,
   792 F. Supp. 2d 904 (W.D. Va. 2011) ........................................................... 6

*Zeneca Ltd. v. Mylan Pharms., Inc.*,
   968 F. Supp. 268 (W.D. Pa. 1997) ................................................................. 9

**STATE CASES**

*City of Santa Barbara v. Superior Court*,
   122 Cal. App. 4th 17 (2004) .......................................................................... 8

*Frazier v. Superior Court*,
   97 Cal. App. 4th 23 (2002) .......................................................................... 14

*In re SAExploration, Inc.*,
   2012 WL 6017717 (Tex. Ct. App.-Houston Dec. 4, 2012) ..................... 1, 11, 15

*Kirk v. First Am. Title Ins. Co.*,
   183 Cal. App. 4th 776 (2010) ............................................................ 10, 14, 15

*Pound v. DeMera DeMera Cameron*,
   135 Cal. App. 4th 70 (2005) .......................................................................... 1

**STATUTES AND RULES**

28 U.S.C. § 1292 ................................................................................... passim

28 U.S.C. § 1295 ........................................................................................... 5

Rules of Professional Conduct, Rule 1-100 ............................................... 16

DEFTS' MOTION FOR CERTIFICATION FOR
INTERLOCUTORY APPEAL AND STAY
CASE NOS.: CV-09-4150, 09-4189, 11-4239  DDP (AJWx)

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This Court's December 19, 2012 Order (ECF No. 406; "Order") disqualifying Perkins Coie, counsel of record to Defendants in these related cases ("Defendants"), prohibiting continuing participation by Defendants' in-house counsel, and severely limiting communications with successor counsel, should be certified to the Federal Circuit for interlocutory review under 28 U.S.C. §§ 1292(b) and (c)(1) because it involves controlling questions of law on which there are substantial grounds for a difference of opinion and an immediate appeal may materially advance the ultimate termination of this litigation.

There are substantial grounds for difference of opinion regarding the legal standard by which the Court was guided.  The Court's Order itself acknowledges that the case law has employed different tests, and that the factual scenario presented here differs from the paradigms of previous cases.  *See* Order at 18-20 (contrasting cases holding that automatic disqualification was appropriate, such as *Pound v. DeMera DeMera Cameron*, 135 Cal. App. 4th 70 (2005), with cases that did not apply an automatic disqualification rule, such as *Canatella v. Krieg, Keller, Sloan, Reilley & Roman*, No. C 11-05535, 2012 WL 847493, at *2 (N.D. Cal. Mar. 13, 2012) and *Airport Car Rental Antitrust Litig.*, 470 F. Supp. 495, 501-02 (N.D. Cal. 1979)).  Moreover, neither the Court nor j2 has identified any legal authority for the scope of the prohibitions on Defendants' in house counsel and employees, who have not been shown to practice law in California and who have not appeared before this Court.  Notably, since the close of briefing on the disqualification motion, a Texas appellate court has held (under Texas law) that the presumption of sharing of the former client's confidential information is rebuttable with respect to in-house counsel.  *In re SAExploration, Inc.*, 2012 WL 6017717, at *3-4 (Tex. Ct. App.-Houston Dec. 4, 2012).

Defendants do not attempt to show here, and need not show here, that the

DEFTS' MOTION FOR CERTIFICATION FOR
INTERLOCUTORY APPEAL AND STAY
CASE NOS.: CV-09-4150, 09-4189, 11-4239  DDP (AJWx)

1    Court was wrong.  This is not a motion for reconsideration.  By the same token, it

2    cannot reasonably be disputed that there are substantial grounds for difference of

3    opinion about the legal standards that apply and that the Order may have a

4    particularly injurious effect on Defendants' ability to litigate these cases.

5    Especially with a disqualification determination as far reaching as this Court's

6    Order which (i) covers both outside and in-house counsel, (ii) prohibits any

7    participation by Open Text's Chief Legal Officer in strategic and other decisions

8    regarding these significant litigations and (iii) prohibits successor counsel's

9    communicating with lawyers and non-lawyers who have had any communication

10   with the "Attorney" "about any matter related to this action," no matter how trivial,

11   interlocutory review is the most sensible course of action.

12        The outside lawyers that the Court has disqualified have worked on these

13   cases for almost five years.  Their knowledge is irreplaceable.  And the effect of the

14   Order's prohibiting further involvement by Defendants' in-house counsel who have

15   had communications with the Attorney is that all of the lawyers who have been

16   most involved in these cases no longer may substantively participate.  The overall

17   result is that Defendants' ability to defend these cases has been irreparably crippled.

18   The breadth and devastating effects of the Court's Order cannot be overstated.  As

19   the Supreme Court has recognized, interlocutory appeals are particularly

20   appropriate for seriously injurious rulings involving novel legal issues where, as

21   here, post-judgment appellate review would be a hollow remedy.

22        An interlocutory appeal also may materially advance the ultimate termination

23   of these cases.  Because these cases involve many patents, accused products and

24   witnesses, plus millions of pages of documents and transcripts, requiring a

25   wholesale change of defense counsel at this late juncture would necessarily delay

26   the progress of these cases as much as or more than interlocutory appeal would.

27   Moreover, because disqualification orders are also challengeable by petition for

28   writ of mandamus, the issue is not whether there will be interlocutory review of the

DEFTS' MOTION FOR CERTIFICATION FOR
INTERLOCUTORY APPEAL AND STAY
CASE NOS.: CV-09-4150, 09-4189, 11-4239  DDP (AJWx)

1  Order but instead under what procedure.

2    To avoid irreparable injury, Defendants further request that the Court stay the

3  litigation pending Federal Circuit review of the Order.

4  

**II.   BACKGROUND**

5    As set forth in the Order, the basis for the Court's "Remedy" was its

6  interpretation of California law as irrebuttably presuming that confidential j2

7  information had been obtained by anyone who had any direct or indirect contact

8  with the Attorney about this litigation, rather than on factual findings with respect

9  to whether there was actual sharing of confidential j2 information.  The Court

10  refused to accept testimony from the Attorney and, in light of the Court's reliance

11  on the presumption, most of the facts on which the Court based its order were

12  undisputed.  In particular:

13    (i)  In 2004 and 2005, while the Attorney was employed as an attorney by

14  Kenyon & Kenyon, he performed work for j2 relating to litigations over one or

15  more of the patents at issue in the current litigation (some of which were reissued

16  after the Attorney's work for j2).  (Order at 3-5.)

17    (ii)  In 2011, while the Attorney was employed by Crowell & Moring,

18  Defendants hired him to work temporarily as their "outside in-house counsel."  (*Id.*

19  at 6, 15.)

20    (iii)  Although the Attorney never served as litigation counsel or as a

21  counsel of record in the lawsuits between j2 and Defendants, he did have contact

22  with Perkins Coie and Defendants' in-house attorneys in connection with these

23  actions.  (*Id.* at 7.)

24    (iv)  Neither Perkins Coie nor Defendants' in-house attorneys knew that the

25  Attorney had performed work for j2 while he was at Kenyon & Kenyon, although

26  the Attorney did inform Open Text's in-house counsel (Douglas Parker) that he had

27  done some work involving a prior-art "Bobo" patent that Crowell & Moring had

28  concluded did not create a legal conflict.  (*Id.* at 6, 21.)

(vi)    There is no evidence that the Attorney communicated privileged or confidential j2 information to Perkins Coie, to Defendants' in-house counsel, or to anyone else associated with Defendants or those attorneys, and there is substantial testimonial evidence that he did not.[1]

Notwithstanding the Order's recognition that "[t]his outcome is unfortunate, because there is not a molecule of evidence that Perkins did anything other than act with integrity and in a manner consistent with the highest traditions of the legal profession," the Order holds that automatic disqualification under the "Vicarious Presumption Rule" was required and that Perkins Coie is disqualified because "the Attorney had contact with Perkins."  Order at 2:12-17, 9:15-17.  The Order also barred successor counsel from substantive communications with anyone (whether a lawyer or not) who had communicated with the Attorney "about any matter relating to this action," allowing only communications on ministerial and logistical issues for purposes of transitioning the litigation to successor counsel.  *Id*. at 23:13-16.[2]

## III.   GOVERNING LAW

Section 1292(b) of Title 28 authorizes interlocutory appellate review of non-

---

[1] Defendants requested (ECF No. 399) leave to file a declaration from the Attorney stating that he remembers nothing about his prior work for j2 while at Kenyon & Kenyon and that he did not convey confidential information to Perkins Coie or employees of Defendants.  At the November 6, 2012 hearing, which was scheduled as an evidentiary hearing at which the Attorney would testify, the Attorney attended and Defendants offered his testimony, in open court or *in camera*, regarding his knowledge and communications.  The Court ruled that such testimony would require a privilege waiver allowing j2 to discover all of the Attorney's communications about these cases, including discussions of Defendants' strategies and concerns.  The Court also denied Defendants' leave to file a declaration of the Attorney.  ECF No. 405.  For avoidance of doubt, Defendants submit this offer of proof on what the Attorney would testify.

[2] The parties have stipulated that the Order does not prohibit outside or inside counsel from continuing to participate in litigation over the disqualification issues, as opposed to the prosecution or defense of the merits of the underlying litigation.

1   final civil orders "[w]hen a district judge … [is] of the opinion that such order
2   involves a controlling question of law as to which there is a substantial ground for
3   difference of opinion and that an immediate appeal from the order may materially
4   advance the ultimate termination of the litigation."

5    The Federal Circuit has exclusive jurisdiction over interlocutory appeals in
6   patent cases and other cases in which it would have exclusive jurisdiction over an
7   appeal from a final judgment.  28 U.S.C. §§ 1292(c)(1), 1295.  In determining
8   whether it will accept an interlocutory appeal, the Federal Circuit looks to its own
9   case law, because "reviewability is jurisdictional."  *Kennecott Corp. v. U.S. Dist.*
10  *Court for South. Dist. of Cal.*, 873 F.2d 1292, 1293 n.1 (9th Cir. 1989).  *See State*
11  *Contracting & Eng'g Corp. v. State of Fla.*, 258 F.3d 1329, 1334 (Fed. Cir. 2001)
12  ("We have established that in matters of our own jurisdiction, regional circuit law is
13  not binding, and we are obligated to make an independent determination of our
14  jurisdiction.")

15   Although some courts have suggested that mandamus review of
16  disqualification orders is more appropriate than interlocutory appeal, the Federal
17  Circuit will review disqualification orders by interlocutory appeal as well.  *E.g.*,
18  *Atasi Corp. v. Seagate Technology*, 847 F.2d 826, 829 n.2 (Fed. Cir. 1988)
19  (reviewing order disqualifying counsel on interlocutory appeal); *Telectronics*
20  *Proprietary, Ltd. v. Medtronic, Inc.*, 836 F.2d 1332, 1336 (Fed. Cir. 1988)
21  (reviewing order refusing to disqualify counsel on interlocutory appeal); *Sun Studs,*
22  *Inc. v. Applied Theory Associates, Inc.*, 772 F.2d 1557, 1567 (Fed Cir. 1985)
23  (reviewing order disqualifying counsel on interlocutory appeal); *see Kennecott*
24  *Corp.*, 873 F.2d at 1292 (Federal Circuit "decisions leave little doubt as to the
25  Federal Circuit's willingness to review interlocutory appeals of a district court's
26  order refusing to disqualify counsel"; transferring appeal of disqualification issue in
27  patent infringement action to Federal Circuit).  The Supreme Court has likewise
28  stated that review by either interlocutory appeal or mandamus may be appropriate.

*See Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 435 (1985) (holding that a disqualification order was not a "collateral order" immediately appealable as of right, but stating that both interlocutory appeals under 28 U.S.C. § 1292(b) and review by mandamus may be appropriate).

Although the Federal Circuit applies its own law in deciding whether to permit interlocutory review, a district court may consider its own Circuit's law in deciding whether to certify an order for Section 1292(b) review by the Federal Circuit. *See Univ. of Va. Patent Found. v. Gen. Elec. Co.*, 792 F. Supp. 2d 904, 910 n.1 (W.D. Va. 2011) (citing Fourth Circuit law on issue of whether to certify for §1292(b) interlocutory review, but stating that the court "also take[s] guidance from the decisions" of the Federal Circuit "on whether to grant interlocutory review of an order certified for appeal by a district court").

## IV.   ARGUMENT

The Court's Order disqualifying Perkins Coie, prohibiting Defendants' in-house attorneys from participating in the litigations, and generally forbidding successor counsel from communicating with anyone who has communicated with the Attorney about these cases, meets the statutory criteria for certification under Section 1292(b).  The Order involves controlling questions of law as to which there are substantial grounds for difference of opinion, and an immediate appeal may materially advance the ultimate termination of these cases.

## A.   THE COURT'S DISQUALIFICATION OF PERKINS COIE WARRANTS INTERLOCUTORY REVIEW

The Supreme Court has instructed that "district courts should not hesitate to certify an interlocutory appeal" where a "particular injurious" ruling "involves a new legal question or is of special consequence." *Mohawk Indus., Inc. v. Carpenter*, 130 S. Ct. 599, 607 (2009) (holding that a finding of waiver of the attorney-client privilege could not be appealed as a collateral order, but that an interlocutory appeal would be appropriate for "particularly injurious or novel"

1    privilege rulings).  The Court's disqualification of Perkins Coie raises an important

2    and new legal issue with tremendous importance in these cases, has a "particularly

3    injurious" effect on Defendants' ability to litigate these cases, and otherwise

4    satisfies each of the prerequisites for Section 1292(b) certification.

5           ***Controlling Question of Law***.  The issue of the appropriate legal standard to

6    be applied for deciding whether external and internal counsel should be disqualified

7    based upon contact with a conflicted attorney is a "controlling question of law"

8    within the meaning of Section 1292(b).  To be sure, the merits of j2's patent claims

9    do not turn on the answer to this question, but Section 1292(b) does not require that

10   the issue on appeal resolve the merits.  In the Ninth Circuit, "all that must be shown

11   for a question to be 'controlling' is that resolution of the issue on appeal could

12   materially affect the outcome of the litigation in the district court."  *In re Cement*

13   *Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982); *see Kuehner v. Dickinson &*

14   *Co.*, 84 F.3d 316, 318-19 (9th Cir. 1996) (rejecting notion that a question of law

15   must determine who wins on the merits in order to be "controlling"; relevant issue

16   was "controlling" because it could result in needless expense and delay); *Deutsche*

17   *Bank Nat. Trust Co. v. F.D.I.C.*, 854 F.Supp.2d 756, 768 (C.D. Cal. 2011) (Feess,

18   J.) (Same).  *Dalie v. Pulte Home Corp.*, 636 F.Supp.2d 1025, 1028 (E.D. Cal. 2009)

19   ("The issue need not be dispositive of the lawsuit in order to be regarded as

20   controlling" and §1292(b) review is *not* limited to pure legal questions.)

21          Notably, in *Richardson-Merrill* and *Mohawk*, the Supreme Court recognized

22   that attorney disqualification orders and privilege waivers may qualify for

23   interlocutory appeal, confirming that an issue of law may be "controlling" even

24   though not dispositive of the merits.  *Richardson-Merrill*, 472 U.S. at 435;

25   *Mohawk*, 130 S. Ct. at 607.  Moreover, as set forth above, the Federal Circuit has

26   permitted certified interlocutory appeals of disqualification orders, implicitly

27   agreeing that that disqualification orders may raise a controlling question of law.

28   *See*, *e.g.*, *Telectronics*, 836 F.2d at 1335.

1    Here, the appropriate legal standard for determining whether Perkins Coie

2  should be disqualified is controlling because that disqualification could certainly

3  materially affect the outcome of the litigation.  The outside lawyers that the Court

4  has disqualified have worked on these cases for almost five years.  Their knowledge

5  is irreplaceable.  It would be virtually impossible for a new firm to obtain the same

6  depth and extent of knowledge.  Courts have recognized that disqualification of

7  counsel of a party's choice "can cause great harm to a litigant."  *Cole v. U.S. Dist.*

8  *Court for Dist. of Idaho*, 366 F.3d 813, 817 (9th Cir. 2004).  Moreover, courts

9  recognize that a party whose counsel is disqualified "cannot obtain the desired

10  relief on direct appeal [after trial] because he seeks to be represented by this chosen

11  counsel *at trial*.  Once a new attorney is brought in, the effect of the order is

12  irreversible."  *Christensen v. U.S. Dist. Court for Cent. Dist. of California*, 844 F.2d

13  694, 697 (9th Cir. 1988) (emphasis in original).

14    In *Mohawk Industries*, the Supreme Court explained that a controlling

15  question of law appropriate for interlocutory review may exist to determine the

16  controlling standard for a privilege determination where the court's ruling involved

17  a "novel" legal question and was "particularly injurious" to a party.  130 S. Ct. at

18  602.  This Court's decision that the Vicarious Presumption Rule applies and that

19  Defendants must be deprived of their outside counsel of choice more than four

20  years into the litigation is "particularly injurious" to Defendants, and "novel" – as

21  the Order itself recognizes.  *See also City of Santa Barbara v. Superior Court,* 122

22  Cal. App. 4th 17, 23 (2004) (noting that motions for disqualification should be

23  "examined carefully" because attorney disqualification "imposes heavy burdens on

24  both the clients and courts [because] clients are deprived of their chosen counsel,

25  litigation costs inevitably increase and delays inevitably occur.")

26    ***Substantial Grounds for Difference of Opinion***.  The Order's application of

27  the Vicarious Presumption Rule to disqualify Perkins Coie also satisfies Section

28  1292(b)'s requirement of "substantial grounds for difference of opinion."  Such

1  grounds exist when a court's decision "involves an issue over which reasonable

2  judges might differ and such uncertainty provides a credible basis for a difference

3  of opinion." *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir.

4  2011) (internal quotations and citation omitted).  "'[C]ourts traditionally will find

5  that a substantial ground for difference of opinion exists where . . . novel and

6  difficult questions of first impression are presented'. . . ." *Id.* (quoting *Couch v.*

7  *Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010)).  As the Ninth Circuit explained

8  in *Reese*:

9      A substantial ground for difference of opinion exists where reasonable
10  jurists might disagree on an issue's resolution, not merely where they
   have already disagreed.  Stated another way, when novel legal issues
   are presented, on which fair-minded jurists might reach contradictory
11  conclusions, a novel issue may be certified for interlocutory appeal
   without first awaiting development of contradictory precedent.

12  643 F.3d at 688.  *See Deutsche Bank Nat. Trust*, 854 F. Supp. 2d at 770 (a court

13  must "examine the extent to which the controlling law is unclear," holding that

14  there was a substantial ground for difference of opinion in light of a lack of directly

15  controlling precedent); *Davis Moreno Const., Inc. v. Frontier Steel Bldg. Corp.*,

16  2011 WL 347127, at *2 (E.D. Cal. Feb. 2, 2011) ("identification of a sufficient

17  number of conflicting and contradictory opinions will provide substantial ground

18  for disagreement").  *Cf. Couch v. Telescope Inc.*,  611 F.3d at 633 ("defendants

19  have not provided a single case that conflicts with the district court's construction or

20  application of . . . [the statute at issue].")  Substantial grounds for difference of

21  opinion also may be found where "there is a lack of case law on the [particular

22  issue]." *Zeneca Ltd. v. Mylan Pharms., Inc.*, 968 F. Supp. 268, 277 (W.D. Pa.

23  1997), *interlocutory appeal accepted and merits ruling rev'd*, 124 F.3d 225 (Fed.

24  Cir. 1997).

25        Here, the Attorney was not affiliated with Perkins Coie; he was a lawyer for

26  another firm who was acting as temporary in-house counsel for Defendants.  The

27  Attorney was not litigation counsel or counsel of record for Defendants.  In

28

DEFTS' MOTION FOR CERTIFICATION FOR
INTERLOCUTORY APPEAL AND STAY
CASE NOS.: CV-09-4150, 09-4189, 11-4239 DDP (AJWx)

deciding to disqualify Perkins Coie, this Court acknowledged that it was "not aware of any case analyzing whether the Vicarious Presumption Rule applies to such a situation."  Order at 15:19-20.  When analyzing whether to apply the irrebuttable Vicarious Presumption Rule to presume disclosure and taint from association with a disqualified lawyer at another firm, the Court identified two different lines of cases: three cases holding that the presumption does not apply to co-counsel and two cases holding that Vicarious Presumption Rule of automatic disqualification extends to co-counsel.  The Court also considered the analysis in *Kirk v. First Am. Title Ins. Co.*, 183 Cal. App. 4th 776, 800 (2010) (vicarious disqualification should be decided on a "case-by-case analysis based on the circumstances present in, and policy interests implicated by, the case").

The Order rejects the reasoning of the three cases holding that the Vicarious Presumption Rule does not apply to co-counsel and the decision in *Kirk* that vicarious disqualification should not be applied automatically.  The Order "concludes that the Vicarious Presumption Rule should be applied here (i.e., that it should be presumed that Perkins has relevant confidential information about j2.)" *Id*. at 16:23-18:13.  We point this out in this Section 1292(b) motion *not* to argue that this Court was incorrect.  The correctness of the Court's Order is not the question on this motion.  The question is only whether there are substantial grounds for a difference of opinion.  Clearly, there are.  There is a split in California appellate precedent on the issue of disqualification of co-counsel (and the Attorney was not even co-counsel) and a lack of any California Supreme Court authority.  Moreover, case law outside California (decided since briefing on the disqualification motion was completed) has addressed the in-house counsel situation at issue here and come to a different conclusion about the appropriate legal standard.  *See In re SAExploration, Inc.*, 2012 WL 6017717, at *3-4 (Tex.App.-Houston Dec. 4, 2012) (Texas law) (Where attorney worked on a matter for a former client and then is employed by the adversary to the former client as in-house

counsel, there is an irrebuttable presumption that *the attorney* obtained confidential information while working on a substantially related matter for the former client, but the presumption that the former client's confidential information was shared during the new employment with outside counsel or others *may be rebutted* by the new employer.)  *See also Tawsaura Grp., LLC v. Threshold Enters., Ltd.*, No. SA CV 12-01364 SJO (AGRx), (C.D. Cal. Dec. 26, 2012 (ECF No. 70) (Otero, J.), at 8 (denying disqualification and stating that automatic disqualification by imputation is not required where the supposedly tainted law firm rebuts the presumption that client confidential information was shared.)

**B.     THE COURT'S DISQUALIFYING DEFENDANTS' IN-HOUSE ATTORNEYS AND PROHIBITING SUCCESSOR COUNSEL FROM COMMUNICATING WITH THEM AND OTHERS ALSO WARRANT INTERLOCUTORY REVIEW**

*Controlling Question of Law*.  In addition to disqualifying Perkins Coie and preventing its attorneys from communicating with successor counsel, the Order bars Defendants' in-house counsel and all others who communicated with the Attorney about these cases from communicating with successor counsel, regardless of the extent, subject matter, and significance of their past communications with the Attorney.  As a result, effectively, anyone with any real knowledge of these cases has been disqualified from participating in them and assisting counsel to defend the cases.  This will severely impair Defendants' ability to defend themselves and certainly will materially affect the outcome of the litigation in the district court.  As such, this aspect of the Order also presents a "controlling question of law" appealable under Section 1292(b).

The disqualification of Open Text's Chief Legal Officer, Mr. Davies, bears special mention.  Mr. Davies has the corporate responsibility to keep abreast of all

1    significant legal issues facing the company.[3]  There is no other officer of Open Text

2    who is a practicing lawyer and would not be disqualified under the Order.  These

3    cases are the most significant current litigation matter for Open Text.  The breadth

4    of the Order's prohibition on the ability of Open Text's Chief Legal Officer to

5    participate in Defendants' strategic and other decision-making with respect to the

6    defense of j2's claims and to make decisions on such issues as whether to litigate or

7    seek to settle will have devastating effects on Defendants and certainly could

8    materially affect the outcome of this litigation.  Defendants have been placed in a

9    position where they have no appropriate legal officer to guide these cases.

10        The sweeping prohibition of the Order on successor counsel's

11   communicating with any attorney or employee or other person "who had

12   communicated with the Attorney about any matter related to this action" (Order at

13   23:13-16) also could materially affect the outcome of these cases.  This prohibition

14   might be read to include within its scope every employee and every other person

15   who had even a single communication with the Attorney regardless of the subject

16   matter of the communication and regardless of whether the communication was

17   substantive or significant.  If the Order prevents successor counsel from

18   communicating with Open Text witnesses, it will prevent Open Text from

19   presenting those witnesses and, therefore, compromise the merits of the cases.  For

20   example, under the language of the Order, an employee of Defendants with

21   knowledge of facts from Defendants' own files that are critical to Defendants'

---

[3] Mr. Davies' significant responsibilities as Open Text's Chief's Legal Officer for Open Text's litigation and legal issues were to be included in the Supplemental Davies Declaration that the Court denied Defendants leave to file in connection with the Supplemental Briefing requested by Defendants' *Ex Parte* Application filed December 5, 2012 (ECF No. 399), to respond to Plaintiffs' new request for relief that Mr. Davies be prohibited from any role with respect to these litigations. Because the Court denied Defendant's Application (ECF No. 405), Defendants submit this information regarding Mr. Davies' responsibilities as an offer of proof.

1    defense of j2's claims is arguably prohibited from any communication with

2    successor counsel even if all the employee discussed with the Attorney was

3    scheduling of the employee's deposition.  Successor counsel would be unable to

4    obtain the witness' knowledge and, of course, it would be impossible for

5    Defendants to present the testimony of a witness who is precluded from

6    communicating with litigation counsel.  In short, the inability of successor counsel

7    to communicate with such employees and other persons with knowledge of facts

8    critical to Defendants' defense could certainly materially affect the outcome of the

9    litigation in the district court.

10         *Substantial Grounds for Difference of Opinion*.  The aspects of the Order

11    involving in-house counsel and other persons also involve issues as to which there

12    are substantial grounds for difference of opinion.  Despite the reported cases

13    referenced in the Order (and above) that disqualify outside counsel (including in

14    some instances co-counsel), not a single case has been identified that disqualified

15    an in-house counsel or other person because he or she had discussions with an

16    allegedly conflicted lawyer without any actual evidence that the conflicted lawyer

17    transmitted confidential information of the opposing party.  To the contrary, where

18    there has been no evidence that other persons actually learned of confidential

19    information from the conflicted attorney, courts in California have held that the

20    hypothetical risk of exposure to material confidential information should not result

21    in disqualification when that hypothetical risk becomes more attenuated.

22         For example, in *Dieter v. Regents of the Univ. of Cal.*, 963 F. Supp. 908 (E.D.

23    Cal. 1997), the district court held that although attorneys who actually worked on a

24    "substantially related" matter for the opposing party are imputed to have material

25    confidential information, other attorneys who were at the firm at the time but

26    subsequently moved to a new firm would not be imputed to have received that

27    material confidential information.  While the attorneys in that case had no

28    involvement in the initial matter, the court specifically noted that "the nature and

1    extent of the attorney's involvement with the former representation" was one of the

2    factors to consider and that factor "will not require disqualification of an attorney

3    whose participation in the former [matter] was peripheral."  *Id*. at 912.

4        In *Frazier v. Superior Court*, 97 Cal.App.4th 23, 27 (2002), the Court refused

5    "double imputation of knowledge of confidential information, first from one

6    member of the law firm representing the insurer to another member of that firm,

7    and second from the latter attorney to a different law firm entirely" that was

8    working on the matter.  The Court of Appeal described the case as requiring

9    examination of the "out[er] boundaries of the substantial relationship test for the

10   vicarious disqualification of counsel," and issued a writ of mandate directing the

11   Superior Court to vacate its prior disqualification order and deny a motion to

12   disqualify counsel.  *Id.* at 26.  The Court of Appeal also noted that the relevant

13   attorneys "each declared no confidential information passed between them."

14   Relying on a Fifth Circuit decision, the Court of Appeal wrote, "'Carriage of this

15   imputation-on-an-imputation to its logical terminus could lead to extreme results in

16   no way required to maintain public confidence in the bar.'"  *Id.* at 37 (quoting

17   *American Can Co. v. Citrus Feed Co.*, 436 F.2d 1125, 1129 (5th Cir. 1971)).

18       In *Kirk v. First American Title Ins. Co.*, 183 Cal. App. 4th 776, the Court of

19   Appeal confronted the situation in which the conflicted attorney (like the Attorney

20   here) had terminated his relationship with the law firm that was the subject of the

21   disqualification motion.  The Court held that the test for disqualification of the law

22   firm was different from the test for disqualification where the conflicted lawyer

23   remained at the firm:

24       When considering vicarious disqualification of a firm based on the
         presence of a tainted attorney, the issue is whether there is a likelihood
25       that other attorneys at the firm may receive and use the information
         possessed by the tainted attorney in the pending action.  [¶]  However,
26       once the tainted attorney has left the firm, vicarious disqualification is
         not necessary "where the evidence establishes that no one other than
27       the departed attorney had any dealings with the client or obtained
         confidential information." (*Goldberg v. Warner/Chappell Music, Inc.*,
28       *supra,* 125 Cal.App.4th at p. 755, 23 Cal. Rptr.3d 116.) Thus, the

-14-

> inquiry is no longer a prospective one, but a retrospective one. The trial court should not consider the *risk* of transmitting information from the tainted attorney to those involved in the challenged representation, but, instead, whether the tainted attorney *actually* conveyed confidential information.

*Id.* at 815-816.

The factual scenario in each of these cases is unique, and none is the precise circumstance presented here.  Nonetheless, the common thread running through all of these cases is that once one moves beyond disqualification of the attorney who was conflicted, the question of disqualification of other attorneys and individuals should not be answered formalistically and automatically as if one is dealing with a contagious infection that is always transmitted upon any contact.  That is especially true with respect to the limitations imposed in the "Remedy" section of the Order that go beyond counsel of record.  *See In re SAExploration, Inc.*, *supra* 2012 WL 6017717, at *4 (Texas law) (Where attorney worked on a matter for a former client and then is employed by the adversary to the former client as in-house counsel and not as counsel of record, presumption that former client's confidential information was shared during the new employment with outside counsel or others may be rebutted by the new employer.)  Indeed, most disqualification cases do not even address in-house counsel, let alone suggest that all in-house counsel who have substantively communicated with conflicted outside counsel should be disqualified – even though in-house counsel would be routinely subject to disqualification orders if that were the correct rule of law.

The remedy section of the Order places restrictions on individuals who have never appeared in this Court and are not California lawyers.[4]  Moreover, it does so

---

[4] There is a significant legal question whether California disqualification rules should be applied to Open Text's in-house counsel, since Open Text is a corporation organized under the laws of Canada and the in-house counsel are not members of the California State Bar and have not appeared of record in these cases. For example, the conflict of interest and other provisions of Rules of Professional

even though there is no evidence that the Attorney communicated privileged or confidential j2 information to Perkins Coie, to Open Text in-house counsel, or to anyone else associated with Defendants or these attorneys, and even though there is substantial testimonial evidence that he did not.  This is done all on the basis of a California rule the application of which to California lawyers in the current context is itself subject to reasonable disagreement.  And the Order imposes these restrictions with no weighing of the hardship that is being caused to Defendants by the removal from involvement in these cases of effectively all individuals who have meaningful knowledge of the facts and issues and are critical to Defendants' defense of these cases.

Given the absence of on-point case law and the existence of California and other case law holding that the more peripheral an individual's involvement in the representation the less need there is for disqualification, these questions certainly involve issues "over which reasonable judges might differ and such uncertainty provides a credible basis for a difference of opinion" (*Reese*, 643 F.3d at 688 (internal quotations and citation omitted)), and a substantial ground for difference of opinion exists because "novel and difficult questions of first impression are presented."  *Id.* (internal quotations and citation omitted).

## C.   AN IMMEDIATE APPEAL MAY MATERIALLY ADVANCE THE ULTIMATE TERMINATION OF THE LITIGATION.

The requirement that an interlocutory appeal may materially advance the ultimate termination of the litigation is also satisfied.  The Order will inevitably delay the progress of this case.  The disqualified Perkins Coie lawyers have worked on these patents and cases for over four years.  It would be impossible for a new

---

Conduct of the State Bar of California "are intended to regulate professional conduct of members of the State Bar" and "lawyers from other jurisdictions" "while engaged in the performance of lawyer functions" in California.  *See* Rules of Professional Conduct 1-100(A), (D).

firm to replace that knowledge completely, and it will inevitably take many months for successor counsel to study the patents and technologies at issue and learn the facts, the issues, and the law.  As a result, Defendants' ability to proceed with these litigations, and decisions regarding how Defendants should proceed, including whether to litigate or seek to settle, will of necessity be delayed.

Moreover, with Defendants' principal in-house lawyers prohibited from participating in these cases, Defendants' management is severely impaired in its ability to decide strategically how to litigate and potentially settle the cases.  On the other hand, if the portions of the Order prohibiting participation by in-house counsel and witnesses are ultimately reversed, an immediate appeal would allow these decisions to be made more quickly.

Defendants will work to expedite the appeal, and there is no reason to expect that an interlocutory appeal would delay this action any more than the delay that would be required for Defendants' successor counsel to prepare to litigate these cases.  Successor counsel can begin to get up to speed concurrently with the process of interlocutory review.  *Cf. In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 658 F.2d 1355, 1358 (9th Cir. 1981) ("An appeal of a disqualification order in a civil case does not necessarily disrupt the litigation because activity must be postponed in any case while new counsel is obtained.")  Furthermore, if the Federal Circuit reverses the disqualification of Perkins Coie, the case will progress much more speedily because of Perkins Coie's greater familiarity with the issues.  In the end, if this prong of the Section 1292(b) analysis were not satisfied here, it is hard to see how it would be satisfied with respect to any disqualification order, yet both the Supreme Court and Federal Circuit have recognized that disqualification orders may qualify for interlocutory appeal.

**D.    THE COURT SHOULD STAY THIS CASE PENDING REVIEW**

Certification of an interlocutory appeal does not deprive a district court of jurisdiction and does not automatically stay the district court litigation.  *Ass'n of*

-17-

*Irritated Residents v. Fred Schakel Dairy*, 634 F. Supp. 2d 1081, 1094 (E.D. Cal. 2008).  As it is an "essentially procedural question," in deciding whether to stay a matter pending appeal, a district court applies the law of the regional circuit (the Ninth Circuit here) rather than the law of the Federal Circuit.  *Kemin Foods, L.C. v. Pigmentos Vegetales del Centro S.A. de C.V.*, 384 F.Supp.2d 1334, 1339 (S.D. Iowa 2005).

Because stays pending interlocutory appeal promote economy of time and effort for both courts and parties, district courts routinely stay cases when they decide that a controlling issue of law should be certified for interlocutory appeal. *See, e.g.*, *Lakeland Vill. Homeowners Ass'n v. Great Am. Ins. Group*, 727 F. Supp. 2d 887, 897 (E.D. Cal. 2010); *In re Calif. Title Ins. Antitrust Litig.*, No. 08-01341 JSW, 2010 WL 785798, at *1 (N.D. Cal. Mar. 3, 2010).

District courts have "broad discretion to decide whether a stay is appropriate 'to promote economy of time and effort for itself, for counsel, and for litigants.'" *Ass'n of Irritated Residents v. Fred Schakel Dairy,* 634 F. Supp. 2d at 1094 (quoting *Filtrol Corp. v. Kelleher*, 467 F.2d 242, 244 (9th Cir. 1972)) (granting stay pending interlocutory appeal); *see also Asis Internet Serv. v. Active Response Grp.*, No. C07 6211 TEH, 2008 WL 4279695, at *4 (N.D. Cal. Sept. 16, 2008) (same). "A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Mediterranean Enterprises, Inc., v. Ssangyong Corp.*, 708 F.2d 1458, 1465 (9th Cir. 1983)  In deciding whether to grant a stay, courts consider (1) potential prejudice to the non-moving party; (2) hardship and inequity to the moving party if the action is not stayed; and (3) the judicial resources that would be saved by the stay. *See*, *e.g.*, *Rivers v. Walt Disney Co.*, 980 F. Supp. 1358, 1361 (C.D. Cal. 1997).

The test for a stay is easily satisfied here.  The requested stay would not prejudice j2 because this case is likely to be stayed while substitute counsel

attempts learn the case.  Moreover, these cases have been pending for many years, and there is no threat of imminent harm to j2.  (j2 has not sought a preliminary injunction, for example.)  By contrast, Defendants would face irreparable hardship if the cases are not stayed.  The harm to Defendants from being forced to litigate the cases without the internal and external counsel who have guided them could not be undone by allowing such counsel back into the case down the line, after appellate review has concluded.[5]

Defendants therefore request that the Court stay these cases pending resolution of the disqualification issues in the Federal Circuit.  A stay will both allow for the orderly final determination of the disqualification issues, and avoid the irreparable injury to Defendants that would result from continuing the litigation before such a final determination.

---

[5] Indeed, a stay pending circuit court review is warranted even if the Court were to decide against interlocutory appeal under § 1292(b) and (c)(1) because the same stay considerations would apply pending resolution of a petition for writ of mandamus, which is also an accepted procedure for review of disqualification orders.  *See In re Shared Memory Graphics*, 659 F.3d 1336, 1340 (Fed. Cir. 2011). (granting mandamus; "Nintendo also cannot seriously contest that SMG could meaningfully obtain this relief other than by seeking a writ of mandamus.  By the time an appeal here could be taken, the trial would be over, and SMG would have gone through the litigation without the counsel of its choice.").

1

## V.    CONCLUSION

2       The Court should certify its December 19, 2012 Order for interlocutory

3  review under 28 U.S.C. §§ 1292(b) and (c)(1) and stay proceedings in this Court

4  pending review of the Order by the Federal Circuit.

5  DATED:  January 14, 2013              MUNGER, TOLLES & OLSON LLP

6

7                                        By: ____/s/ Stuart N. Senator_____
                                              Stuart N. Senator
8
                                         Special Counsel for Defendants /
9                                        Counterclaimants Captaris, Inc. and Open
10                                       Text Corporation

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28